RECEIVED IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA,
2005 JUN 13 P 10: 24          EASTERN DIVISION

| | | |
|---|---|---|
| MORRIS FOREST PRODUCTS, LLC; STAN PITTMAN, | ) ) ) | |
| Plaintiffs, | ) ) ) | Civil Action Number: |
| v. | ) ) | 3:05CV564-B |
| KEYSTONE EXTERIOR DESIGN, LLC; JERRY TURNER; DON LUDWIG; UNIVERSAL FOREST PRODUCTS; MATTHEW J. MISSAD; DOUGLAS P. HONHOLT; DANA RECTOR; KRAIG JANSEN, | ) ) ) ) ) ) ) ) | Removed from the Circuit Court of Tallapoosa County, Alabama CV-05-101, Alexander City Division |
| Defendants. | ) ) | |

## BRIEF IN SUPPORT OF DEFENDANTS' NOTICE OF REMOVAL

COME NOW Defendants, Universal Forest Products, Matthew Missad, Douglas Honholt, Dana Rector, and Kraig Jansen and by and through its undersigned counsel files this Brief in Support of its Notice of Removal. The Defendant respectfully removes this action to the United States District Court for the Middle District of Alabama, Eastern Division and in support thereof, states the following:

### STATEMENT OF FACTS

The Plaintiffs in this action are: (1) Morris Forest Products, LLC (hereinafter "MFP"), an Alabama corporation located in Tallapoosa County, Alabama, on the west side of the Tallapoosa River; and (2) Stan Pittman (hereinafter "Pittman"), an employee of MFP and

resident citizen of the State of Georgia. (Complaint[1], p.1). The Defendants are: (1) Keystone

Exterior Design, LLC, a Tennessee corporation (hereinafter "Keystone") with its principal

place of business in Tennessee[2]; (2) Jerry Turner (hereinafter "Turner"), a resident the State

of Tennessee; (3) Don Ludwig (hereinafter "Ludwig"), a resident of the State of Ohio; (4)

Universal Forest Products, is a Michigan corporation (hereinafter "Universal") with its

principal place of business in the State of Michigan[3]; (5) Matthew Missad (hereinafter

"Missad"), the Executive Vice-President of Universal and a resident of the state of Michigan;

(6) Douglas Honholt (hereinafter "Honholt"), the Vice-President of Industrial Sales of

Universal and a resident of the State of Michigan; Dana Rector (hereinafter "Rector"), a

Director of Manufacturing for Universal and a resident of the State of Georgia; and Kraig

Jansen (hereinafter "Jansen"), an Installment Products Operation Manager for Universal and

a resident of the State of Georgia. (Complaint, p.2).  On or about November 21, 2003,

Keystone and MFP entered into a "Licensing Agreement." (Complaint, p.2; Licensing

Agreement[4]). This agreement specifically provided that "the agreement is for the term from

11/1/2003 through 10/31/2004; thereafter, the parties will review and renew the agreement

annually, making revisions that are mutually acceptable." (Licensing Agreement).    The

---

[1] A copy of Plaintiffs' Complaint is attached to this Brief as Exhibit "A."

[2] See Affidavit of Donald Ludwig, attached to this Brief as Exhibit "B."

[3] See Affidavit of Eric Maxey, attached to this Brief as Exhibit "C."

[4] A copy of the Licensing Agreement is attached to this Brief as Exhibit "D."

agreement between the parties." (*Id.*). Nowhere in the entire agreement does the name Stan Pittman appear, nor does the agreement mention any commissions for MFP employees. (*Id.*).

On February 7, 2005, Missad, Honholt, Rector, and Jansen had a meeting with MFP. (Complaint, p.6). During this meeting, it is alleged that Universal, Missad, Honholt, Rector, and Jansen made some fraudulent misrepresentations. (Complaint, p.6).

## ARGUMENT

### This Honorable Court Should Exercise Subject Matter Jurisdiction Over This Matter Because There is Complete Diversity Between the Proper Parties.

A federal district court may exercise subject matter jurisdiction over a civil action in which only state law claims are alleged if the civil action arises under the federal court's diversity jurisdiction. *See* 28 U.S.C. § 1332(a)(1). The diversity statute confers jurisdiction on the federal courts in civil actions "between citizens of different states," in which the jurisdictional amount is met. Id. To satisfy diversity, not only must a plaintiff be a citizen of a state other than the state of which one defendant is a citizen, but also, under the rule of "complete diversity," no plaintiff may share the same state citizenship with any defendant. *See* Strawbridge v. Curtiss, 7 U.S. 267 (1806).

Because of the complete diversity requirement, a plaintiff may prevent removal simply by joining a defendant who shares the same state as the plaintiff. The filing of a frivolous or otherwise illegitimate claim against a non-diverse defendant solely to prevent removal is called "fraudulent joinder" and courts may disregard the citizenship of

fraudulently joined defendants when assessing the existence of complete diversity. <u>Wright v. American General Life and Accident Insurance Co.</u>, 136 F. Supp. 2d 1207 (M.D. Ala. 2001); *see also* <u>Tedder v. F.M.C. Corp.</u>, 590 F.2d 115, 117 (5th Cir. 1979)[5]

The Eleventh Circuit applies a three-fold test for determining whether a defendant has been fraudulently joined: the removing party must show (1) that there is no possibility the plaintiff could establish a cause of action against the resident defendant in state court, (2) that the plaintiff fraudulently pleaded jurisdictional facts, or (3) where a diverse defendant is joined with a nondiverse defendant as to whom there is no joint, several or alternative liability and the claim has no real connection to the claim against the nondiverse defendant. <u>Wright</u>, at 1211; *see also* <u>Triggs v. John Crump Toyota</u>, 154 F.3d 1284, 1287 (11th Cir. 1998).

In the instant case, the proper plaintiff, MFP, has attempted to defeat diversity by fraudulently joining another plaintiff, Stan Pittman, and defendants Missad, Honholt, Rector, and Jansen.

## I.    Fraudulent Joinder of the Stan Pittman

Mr. Pittman is fraudulently joined in this action because he has cannot establish a cause of action against any resident defendant. The Complaint contains four claims, breach of contract, intentional interference, suppression, and fraud, however, the Complaint does not distinguish between the claims of Pittman and MFP, therefore all four claims will be

---

[5] In <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1209 (11th Cir. 1981)(en banc) the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit issued prior to October 1, 1981.

addressed as to Mr. Pittman.

### A.    Breach of Contract

With regard to the breach of contract claim, the Plaintiff's allege that Mr. Pittman is a third-party beneficiary to the contract and as such, has standing to sue.  This contention, however, is not supported by the law and the facts.  "To recover under a third-party beneficiary theory, the complainant must show: (1) that the contracting parties intended, at the time the contract was created, to bestow a direct benefit upon a third party; (2) that the complainant was *the intended beneficiary* of the contract; and (3) that the contract was breached."  Collins Company, Inc. v. City of Decatur, 533 So. 2d 1127, 1132 (Ala. 1988)(emphasis added); *see also* Sheetz, Aiken & Aiken, Inc. c. Spann, Hall, Ritchie, Inc., 512 So. 2d 99, 101-02 (Ala. 1987).  If the benefit to the third person is not intended to be a direct benefit, but rather to be merely an incidental benefit, the third person will not be entitled to damages based on a breach of that contract.  Id., *citing* Mills v. Welk, 470 So. 2d 1226, 1228 (Ala. 1985).

It has also been held that the contract itself is the best evidence of the intention of the parties at the time of contracting, and that where it is plain upon the contract's face that no direct benefits were intended for the third person, then the third person is merely an incidental beneficiary and may not recover. *See* Sheetz, Aiken & Aiken, Inc. v. Spann, Hall, Ritchie, Inc., *supra*.; *see also* Collins, *supra.*(holding that courts must look to the surrounding circumstances of the transaction only when the contract is unclear as to whether the contracting parties intentionally conferred upon a third person a direct benefit;

consequently the court's inquiry may stop when it determines from the face of the contract that the parties did not intend to confer upon the third person a direct benefit.

Clearly, in the instant case, Mr. Pittman is not a third party beneficiary because there is no indication that at the time the contract was created that the contracting parties, MFP and Keystone, intended to bestow a direct benefit upon him. Indeed the contract in this case is not only the best evidence of the parties intention, but it is the only evidence this Honorable Court should consider on that issue. The contract is clear that it is for the direct benefit of both MFP and Keystone, however Mr. Pittman's name is never mentioned in the entire three-page document. The agreement never addresses any personnel issues, much less expresses a benefit on any one employee. Mr. Pittman is merely an MFP employee who was selected by MFP to perform certain tasks for MFP which included the sale of Keystone products. His position, and corresponding salary, was incidental to MFP and Keystone's agreement.

Allowing an employee such as Mr. Pittman to qualify as a third-party beneficiary would open up a flood gate of third-party beneficiary claims. Every employee who ever once received some compensation for work on any company's licensing contract would be allowed to maintain a claim. Under the plaintiffs' theory, a cashier at a local Wal-Mart could sue a supplier who breached a contract to supply goods for sale at the Wal-Mart store. This is simply preposterous. In fact, it is so preposterous, that the Plaintiffs have not included any other MFP employees who may have noticed an incidental benefit from the licensing agreement in this lawsuit. Clearly, Mr. Pittman was selected only in a fraudulent attempt to

defeat diversity.

The Plaintiffs attempt to make some distinction that Mr. Pittman was paid on commission, however, that was merely his form of income. The commissions were not directly driven by the original licensing agreement, but rather only an incidental benefit. The agreement never contemplates employee compensation and it was MFP who decided to pay Mr. Pittman on commission. Pittman is an intended beneficiary of the agreement he personally reached with MFP, but he is merely an incidental, not intended, beneficiary of the contract between Keystone and MFP at issue in this case.

Additionally, allowing Mr. Pittman to recover under any of the claims of the Complaint would allow the plaintiffs double recovery against the defendants. Assuming arguendo that all the claims in the Complaint are valid, the defendants would be held liable twice for the same conduct. The court would be permitting both MFP and Mr. Pittman recovery. This is against Alabama law[6] and once again would open up a flood of potential claims. Essentially every employee who is affected by a contractual termination or corporate activities would be allowed a claim against any party involved in that termination or transaction. For these reasons, Mr. Pittman's claims are not viable.

### B.    Intentional Interference

Mr. Pittman's claim for intentional interference is not viable because he does not have a contractual or business relationship with Keystone. Alabama law requires that Mr. Pittman first have a contractual or business relationship with Keystone prior to any alleged

---

[6] *See* <u>Keating v. Contractors Tire Service, Inc.</u>, 428 So. 2d 624 (Ala. 1983)

interference on Universal's part. *See* <u>Parsons v. Aaron</u>, 849 So. 2d 932 (Ala. 2002); <u>Serra</u> <u>Chevrolet, Inc. v. Edwards Chevrolet, Inc.</u>, 850 So. 2d 259 (Ala. 2002). Mr. Pittman's only relationship in this case was with MFP, his employer. He was not a direct party, nor a third-party beneficiary, of the agreement between MFP and Universal[7] Therefore, he had no relationship to interfere with and as such, his claim for intentional interference is not viable.

Additionally, assuming arguendo Mr. Pittman has standing and a relevant relationship, his claim for tortious interference is barred by the doctrine of competitor's privilege. Alabama has adopted the doctrine of competitor's privilege as an absolute defense to a claim for tortious interference. *See* <u>Soap Co. v. Ecolab, Inc.</u>, *supra*. The doctrine states that:

> "One who intentionally causes a third person not to enter into a prospective contractual relation with another who is his competitor or not to continue an existing contract terminable at will does not interfere improperly with the other's relation if: (a) the relation concerns a matter involved in the competition between the actor and the other and (b) the actor does not employ wrongful means and (c) his action does not create or continue an unlawful restraint on trade and (d) his purpose is at least in part to advance his interest in competing with the other."

<u>Id.</u> at 1369; *see also* <u>Tom's Foods, Inc. v. Carn III</u>, 896 So. 2d 443 (Ala. 2004).

It is undisputable that MFP and Universal were competitors; the Plaintiffs' Complaint clearly indicates that the two companies were competing over Keystone's business at the time of the alleged interference. The second criterion for the privilege is satisfied because Universal did not engage in any unlawful activity when negotiating with Keystone. Mr.

---

[7] See Section I.A. of this Brief for a Discussion of Mr. Pittman's lack of standing.

-8-

Pittman has offered no evidence indicating that Universal negotiated unlawfully or lied to Keystone. It is undisputed that the contract in question contains a termination date of October 31, 2004. (See Exhibit "D"). Though the Plaintiffs now dispute the fact that the contract had expired, it is undisputed that Keystone represented to Universal Forest Products its understanding that the contract had already expired in October of 2004 when it began negotiating with Universal Forest Products in November of 2004. (See November 28, 2004 letter from Keystone to Matt Missad, attached hereto as Exhibit "E").

The only "tortuous conduct" alleged by Pittman in attempting to create a claim of tortuous interference is fraud. However, the statements complained of by Pittman in his Complaint were made to MFP after Keystone had already made the decision to take the position that the contract had expired. Thus, even if Pittman could make out a claim for fraud,[8] the alleged fraudulent statements do not amount to tortuous interference because those statements had no bearing on the relationship between Keystone and MFP. Because the statements were made to MFP, they did not in any way induce Keystone to breach the contract and therefore had no effect whatsoever on Keystone's position. Further, as will be shown more clearly in the "Fraud" section below, the alleged statements of Universal employee to MFP did not have any effect on MFP's handling of this situation. According to the Plaintiff's Complaint, a meeting occurred on February 7, 2005 in which the alleged fraudulent statements were made. By that time, MFP had already been made aware of

---

[8] Pittman cannot state a claim for fraud. This issue is addressed more specifically in Section 1(d) below.

Keystone's desire to end its relationship with MFP. In fact, on February 3, 2005, MFP authored a letter to Keystone giving Keystone three options to settle its differences with MFP. (See February 3, 2005 letter, attached hereto as Exhibit "F"). More than two weeks later, and two weeks after the February 7, 2005 meeting which supposedly provides a basis for a fraud claim, MFP again wrote to Keystone and to UFP. (See February 21, 2005 letter, attached hereto as Exhibit "G"). At that time, MFP reiterated its settlement demands, which were unchanged from MFP's position prior to the February 7th meeting. Thus, it is clear that the February 7, 2005 meeting upon which Pittman bases his fraud claim did nothing to change the position of Morris Forest Products with regard to its differences with Keystone.

Finally, the fourth criteria is met because any actions on Universal's part in dealing with Keystone were done for the purpose of advancing the company's interest.[9] This interest would of course increase Universal's business and in turn improve its position in the competition for Keystone's business.

For the stated reasons, the doctrine of competitor's privilege bars any claim by Mr. Pittman for intentional interference.

### C.    Suppression

In order to establish a prima facie claim of fraudulent suppression, a plaintiff must produce substantial evidence establishing the following elements: (1) that the defendant had a duty to disclose an existing material fact; (2) that the defendant suppressed that existing material fact; (3) that the defendant had actual knowledge of the fact; (4) that the defendant's

---

[9] The third criterion of the privilege is not at issue in this case, and is therefore satisfied.

suppression of the fact induced the plaintiff to act or to refrain from acting; and (5) that the plaintiff suffered actual damage as a proximate result. Johnson v. Sorensen, 2005 WL 1253829 (Ala. 2005), *quoting* State Farm Fire & Cas. Co. v. Slade, 747 So. 2d 293, 323-24 (Ala. 1999).

Mr. Pittman cannot establish a prima facie claim of fraudulent suppression because none of the defendants owed him a duty to disclose material facts. The Complaint states that the Defendants had a duty to disclose certain material facts, however, even if a duty existed, it most certainly was not to Mr. Pittman. The defendants never dealt with Mr. Pittman in a capacity that would require disclosure of the material facts alleged in the Complaint. He was merely an employee of MFP and as such he was not owed a duty of disclosure.

Additionally, Mr. Pittman must also prove that he suffered actual damages. According to the Complaint, Mr. Pittman's losses consist of future lost commissions. These figures are speculative and are not actual damages. For these reasons, Mr. Pittman's intentional interference claim fails.

### D.    Fraud

The elements of fraud are: (1) a false representation; (2) of a material existing fact; (3) reasonably relied upon by the plaintiff; (4) who suffered damage as a proximate consequence of the misrepresentation. Saia Food Distributors and Club, Inc. v. SecurityLink From Ameritech, Inc., 2004 WL 2757417 (Ala. 2004), *quoting* Waddell & Reed, Inc. v. United Investors Life Ins. Co., 875 So. 2d 1143, 1160 (Ala. 2003).

In the instant case, Mr. Pittman has no viable claim for fraud because the alleged fraudulent statements did not concern him, he did not rely on the statements and he did not suffer damages as a proximate consequence of the misrepresentation. The alleged statements were stated at a meeting between MFP and Universal. The statements address issues between Keystone, MFP, and Universal, not Mr. Pittman. Mr. Pittman may very well have been present at the meeting, however his hearing the statements does not give rise to fraud. The facts represented were not material to his relationship with MFP. He had no other relationship at the meeting. Thus, he was not defrauded individually.

Additionally, there is no evidence that Mr. Pittman relied on the statements, nor is there any evidence that he was harmed as a proximate consequence of the misrepresentations. Mr. Pittman's harm was caused when MFP and Keystone could not reach an agreement and MFP subsequently eliminated his commissions. There is absolutely no evidence that he relied on anything stated in the meeting and furthermore, any such reliance would be unreasonable at best. He would be relying on statements made by a competitor in a meeting discussing the very business his company and the competitor were negotiating for.

Finally, the alleged statements concern the business of Keystone and Universal is not responsible for that business. Interrogating Universal regarding Keystone's conduct is merely asking for Universal's speculations and opinions, which is not actionable as fraud. "... One cannot commit fraud by expressing opinions . . . ." <u>Shuttershop, Inc. v. Amersham Corp.</u>, 114 F.Supp.2d 1218 (M.D. Ala. 2000). See also, <u>Crown Investments, Inc. v. Bryant</u>,

638 So.2d 873 (Ala. 1994)(holding that statements of opinion are not statements of material fact and therefore will not support fraud claims). At most, with regard to any issue which actually affected MFP or, indirectly, affected Pittman, the Universal employees could merely offer their opinions as to what Keystone's position might be or as to what Keystone would do in the future. For these reasons, Mr. Pittman's fraud claim is not viable.

Finally, as stated above, even if Pittman could somehow claim reliance on any statements made by Universal employees, that reliance would be limited to his position as employee of MFP. It is clear that Mr. Pittman did not individually make corporate decisions for MFP. However, even if he had been involved in those decisions, the evidence is undisputable that MFP did not change its position with regard to its relationship with Keystone as a result of the February 7, 2005 meeting which is the only alleged basis for the claim of fraud. As shown above, MFP made a settlement demand to Keystone prior to the February 7, 2005 meeting at which time it stated its position as to the relationship with Keystone and its alleged damages for what it felt to be a breach of contract. Two weeks after the February 7th meeting, MFP restated the exact same settlement demand. Thus, after the February 7, 2005 meeting, MFP did not in any way change its position with regard to its relationship with Keystone or the money that it sought to remedy what it felt to be a breach of contract. Clearly, MFP already felt that a breach had occurred before the February 7, 2005 meeting and had already made its decision as to the proper response to the alleged breach. The February 7, 2005 meeting with Universal employees did not factor in to this decision, or the post meeting demands would have been different. They were not, and thus

-13-

a fraud claim clearly does not exist.

## II.     Fraudulent Joinder of the Georgia Defendants

The Georgia defendants of Mr. Jansen and Mr. Rector are fraudulently joined because no plaintiff has a viable claim against them. The original contract entered into between MFP and Keystone did not involve these individuals because they are employees of Universal. Additionally, the claims for suppression are not viable because these individuals owed no duty to either of the plaintiffs. They simply worked for Universal and that is who their obligations were to.

The intentional interference also fails for the reasons previously stated, namely competitive privilege. As employees of the company engaged in competition, the privilege naturally extends to them. Finally, the claim of fraud also fails for reasons stated above. These individuals could not speak for Keystone. They merely provided their opinion and as such, cannot be sued for fraud. For these reasons, there are no viable claims against these defendants, and as such, they are fraudulently joined.

## III.     No Claims Between the Non-Diverse Parties

Assuming arguendo that Mr. Pittman is not a fraudulently joined plaintiff and Mr. Jensen and Mr. Rector are not fraudulently joined defendants, federal jurisdiction is appropriate because there are no claims between the non-diverse parties and as such complete diversity exists. Diversity of citizenship exists, in part, where the civil action is between citizens of different states. *See* 28 U.S.C. § 1332. Additionally, in <u>Strawbridge v. Curtiss</u>, 7 U.S. 267 (1806), Chief Justice Marshall noted that diversity is appropriate when

-14-

the suit is between a citizen of a state where the suit is brought, and a citizen of another state. This is precisely what we have in the instant case. For the previously stated reasons, there are no viable claims between the non-diverse parties. Assuming arguendo that Mr. Pittman, a Georgia citizen, is not fraudulently joined, he has no claims against a non-diverse Georgia defendant. His claims, assuming arguendo that he has any, would be against the defendants who are diverse from him.

In this case, it is clear that Plaintiff's counsel has stretched to the absolute limits to try to find some way to defeat diversity jurisdiction. In so doing, he has strained the limits of the law and still cannot destroy diversity where diversity in fact exists. When Plaintiff's counsel could not find an Alabama Defendant to go along with his Alabama Plaintiff, he attempted to create claims by manufacturing a Georgia Plaintiff and Georgia Defendants. This is a case involving three companies, MFP, Universal, and Keystone. Clearly diversity exists when looking at those corporate entities. When Plaintiff's counsel could not locate a Plaintiff to destroy diversity with regard to those two Defendants, or find a Defendant who would destroy diversity with respect to the only proper Plaintiff, he had no choice but to try to be more creative. In so doing, he obviously learned that there was a Georgia resident who he could claim (though improperly) as a Plaintiff, and therefore manufacture some claims against some Georgia Defendants to try to defeat diversity jurisdiction. However, his attempts have failed because there is no overlap between the Georgia Plaintiff and Georgia Defendant. Even if Stan Pittman could somehow state a claim against Keystone or Universal, he cannot individually state a claim against any of the Georgia Defendants, who

were merely individual employees of Universal. In order to destroy diversity jurisdiction, the Plaintiff should not be allowed to simply find a Georgia Plaintiff, all of whose claims are against diverse parties, and find some Georgia Defendants, against whom all pending claims are also filed by diverse parties. Because there are no claims which come anywhere close to viability where Pittman, the Georgia Plaintiff, has sued the individual Georgia Defendants, this Court must exercise its jurisdiction over this case. This is as blatant an attempt to circumvent the diversity rules as can be imagined, and it should not be rewarded. Diversity jurisdiction is created to avoid a situation where out of state Defendants are forced to trial by the Court local to the Plaintiff. That should not be allowed to happen in this case.

Furthermore, MFP has brought this action in Alabama state court. MFP is clearly an Alabama plaintiff, however, there are no Alabama defendants in this action. All the fears behind the grant of federal jurisdiction in a diversity action are present. The defendants in this action, none of whom are Alabama citizens, certainly fear potential prejudice in the state forum, which is the reason diversity jurisdiction exists in the first place, to eliminate that potential prejudice. See Burgess v. Seligman, 107 U.S. 20, 34 (1883). The plaintiffs are trying to hold the defendants in a circuit court of a State in which none of the defendants have citizenship. Chief Justice Marshall's statement is clear, "diversity is appropriate when the suit is between a citizen of a state where the suit is brought, and a citizen of another state." Strawbridge, supra. In this case diversity is appropriate because the suit is between MFP, a citizen of Alabama, the state where the suit was brought, and citizens, all of the defendants, of other states. Therefore, assuming arguendo that Mr. Pittman is not

-16-

fraudulently joined as a plaintiff and Mr. Jansen and Mr. Rector are not fraudulently joined as defendants, federal jurisdiction pursuant to diversity of citizenship is still appropriate because there are no defendants who are non-diverse from the forum and the forum plaintiff.

## CONCLUSION

Federal subject matter jurisdiction pursuant to 28 U.S.C. § 1332, diversity of citizenship, is appropriate in this case because the proper parties are diverse. The only non-diverse parties are the fraudulently joined plaintiff, Mr. Pittman, and the fraudulently joined defendants, Mr. Jansen and Mr. Rector. Mr. Pittman is fraudulently joined because he lacks any standing to assert any of the claims set forth in the Complaint. He was not a direct party to the contract, nor was he an intended, third-party beneficiary. He was merely an employee of MFP who was never intended to directly benefit from the Keystone contract. Any benefit he received was merely incidental and therefore, he has no standing to assert the claims of the Complaint. Additionally, Mr. Pittman has no viable claim for tortious interference because he never had a business or contractual relationship with Keystone. His only relationship was with his employer, MFP, and that relationship was never interfered with. Universal also was a direct competitor of MFP for the Keystone business and as such is entitled to the competitor's privilege against tortious interference. Thirdly, Mr. Pittman has no viable suppression claim because he was never owed any duty by any of the defendants. He never had a relationship with any of the defendants that would have required the defendants to disclose material facts to him. Fourthly, Mr. Pittman has no viable fraud claim because the alleged fraudulently representation had nothing to do with Mr. Pittman and

therefore he could not have reasonably relied on them.    The alleged fraudulent representations concern the relationship between Keystone, MFP, and Universal, not Mr. Pittman. Finally, allowing Mr. Pittman to recover would open the proverbial "flood gates" for liability and essentially allow double recovery.  Mr. Pittman was an employee who was indirectly affected when the employer's contract with the supplier was terminated. Permitting him recovery would open up every business transaction to suits from disgruntled employees.  Additionally, assuming that all of the claims in the Complaint are viable, they would properly belong to MFP.  If Mr. Pittman is allowed to also maintain an action for the same claims, the defendants would potentially be penalized twice for the same conduct and the plaintiffs would be permitted double recovery.

Federal jurisdiction is also appropriate because Mr. Jansen and Mr. Rector are fraudulently joined as defendants.  They were employees of Universal acting in their official capacity and did not engage in any unlawful conduct.  The claims against them fail for the same reasons Mr. Pittman's claims fail, thereby making their joinder fraudulent.

Assuming arguendo that neither Mr. Pittman, Mr. Jansen or Mr. Rector are fraudulently joined, federal jurisdiction is appropriate because there are no claims between the non-diverse parties and all of the defendants are diverse from the state forum.  Mr. Pittman, the only plaintiff from Georgia has no claims against the non-diverse Georgia defendants, Mr. Jansen and Mr. Rector.  Additionally, the case was brought in Alabama state court by an Alabama plaintiff, however not a single other party is a citizen of Alabama.  The fear of state forum bias is alive and well in this situation because there is not one single

-18-

defendant who is an Alabama citizen.

WHEREFORE, this Honorable Court has proper subject matter jurisdiction pursuant to diversity of citizenship. This Honorable Court also has authority under Rule 21 of the Federal Rules of Civil Procedure to dismiss Mr. Pittman as a Plaintiff and/or dismiss and Mr. Jansen and Mr. Rector as defendants, and the Defendant prays that this be done.[10]

Respectfully submitted,

**WILLIAM A. SCOTT, JR. - ASB-1539-O73W**
**JOSEPH E. STOTT - ASB-4163-T71J**
Attorney for Defendant Universal Forest
Products, Matthew Missad, Douglas
Honholt, Dana Rector, and Kraig Jansen

**OF COUNSEL:**

**SCOTT, SULLIVAN, STREETMAN & FOX, P.C.**
2450 Valleydale Road
Birmingham, AL 35244
(205) 967-9675

---

[10] *See* <u>Newman-Green, Inc. v. Alfonzo-Larin,</u> 490 U.S. 826 (1989)

## CERTIFICATE OF SERVICE

This is to certify that on this 13 day of ___June___, 2005, a copy of the foregoing has been served on counsel for all parties by placing same in the U.S. Mail, first class postage prepaid, and properly addressed to:

Randall S. Haynes, Esq.
MORRIS, HAYNES & HORNSBY
131 Main Street
Alexander City, AL 35010
(256) 329-2000

W. Percy Badham, III, Esq.
MAYNARD, COOPER & GALE, P.C.
1901 Sixth Avenue North
Suite 2400 AmSouth/Harbert Plaza
(205) 254-1000

**OF COUNSEL**