**EXHIBIT "D"**

FROM : Don Ludwig Cell # 330-704-6666   FAX NO. :                      Nov. 06 2003 11:37PM  P2



6655 Linder Circle NE
Canton, OH 44721
Phone: (330) 493-6194
Fax: (330) 499-1543
Email: geminigwt@supra.net

## LICENSING AGREEMENT

Authorized Licensee (name and address of record)
 Name: Morris Forest Products
 Address: 22608 Hwy 22 East
  Daviston, AL 36256

Phone: 256-395-9511
Fax: 256-395-9633
Email: wandamorris@direcway.com

1. **TERM**
 This agreement is for the term from 11/1/2003 through 10/31/2004; thereafter, the parties will review and renew the agreement annually, making revisions that are mutually acceptable.

2. **PREMISES**
 Jerry Turner has invented a connector referred to as a Keystone Connector

 Mr. Turner has a patent pending on this device and several structures produced using this device.

 Mr. Turner has assigned all rights to these patents to Keystone Exterior Designs, LLC(KED), a corporation in which Mr. Turner is a majority owner.

 Keystone desires to expand the marketing, distribution, and sales of these products and believes the Authorized Licensee (AL) can substantially assist in these efforts and will vigorously pursue such expansion.

 AL desires to manufacture, market, and distribute KED products in specific markets and territories.

 *In consideration of these premises, the following items are agreed:*

3. **PRODUCTS**
 Only those products checked below are covered by this agreement.
 (✓) Residential Deck System    (✓) Quiknik Tables    (✓) Workbenches
 (✓) Garden/Hobby Table    (✓) Swimming Pool Deck

 From time-to-time new products using the Keystone Connectors may be developed by the licensor and/or licensee; these products will become part of the Keystone product portfolio owned by KED; nevertheless, the inclusion of such products in this agreement will be negotiated in good faith. Additional products will be added by written agreement signed by both parties.

4. **LICENSING AGREEMENT**
 This agreement grants AL the right to manufacture and market the indicated products in the territories and/or markets indicated below. Where necessary an appendix may be added to clarify these territories and markets.

  Territories: United States of America
  Markets: DIY/retail, (aka homecenters)

*"Exterior wood structures erected in minutes with no tools required!"*

AL agrees to achieve certain sales targets and report on progress periodically as indicated in the appendix

KED is likely to develop and exploit markets that are not covered by this agreement. AL agrees to manufacture any product (for which it holds a manufacturing license) for KED market consumption. AL will ship these products as directed and invoice KED at agreed prices. The initial pricing is shown in the appendix. While KED has agreed to pay a 15% labor surcharge, this premium will removed by mutual agreement when low production volumes no longer constrain production efficiencies. KED will administer these sales and service these accounts, paying AL invoices within terms.

5. MANUFACTURING SUB CONTRACTING
AL may sub-contract manufacture of some components or operations if necessary due to capacity or capability constraints; however, AL retains accountability for product quality and royalty payments are unaffected. AL agrees to use diligence in protecting KED intellectual properties and confidential manufacturing techniques.

6. ASSEMBLY JIGS
KED has transferred ownership of the assembly jigs to AL; AL is assigned the right to use these jigs to manufacture KED products covered by this agreement.

7. MARKETING ASSISTANCE
Recognizing the size of the markets licensed, and the potential financial requirements to support them, AL may need to seek assistance to serve those markets. To the extent that AL contracts other parties to penetrate and serve licensed markets, KED agrees to help defray the cost of such participation by reducing the agreed royalty by 33%. In these cases, special attention will be necessary to assure accurate royalty accounting and AL will arrange such accounting. If AL finds it necessary to sub-contract both the manufacture and marketing of these products, it will be considered an assignment of the license and requires the written consent of KED. This consent will not be unreasonably withheld

8. CONNECTOR PURCHASES
AL agrees to purchase Keystone Connectors from KED at the prices indicated in the appendix.

AL will provide written Purchase Orders for Keystone Connectors and KED will fill and deliver such orders within normal product leadtimes. KED will not be held liable for conditions outside its control that could limit ability to deliver connectors promptly.

AL will pay for connectors within invoice terms

9. MARKETING AND ADVERTISING
For the term of this agreement, KED authorizes AL to use all trademark, product literature, and other advertising or marketing tools which may become available. AL will cover production costs of such material.

10. ROYALTY PAYMENTS
AL agrees to pay a royalty to KED based on the product and market as indicated in the appendix. [handwritten: monthly (RM)]
AL will make quarterly payments of agreed royalties based on net revenues [handwritten: invoices (RM)] after freight and trade discounts. AL will provide complete reconciliation of gross to net revenue calculations [handwritten: invoice (RM)]
KED will annually reconcile royalty payments with connector shipments to identify and minimize systemic errors in the royalty system.

2

11. **TECHNICAL SUPPORT**
KED will provide necessary technical support and will provide formal programs for sales training. Such programs will be at time and place agreed by the parties. Expenses for training beyond the actual staff of the AL will be paid by the AL.

12. **KED INTELLECTUAL PROPERTY**
AL recognizes that the connectors and structures are currently in the patent approval process. In the event that patents issue as planned, KED on its own discretion and at its own expense will prosecute infringement of those patents. AL agrees to notify KED of such infringements as they are encountered.

13. **WARRANTY**
KED warrants its connectors for a period of one year against defects in material and workmanship. AL warrants its material and workmanship to be free from defects. Each party will act promptly at its own expense to correct warranty issues. These warranties do not cover normal wear, neglect, abuse, accident or improper assembly.

14. **INSURANCE**
KED will carry general liability insurance during the term of this agreement with limits of not less than $1,000,000. AL will carry similar coverage and KED will be named as an additional insured. As new markets are developed, additional coverage limits may be required. Both parties agree to carry those limits.

15. **TERMINATION**
Either party may terminate this agreement immediately if the other party is in breach of any item and, after written notification, fails to return to compliance.

16. **PRODUCT DEVELOPMENT AND QUALITY**
Parties agree to share manufacturing methods and component supply sources that tend to improve the efficiency, profitability, and quality of the product. This includes the free use of any information regardless of its patentability; including drawings and/or photographs of tooling and products. The purpose of this clause is to maximize returns of all parties by sharing information and technology. AL agrees to produce KED products specifically to KED standards and specifications. KED personnel will be granted reasonable access to AL and its sub-contractor facilities.

17. **OWNERSHIP CHANGES**
If ownership of either party changes during the term of this agreement, then transfer of this license will be negotiated in good faith by both parties. This agreement may only be assigned with the written consent of the parties that shall not be unreasonably withheld. If licensor receives from a third party, an offer to purchase its stock, AL will have the first right of refusal in licensed markets and territories.

18. **MISCELLANEOUS**
This agreement together with appendices, is the sole agreement between the parties

The laws of the state of Tennessee govern this agreement

Authorized Licensee

11-21-03
Date
*Rodney Morris*

Keystone Exterior Design, LLC

*Jerry [signature]*
Date:
11-21-03

3

# Appendices

A. **TERRITORIES AND MARKETS** (ref item 4): USA, DIY/retail (aka homecenters)

B. **SALES TARGETS** (ref item 4)..None for 2004

C. **PRICE LISTS FOR KED MARKETING EFFORTS** (ref item 4)

Appendix C1 RDS components

| | KED Price | 15% labor adjust | adjusted total price |
|---|---|---|---|
| CP1 | 13.01 | 0.39 | 13.40 |
| CP2 | 13.11 | 0.40 | 13.51 |
| CP3 | 13.21 | 0.41 | 13.63 |
| CP4 | 13.31 | 0.42 | 13.74 |
| CP5 | 13.42 | 0.43 | 13.85 |
| CP6 | 16.34 | 0.46 | 16.80 |
| CP7 | 16.44 | 0.47 | 16.91 |
| FS28 | 34.87 | 0.91 | 35.78 |
| FS44 | 32.62 | 0.96 | 33.58 |
| HJ8 | 10.16 | 0.26 | 10.42 |
| HPL/R1 | 8.24 | 0.22 | 8.46 |
| HPL/R2 | 8.24 | 0.22 | 8.46 |
| HPL/R3 | 8.24 | 0.22 | 8.46 |
| HPL/R4 | 8.24 | 0.22 | 8.46 |
| HPL/R5 | 12.27 | 0.34 | 12.61 |
| HPL/R6 | 15.20 | 0.36 | 15.56 |
| HPL/R7 | 15.30 | 0.37 | 15.67 |
| LP1 | 10.67 | 0.32 | 10.99 |
| LP2 | 10.67 | 0.32 | 10.99 |
| LP3 | 10.67 | 0.32 | 10.99 |
| LP4 | 10.67 | 0.32 | 10.99 |
| LP5 | 14.70 | 0.43 | 15.13 |
| LP6 | 16.26 | 0.46 | 16.72 |
| LP7 | 16.36 | 0.47 | 16.83 |
| RS4 | 23.23 | 0.68 | 23.90 |
| RS8 | 37.66 | 0.91 | 38.57 |
| RS8C | 32.88 | 0.99 | 33.87 |
| SJ4 | 4.96 | 0.18 | 5.14 |
| SJ8 | 10.95 | 0.29 | 11.25 |
| SP31 | 4.37 | 0.02 | 4.39 |
| SP32 | 5.22 | 0.09 | 5.30 |
| SP33 | 5.52 | 0.09 | 5.60 |
| SP34 | 5.66 | 0.09 | 5.75 |
| SP35 | 5.90 | 0.09 | 5.99 |
| SP36 | 6.11 | 0.09 | 6.20 |
| SP37 | 6.41 | 0.09 | 6.50 |
| SP41 | 4.89 | 0.02 | 4.91 |
| SP42 | 5.74 | 0.09 | 5.82 |
| SP43 | 6.04 | 0.09 | 6.12 |
| SP44 | 6.18 | 0.09 | 6.27 |
| SP45 | 6.42 | 0.09 | 6.51 |
| SP46 | 6.63 | 0.09 | 6.72 |

4

| | | | | | | |
|---|---|---|---|---|---|---|
| SP47 | | | 6.93 | | 0.09 | 7.02 |
| SR1L/R | | | 13.22 | | 0.48 | 13.70 |
| SR2L/R | | | 19.67 | | 0.57 | 20.23 |
| SR3L/R | | | 23.66 | | 0.69 | 24.35 |
| SR4L/R | | | 28.32 | | 0.81 | 29.14 |
| SR5L/R | | | 37.13 | | 0.93 | 38.07 |
| SR6L/R | | | 40.42 | | 1.06 | 41.47 |
| SR7L/R | | | 44.39 | | 1.18 | 45.57 |
| SS1L/R | | | 4.87 | | 0.19 | 5.06 |
| SS2L/R | | | 8.01 | | 0.25 | 8.26 |
| SS3L/R | | | 9.42 | | 0.32 | 9.74 |
| SS4L/R | | | 11.53 | | 0.38 | 11.91 |
| SS5L/R | | | 15.70 | | 0.44 | 16.14 |
| SS6L/R | | | 17.12 | | 0.50 | 17.62 |
| SS7L/R | | | 19.22 | | 0.57 | 19.79 |
| ST1 | | | 10.87 | | 0.30 | 11.17 |

Appendix C2 RDS swimming pool deck specific components

| | |
|---|---|
| PP1L/R | 22.07 |
| PP2L/R | 19.62 |
| PJ8 | 10.42 |
| PFS38 | 52.99 |
| PGA | 36.50 |

Appendix C3..picnic tables TBD

Appendix C4 utility tables TBD

Appendix C5 hobby/garden tables TBD

Appendix C6 RDS kits (ref Menards specification)
CP7     13.62
FS28    34.87
FS44    32.62
HJ8     10.16
HPL7     8.24
HPR7     8.24
LP7     10.67
RS4     23.23
RS8     37.66
RS8C    32.88
SJ4      4.96
SJ8     10.95
SP37     6.41
SP47     6.93
SR2L    19.67
SR3L    23.66
SR4L    28.32
SR2R    19.67
SR3R    23.66
SR4R    28.32
ST1     10.87

5

| | |
|---|---|
| KIT A | 322.44 |
| KIT B | 198.57 |
| KIT C | 153.46 |
| KIT D | 97.56 |
| KIT E | 61.07 |
| KIT F | 79.92 |
| KIT G | 100.11 |
| KItGBK | 129.55 |

### D. CONNECTOR PRICING (ref item 8)

| | |
|---|---|
| M1 | 0.580 |
| M2 | 0.780 |
| M3 | 0.460 |
| M4 | 0.840 |
| M5 | 0.840 |
| F1 | 0.580 |
| F2 | 0.780 |
| F3 | 0.890 |
| F4 | 0.840 |
| F5 | 0.840 |
| M23L | 1.760 |
| M23R | 1.760 |
| M232 | 2.730 |
| SP3 | 4.230 |
| SP4 | 4.750 |

### E. ROYALTY SCHEDULES (ref item 10)

The agreed royalty for DIY/retail sales by AL is 7.5%.

If third party participation is necessary due to the size of the market, KED will reduce its royalty requirement to 5%

KED has agreed to reduce the royalty for sales to Menards 5% to achieve pricing requirements of that customer. MFP agreed to reinstate the 7.5% royalty at a future date after the initial startup expenses associated with the Menards introduction.

Feb ——↓—— Mar ———————— Apr

1st Pay off    o schedule at end of 1st order.

Time of Payment is same (monthly)

Payments is off of Revenue until 1 April. Then off Invoice per agreemt.

These Are Notes agreed on at signing of License agreement to give some initial relief of financial pressure to Daviston.