**EXHIBIT A**

## Loislaw Federal District Court Opinions

LUCKETT v. CHOCTAW MAIN FARMS, INC., (S.D.Miss. 2004)

MS. COBBIE LUCKETT, INDIVIDUALLY, ON BEHALF OF ALL WRONGFUL DEATH BENEFICIARIES OF LEROY LUCKETT, DECEASED, AND AS ADMINISTRATRIX OF THE ESTATE OF LEROY LUCKETT, DECEASED PLAINTIFF v. CHOCTAW MAID FARMS, INC., FREIGHTLINER CORPORATION, FREIGHTLINER LLC, CUMMINS ENGINE COMPANY, INC., CUMMINS, INC., RYDER TRUCK RENTAL, INC. AND DEFENDANT DOES 1-10 DEFENDANTS.

Civil Action No. 3:03CV215BN.

United States District Court, S.D. Mississippi,

Jackson Division.

February 19, 2004

### OPINION AND ORDER

WILLIAM BARBOUR, District Judge

This cause is before the Court on Plaintiff's Motion to Remand. Having considered the Motion, Response, Rebuttal, attachments to each, and supporting and opposing authority, the Court finds that Plaintiff's Motion to Remand is well taken and should be granted.

#### I. Background and Procedural History

This cause of action arises out of a single vehicle, tractor-trailer accident in which Plaintiff's decedent, Leroy Luckett (hereinafter "L. Luckett") was killed.[fn1] L. Luckett was employed by Danny Hawkins Trucking Company (hereinafter "Hawkins Trucking"),[fn2]
Page 2
which in turn was under contract with Choctaw Maid Farms, Inc. (hereafter "Choctaw Maid")[fn3] to haul chicken. On September 27, 1999, L. Luckett was hauling a load of empty chicken coops for Choctaw Maid. While driving on Highway 28 in Smith County, Mississippi, L. Luckett's tractor-trailer struck a cow, causing the vehicle to veer off of the east side of the highway. The vehicle flipped at least once, then burned with L. Luckett trapped in the cab.

Plaintiff filed the subject suit on September 25, 2002, in the Circuit Court of the First Judicial District of Hinds County, Mississippi. The First Amended Complaint was filed on February 4, 2003. In addition to Choctaw Maid, the Defendants named in the Amended Complaint are Freightliner Corporation and Freightliner LLC (hereinafter collectively "Freightliner"),[fn4] Cummins Engine Company and Inc., Cummins, Inc. (hereinafter collectively

"Cummins")[fn5] and Ryder Truck Rental, Inc. (hereinafter "Ryder").[fn6] Plaintiff alleges that Choctaw Maid was negligent: (1) by selecting an improper

Page 3

trailer to be hauled by L. Luckett; (2) by improperly attaching its trailer to L. Luckett's tractor; (3) by failing to properly load the cargo on the trailer; (4) by failing to properly secure the cargo on the trailer; and (5) by failing to properly repair, maintain and inspect the trailer. The claims against Freightliner and Ryder are based on products liability law.

Defendant Freightliner removed the case to this Court on February 10, 2003, on diversity of citizenship grounds. The Notice of Removal was timely joined by the Ryder. Freightliner and Ryder contend that Choctaw Maid, the only non-diverse Defendant, was fraudulently joined in this case. Plaintiff filed the subject Motion to Remand on February 19, 2003. After the filing of the Motion to Remand, the parties were granted a period of remand-related discovery. With the completion of said discovery, the Motion to Remand is now ripe for consideration.

## II. Fraudulent Joinder Standard

Under 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed . . . to the district court of the United States for the district and division embracing the place where such action is pending." The removing party has the burden of proving that the federal court has jurisdiction to hear the case. Jernigan v. Ashland Oil, Inc., 989 F.2d 812, 815 (5th Cir. 1993), cert. denied, 510 U.S. 868 (1993). In cases in which

Page 4

the removing party alleges diversity of citizenship jurisdiction on the basis of fraudulent joinder, "it has the burden of proving the fraud." Laughlin, 882 F.2d at 190. To establish fraudulent joinder, the removing party must prove: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." Travis v. Irby, 326 F.3d 644, 647 (5th Cir. 2003) (citing Griggs v. State Farm Lloyds, 181 F.3d 694, 698 (5th Cir. 1999).

When considering whether a non-diverse defendant has been fraudulently joined to defeat diversity of citizenship jurisdiction, courts should "pierce the pleadings" and consider "summary judgment-type evidence such as affidavits and deposition testimony." Cavallini v. State Farms Mutual Auto Ins. Co., 44 F.3d 256, 263 (5th Cir. 1995). However, "the district court is not to apply a summary judgment standard but rather a standard closer to the Rule 12(b)(6) standard." McKee v. Kansas City S. Ry. Co., No. 03-60259, 2004 WL 103439 at *4 (5th Cir. Jan. 23, 2004). Even under this standard, plaintiffs "may not rest upon the mere allegations or denials of [their] pleadings." Beck v. Texas State Bd. of Dental Examiners, 204 F.3d 629, 633 (5th Cir. 2000).

In Travis, the United States Court of Appeals for the Fifth Circuit reiterated the standard by which a plaintiff's claims

must
Page 5
be analyzed to determine the fraudulent joinder question. The Travis court held:

> [T]he court determines whether that party has *any possibility of recovery* against the party whose joinder is questioned. If there is arguably a *reasonable basis* for predicting that the state law might impose liability on the facts involved, then there is no fraudulent joinder. This *possibility, however, must be reasonable,* not merely theoretical.

Travis, 326 F.3d at 648 (emphasis in original) (citing Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 312 (5th Cir. 2002). Further, conclusory or generic allegations of wrongdoing on the part of the non-diverse defendant are not sufficient to show that the defendant was not fraudulently joined. Badon v. RJR Nabisco, Inc., 224 F.3d 382, 392-93 (5th Cir. 2000). Therefore, removal is not precluded merely because the state court complaint, on its face, sets forth a state law claim against a non-diverse defendant. Badon, 224 F.3d at 390. Removal is proper "if the plaintiff's pleading is pierced and it is shown that as a matter of law there is no reasonable basis for predicting that the plaintiff might establish liability on that claim against the in-state defendant." Id.

When conducting a fraudulent joinder analysis, a court must resolve all disputed questions of fact and ambiguities of law in favor of the non-removing party, Dodson v. Spiliada Maritime Corp., 951 F.2d 40, 42 (5th Cir. 1992), but "*only* when there exists an actual controversy, i.e. when *both* parties have submitted *evidence*
Page 6
of contradictory facts." Badon, 224 F.3d at 394 (emphasis in original). A court should not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts" to support his claims against the non-diverse defendant. Id. (citing Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)). When analyzing the issues, the court must consider the status of discovery in the case. McKee, 2004 WL 103439 at *4. In the event the court, after resolving all disputed questions of fact and ambiguities of law in favor of the non-removing party, finds that there is "arguably a reasonable basis for predicting that the state law might impose liability on the facts involved, then there is no fraudulent joinder" and hence no basis for asserting diversity of citizenship jurisdiction. Jernigan, 989 F.2d at 816.

### III. Analysis — Fraudulent Joinder

Diversity of citizenship jurisdiction requires satisfaction of the following two factors: (1) amount in controversy; and (2) diversity of citizenship. These requirements are set forth in 28 U.S.C. § 1332(a), which states in relevant part "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between — (1)

citizens of different States. . . ." The subject Complaint does not specify a dollar amount of damages sought by Plaintiff. However, the Notice of Removal alleges an amount in controversy exceeding $75,000, and
Page 7
this allegation is admitted in Plaintiff's Motion to Remand. The Court therefore finds that the amount in controversy requirement of § 1332(a) is met.

The issue to be resolved is whether the only non-diverse Defendant, Choctaw Maid, was fraudulently joined. If one or more of Plaintiff's claims against Choctaw Maid represent a claim or claims for which a Mississippi state court may grant relief, then Defendants' fraudulent joinder arguments necessarily fail. As analyzed below, at least one of Plaintiff's claims against Choctaw Maid passes this test.

Choctaw Maid does not dispute that it owned, and was responsible for maintenance of the trailer that L. Luckett was hauling on the day of the accident. One of Plaintiff's claims is that Choctaw Maid was negligent in maintaining the trailer. In particular, Plaintiff contends that Choctaw Maid negligently failed to properly maintain the brake system on the trailer, and that improper maintenance of the brake system caused or contributed to the accident in question.

In support of her contention that defective maintenance of the brakes caused L. Luckett's accident, Plaintiff produced two expert reports prepared by purported accident reconstruction experts. One of the purported experts is Donald L. Asa, and the other is Victor E. Holloman, P.E. The expert qualifications of Asa are somewhat
Page 8
suspect. The Court therefore relies on the report of Holloman, who is a licensed engineer.[fn7]

Holloman's report is attached as Exhibit "9" to Plaintiff's Response and Evidence in Support of Motion to Remand. In the report, Holloman attributes the cause of the subject accident to improperly functioning brakes on the trailer. Holloman attributes the brake malfunction to improper maintenance by Choctaw Maid. Regarding Holloman's conclusion that Choctaw Maid failed to properly maintain the brake system, he relies in part on the maintenance records of Choctaw Maid for the subject trailer. On a maintenance record dated April 30, 1999, the mechanic's note states "need brake job." The subject accident occurred on September 27, 1999. Between April 30 and September 27, the maintenance records indicate that the brakes on the trailer were "adjusted," but not overhauled. From these notations, a reasonable inference can be drawn that an "adjustment" to the brakes did not equate to a "brake job," or overhaul of the brake system.

Holloman also relies on the subject Mississippi Uniform Accident Report and accompanying Supplement to the Report. This document is attached as Exhibit "1" to Plaintiff's Response and Evidence in Support of Motion to Remand. The Accident Report indicates that the left tire of the trailer L. Luckett was towing
Page 9

skidded for approximately four hundred and eleven feet prior to the vehicle leaving the road, and that the right trailer tire did not skid at all. Holloman concludes that the improper failure of the brake system for the right trailer tire caused: (1) a reduced overall braking effect, which caused or contributed to the accident; and/or (2) loss of control of the vehicle, which caused or contributed to the accident. Holloman's opinions create an issue of fact as to whether Choctaw Maid was negligent in maintaining the brake system on the subject trailer.

Based on the foregoing evidence, the Court finds that Plaintiff has adequately stated a claim for improper vehicle maintenance against Choctaw Maid, and that the improper maintenance claim represents a cause for which a Mississippi state court *may* grant relief. Accordingly, Plaintiff's Motion to Remand must be granted.

### IV. Conclusion

Based on the holdings presented above:

IT IS THEREFORE ORDERED that Plaintiff's Motion to Remand [13-1] is hereby granted. The Clerk of the Court is hereby ordered to remand this case to the Circuit Court of the First Judicial District of Hinds County, Mississippi.

IT IS FURTHER ORDERED that any other Motion(s) outstanding in this case that were filed before the date of this Opinion are hereby dismissed without prejudice, because this Court does not have
Page 10
jurisdiction to decide them. The Movant(s), of course, may re-file the dismissed Motion(s) in state court upon remand.

SO ORDERED.

[fn1] Plaintiff is an adult resident citizen of Mississippi.

[fn2] Hawkins Trucking is not a party to this suit. Plaintiff previously sought redress from Hawkins Trucking through the workers' compensation laws of the State of Mississippi.

[fn3] Choctaw Maid is incorporated under the laws of the State of Mississippi, with its principle place of business in Mississippi.

[fn4] Freightliner was incorrectly designated in the Amended Complaint as two separate entities; it is but a single entity known as Freightliner LLC. Freightliner is incorporated under the laws of a state other than Mississippi, and has its principle place of business outside of Mississippi.

[fn5] The Cummins Defendants have been dismissed form this cause of action.

[fn6] Ryder is incorporated under the laws of a state other than Mississippi, and has its principle place of business outside of Mississippi.

[fn7] By declining to rely on Asa's opinion, this Court is not definitively finding that he does not meet the qualifications of an expert in the field of accident reconstruction.
West Page 700

Copyright © 2005 Loislaw.com, Inc. All Rights Reserved

Loislaw Federal District Court Opinions

---

PITTMAN v. PURDUE PHARMA COMPANY, (S.D.Miss. 2004)

JAMES PITTMAN, ET. AL. PLAINTIFFS, v. THE PURDUE PHARMA COMPANY, ET. AL. DEFENDANTS.

Civil Action No. 3:03cv152BN.

United States District Court, S.D. Mississippi,

Jackson Division.

March 12, 2004

**OPINION AND ORDER**

WILLIAM BARBOUR, District Judge

This cause is before the Court on Plaintiffs' Motion to Remand Having considered the Motion, Response, Rebuttal, and all attachments to each, as well as supporting and opposing authority, the Court finds that the Motion is well taken in part and should be granted in part, and that the Motion is not well taken in part and should be denied in part.

**I. Background and Procedural History**

This cause of action was originally filed in the Circuit Court of Smith County, Mississippi by twenty-five Plaintiffs who all claim to be current or former users of the prescription medicine OxyContin. Plaintiffs filed suit against Defendants The Purdue Pharma Company, Purdue Pharma L.P., Purdue Pharma Inc., Purdue Frederick Company, The P.F. Laboratories, Inc., Abbott Laboratories, and Abbott Laboratories, Inc. (hereinafter the "pharmaceutical Defendants") as the manufacturers, developers, marketers, and distributors of OxyContin. Plaintiffs claim that
Page 2
the pharmaceutical Defendants (1) recklessly promoted OxyContin, an alleged long-acting, long-term potent opioid pain killer, for inappropriate uses; (2) misrepresented to consumers that OxyContin tablets provided smooth and sustained 12-hour pain relief; and (3) distorted and diminished the safety risks of OxyContin, including opioid dependence, tolerance, withdrawal, and addiction. All of the pharmaceutical Defendants are corporate citizens of states other than Mississippi. In the same lawsuit, six of the Plaintiffs, David White, Merle Brockington, Gerald Brockington, Peggy Waltman, Teresa Ralph, and Melanie Hart (hereinafter the "medical malpractice Plaintiffs"), each brought a medical malpractice claim against their physicians for failing to adequately warn them of the addictive nature of OxyContin and/or for failing to warn them of dangerous drug interactions with OxyContin.[fn1] These six Plaintiffs also allege that their physicians failed to recognize that they had become psychologically dependent on OxyContin, continued to escalate their dosage despite their addiction, and failed to refer them to

an addiction specialist to help with their addiction. Each of the six Plaintiffs has brought

Page 3

his or her medical malpractice claim against a single physician, and each of the Plaintiffs have sued a different physician except for Plaintiffs Merle Brockington and Gerald Brockington who shared a physician. The named physicians include Defendants William Morrison, Jeffrey Laseter, Brian R. Dix, Denise H. Sojourner, and Richard Burris (hereinafter the "doctor Defendants"). All of the named physicians are residents of Mississippi.

Defendants timely filed their Notice of Removal arguing that this Court has jurisdiction under 28 U.S.C. § 1332. Defendants contend that this Court must exercise diversity of citizenship jurisdiction over the case because the only non-diverse Defendants, the "doctor defendants", were fraudulently joined. Defendants also contend that the Plaintiffs and/or the Plaintiffs' claims were fraudulently misjoined to defeat federal jurisdiction. On February 26, 2003, Plaintiffs filed their Motion to Remand This Motion is now ripe for consideration.

## II. Analysis

### (A) Fraudulent Joinder Standard

Under 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed . . . to the district court of the United States for the district and division embracing the

Page 4

place where such action is pending." The removing party has the burden of proving that the federal court has jurisdiction to hear the case. Jernigan v. Ashland Oil, Inc., 989 F.2d 812, 815 (5th Cir. 1993), cert. denied, 510 U.S. 868 (1993). In cases in which the removing party alleges diversity of citizenship jurisdiction on the basis of fraudulent joinder, "it has the burden of proving the fraud." Laughlin, 882 F.2d at 190. To establish fraudulent joinder, the removing party must prove: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." Travis v. Irby, 326 F.3d 644, 647 (5th Cir. 2003) (citing Griggs v. State Farm Lloyds, 181 F.3d 694, 698 (5th Cir. 1999).

When considering whether a non-diverse defendant has been fraudulently joined to defeat diversity of citizenship jurisdiction, courts should "pierce the pleadings" and consider "summary judgment-type evidence such as affidavits and deposition testimony." Cavallini v. State Farms Mutual Auto Ins. Co., 44 F.3d 256, 263 (5th Cir. 1995). However, "the district court is not to apply a summary judgment standard but rather a standard closer to the Rule 12(b)(6) standard." McKee v. Kansas City S. Ry. Co., No. 03-60259, 2004 WL 103439 at *4 (5th Cir. Jan. 23, 2004). Even under this standard, plaintiffs "may not rest upon the mere

Page 5

allegations or denials of [their] pleadings." Beck v. Texas State Bd. of Dental Examiners, 204 F.3d 629, 633 (5th Cir.

2000).

In Travis, the United States Court of Appeals for the Fifth Circuit reiterated the standard by which a plaintiff's claims must be analyzed to determine the fraudulent joinder question. The Travis court held:

> [T]he court determines whether that party has *any possibility of recovery* against the party whose joinder is questioned. If there is arguably a *reasonable basis* for predicting that the state law might impose liability on the facts involved, then there is no fraudulent joinder. This *possibility, however, must be reasonable,* not merely theoretical.

Travis, 326 F.3d at 648 (emphasis in original) (citing Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 312 (5th Cir. 2002). Further, conclusory or generic allegations of wrongdoing on the part of the non-diverse defendant are not sufficient to show that the defendant was not fraudulently joined. Badon v. RJR Nabisco, Inc., 224 F.3d 382, 392-93 (5th Cir. 2000). Therefore, removal is not precluded merely because the state court complaint, on its face, sets forth a state law claim against a non-diverse defendant. Badon, 224 F.3d at 390. Removal is proper "if the plaintiff's pleading is pierced and it is shown that as a matter of law there is no reasonable basis for predicting that the plaintiff might establish liability on that claim against the instate defendant." Id.

Page 6

When conducting a fraudulent joinder analysis, a court must resolve all disputed questions of fact and ambiguities of law in favor of the non-removing party, Dodson v. Spiliada Maritime Corp., 951 F.2d 40, 42 (5th Cir. 1992), but "*only* when there exists an actual controversy, i.e. when *both* parties have submitted *evidence* of contradictory facts." Badon, 224 F.3d at 394 (emphasis in original). A court should not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts" to support his claims against the non-diverse defendant. Id. (citing Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)). When analyzing the issues, the court must consider the status of discovery in the case. McKee, 2004 WL 103439 at *4. In the event the court, after resolving all disputed questions of fact and ambiguities of law in favor of the non-removing party, finds that there is "arguably a reasonable basis for predicting that the state law might impose liability on the facts involved, then there is no fraudulent joinder" and hence no basis for asserting diversity of citizenship jurisdiction. Jernigan, 989 F.2d at 816.

### (B) Analysis — Fraudulent Joinder

In their Response to the Motion to Remand, Defendants claim that the doctor Defendants have been fraudulently joined because

Page 7

the claims against them are so inherently inconsistent with the claims against the pharmaceutical Defendants that they cannot possibly state a cause of action against the doctor Defendants.

The issue to be resolved is whether the non-diverse Defendants, the doctor Defendants, were fraudulently joined. If one or more of Plaintiffs' claims against the doctor Defendants represent a claim or claims for which a Mississippi state court may grant relief, then Defendants' fraudulent joinder arguments necessarily fail. As analyzed below, the medical malpractice Plaintiffs' claims against the doctor Defendants pass this test.

Defendants argue that "[i]n light of Plaintiffs' specific allegations of fraud and misrepresentation by Purdue and Abbott as to physicians and the general public, Plaintiffs' charge that the doctor Defendants should be held accountable for their alleged negligent treatment of Plaintiffs is untenable." See Response to Motion to Remand at 16-17. Defendants argue that the doctor Defendants could not adequately inform Plaintiffs of the risks and appropriate uses of OxyContin because the pharmaceutical Defendants misled the physicians regarding the risks and appropriate uses of OxyContin. However, the medical malpractice Plaintiffs not only allege that their respective physicians failed to initially warn them of the dangers of OxyContin but they also allege that their physicians failed to recognize that they had become psychologically
Page 8
dependent on OxyContin and continued to escalate their OxyContin dosage despite their addiction. In their Response, Defendants focus on whether the doctor Defendants should have warned Plaintiffs of the addictive qualities of OxyContin when prescribing the drug to them. However, the doctor Defendants *may* have had a duty to recognize Plaintiffs' addictions and *may* have breached this duty by continuing to escalate Plaintiffs' dosages once their addictions developed. Defendants do not even discuss whether the doctor Defendants could have or should have recognized their patient's addiction.

In McKee, the Fifth Circuit stated that when analyzing the issue of fraudulent joinder, a court must consider the status of discovery in the case. In this case, Defendants have not requested remand-related discovery. They have not even provided the Court with any affidavits of the doctor Defendants rebutting Plaintiffs' allegations that the doctor Defendants continued to prescribe OxyContin despite their patient's addiction. Therefore, the Court concludes that the medical malpractice Plaintiffs have asserted a claim against their respective physicians for which a Mississippi state court *may reasonably* grant relief. Accordingly, the Court finds that Defendants' fraudulent joinder arguments must fail.
Page 9

**(C) Fraudulent Misjoinder Standard**

Defendants also argue that this Court has jurisdiction over the case because Plaintiffs fraudulently misjoined their claims. Misjoinder of plaintiffs was first adopted by the United States Court of Appeals for the Eleventh Circuit in Tapscott v. MS Dealer Service Corp., 77 F.3d 1353 (11th Cir. 1996), abrogated on other grounds, Cohen v. Office Depot, Inc., 204 F.3d 1069 (11th Cir. 2000). The Tapscott court held that "[m]isjoinder may be just as fraudulent as the joinder of a resident defendant against whom a plaintiff has no possibility of a cause of

action."[fn2] Id. at 1360. Citing Tapscott, the Fifth Circuit adopted the misjoinder of plaintiffs theory. In re: Benjamin Moore & Co., 309 F.3d 296, 298 (5th Cir. 2002) (holding that "misjoinder of plaintiffs should not be allowed to defeat diversity jurisdiction"). In a second opinion rendered in the Benjamin Moore case, the court held that "fraudulent misjoinder of plaintiffs is no more permissible than fraudulent misjoinder of defendants to circumvent diversity jurisdiction. . . ." In re: Benjamin Moore & Co., 318 F.3d 626, 630-31 (5th Cir. 2002).

Page 10

In Sweeney v. The Sherwin Williams Company, Civil Action No. 3:03cv602BN, 2004 WL 184260 (S.D. Miss. Jan. 26, 2004) (Barbour, J.), this Court analyzed a case involving the fraudulent misjoinder issue, as adopted by the Fifth Circuit in the initial Benjamin Moore opinion. In Sweeney, the Court considered whether it should apply Rule 20 of the Mississippi Rules of Civil Procedure, or Rule 20 of the Federal Rules. This Court concluded that Mississippi Rule 20, rather than Federal Rule 20, should apply in a fraudulent misjoinder analysis.

This distinction is important because although the language of both Rules is functionally identical,[fn3] case law interpretations of

Page 11

Mississippi Rule 20 are more liberal than case law interpretations of Federal Rule 20 in regard to joinder of plaintiffs and claims. For example, in Am. Bankers Ins. Co. of Florida v. Alexander, 818 So.2d 1073, 1078 (Miss. 2001) the Mississippi Supreme Court analyzed Mississippi Rule 20 and found that "[t]his Court has, in the past, taken notice of the unavailability of class actions and has liberalized the rules of civil procedure at times in order to better accommodate parties who are consequently shut out of the legal system." In Am. Bankers, the court allowed joinder of 1,371 borrowers (plaintiffs) against a lender and collateral protection insurer. Citing Am. Bankers, the Mississippi Supreme Court in Illinois Cent. R.R. Co. v. Travis, 808 So.2d 928, 933 (Miss. 2002), again reiterated that it utilizes "a liberal approach toward joinder."

Following Am. Bankers and Illinois Cent., the Mississippi Supreme Court rendered a decision in Janssen Pharmaceutical, Inc. et al. v. Armond, et al., No. 2003-IA-00398-SCT, 2004 WL 307449 (Miss. Feb. 19, 2004). As compared to Am. Bankers and Illinois Cent., the Janssen decision somewhat constricts the boundaries of permissive joinder. The issue decided by the Janssen court was "whether plaintiffs satisfy the requirements for permissive joinder

Page 12

under Mississippi Rule of Civil Procedure 20(a)." Id. at ¶ 3. The court found that the claims of fifty-six plaintiffs against the manufacturers of the drug Propulsid and forty-two physicians who prescribed the drug, were misjoined under Rule 20. Id. at ¶ 34. In so finding, the court considered the following factors: (1) whether the facts and witnesses supporting the claims of each plaintiff were the same (Id. at ¶¶ 20 & 31); (2) whether the volume of evidence would have resulted in jury confusion if joinder was allowed (Id. at ¶¶ 20 & 32); (3) whether the claims of each plaintiff were so small that separate trials would not be

justified (Id. at ¶ 21); (4) whether only a single defendant was named (Id. at ¶ 24); and (5) whether a trial with the plaintiffs joined would require admission of evidence that would be inadmissible if the claims of each plaintiff were severed (Id. at ¶ 30).

The Mississippi Supreme Court recently amended its comment to Rule 20. In the amended comment, the court struck its previous statement that "[t]he general philosophy of the joinder provisions of these rules is to allow virtually unlimited joinder at the pleading stage but to give the court discretion to shape the trial to the necessities of the particular case." See M.R.C.P. 20 cmt. The court also added that "[i]f the criteria of Rule 20 are otherwise met, the court should consider whether different injuries, different damages, different defensive postures and other
Page 13
individualized factors will be so dissimilar as to make the management of cases consolidated under Rule 20 impractical." See M.R.C.P. 20 cmt. The Court interprets the amendments to the comment as restricting the scope of fraudulent misjoinder as it has previously been applied.

This Court must analyze the subject fraudulent misjoinder issues in accordance with Mississippi Rule 20, its recent changes to the comment, and the holdings in Am. Bankers, Illinois Cent. and Janssen. **(D) Analysis — Fraudulent Misjoinder**

In their Response to the Motion to Remand, Defendants argue that the six medical malpractice Plaintiffs are misjoined with the remaining nineteen Plaintiffs. Based on the factors relied upon by the Mississippi Supreme Court in Janssen, this Court finds that the medical malpractice Plaintiffs have been fraudulently misjoined. This Court has determined that the Janssen court focused on five factors in finding fraudulent misjoinder. Therefore, the Court will consider each of these factors in determining whether there is fraudulent misjoinder under the facts of this case.**[fn4]**
Page 14

In Janssen, the Mississippi Supreme Court first considered whether the facts and witnesses supporting the claims of each Plaintiff were the same. The Court finds that this factor favors finding misjoinder in this case. In this case, each of the medical malpractice Plaintiffs will have different facts and different witnesses at trial to support their claim of medical malpractice. Each Plaintiff has a different medical history which does not relate to the claims of the other Plaintiffs.

The Janssen court next considered whether the volume of evidence would have resulted in jury confusion if joinder was allowed. The Court finds that this factor also favors finding misjoinder in this case. While the Court recognizes that Janssen involved 42 doctor defendants and this case only involves five doctor Defendants, the Court notes that even medical malpractice cases involving a single plaintiff and single defendant tend to have volumes of evidence. This case involves six medical malpractice claims with each Plaintiff alleging negligence against a single physician. The Court believes that

allowing six medical malpractice claims within this one case would likely create volumes of evidence and jury confusion.

The Janssen court also considered whether the claims of each plaintiff were so small that separate trials would not be justified. The Court finds that this factor favors separate trials

Page 15

in this case. The Court believes that based on the allegations made by Plaintiffs, the medical malpractice claims of each of the six Plaintiffs could be substantial. In this case, the medical malpractice Plaintiffs are likely seeking a large damage award.

The Janssen court also considered whether only a single defendant was named. The Court finds that this factor also favors misjoinder. In this case, there are several doctor Defendants and each doctor-patient pair presents a different set of factual issues that must be considered.

Finally, the Janssen court considered whether a trial with the plaintiffs joined would require admission of evidence that would be inadmissable if the claims of each plaintiff were severed. Based on the evidence provided by the parties, this Court cannot determine whether this factor favors misjoinder.

The Court finds that four of the five factors discussed above favor finding fraudulent misjoinder under the facts of this case. Therefore, the Court finds that the claims of the medical malpractice Plaintiffs should be severed from the claims of the other Plaintiffs. The claims of these six Plaintiffs will be remanded to the Circuit Court of Smith County, Mississippi. This Court does not have the jurisdiction to order the state court to sever the claims being remanded to state court. Once these claims have been remanded, Defendants may request that each Plaintiff's

Page 16

case be transferred to the jurisdiction in which that Plaintiff could have brought his or her claims without reliance on another of the improperly joined Plaintiffs. The claims of the Plaintiffs remaining in this Court will not be severed because they only involve claims against the pharmaceutical Defendants. There are no allegations that these remaining Plaintiffs had any contact with the doctor Defendants. The Court has found fraudulent misjoinder in this case strictly based on the medical malpractice claims. Therefore, the claims of the remaining Plaintiffs will remain consolidated in one case before this Court.

### III. Conclusion

Based on the holdings presented above, all of the claims asserted by Plaintiffs David White, Merle Brockington, Gerald Brockington, Peggy Waltman, Teresa Ralph, and Melanie Hart are remanded to state court. Because these six plaintiffs are the only plaintiffs who have asserted claims against the doctor Defendants (Defendants Morrison, Laseter, Dix, Sojourner, and Burris), all of the claims against the doctor Defendants are remanded to state court. As a result, the doctor Defendants are no longer parties to the severed cause of action retained by this Court.

IT IS THEREFORE ORDERED that Plaintiffs' Motion for Remand [10-1] is hereby granted in part and denied in part. The claims of Plaintiffs David White, Merle Brockington, Gerald Brockington, Peggy Waltman, Teresa Ralph, and Melanie Hart are severed from the claims of the other Plaintiffs in this case. The Clerk of the Court is directed to remand the claims of Plaintiffs David White, Merle Brockington, Gerald Brockington, Peggy Waltman, Teresa Ralph, and Melanie Hart to the Circuit Court of Smith County, Mississippi. The claims of the remaining Plaintiffs will remain in this Court.

Page 17

SO ORDERED.

[fn1] On May 23, 2003, all of the claims against Defendant Stonnington were dismissed by this Court. Plaintiffs and Defendants agree that Defendant Ameduri was also dismissed from this case at some point although the Court has been unable to locate any order formally dismissing him. However, based on the parties' argument, the Court concludes that Ameduri was dismissed from this case.

[fn2] Although the misjoinder in Tapscott involved the egregious misjoinder of defendants, its rational also applies to misjoinder of plaintiffs. Koch v. PLM Int'l, Inc., No. Civ. A. 97-0177-BH-C, 1997 WL 907917 at *2 (S.D. Ala. Sept. 27, 1997); Lyons v. The Am. Tobacco Co., Inc., No. Civ. A. 96-0881-BH-S, 1997 WL 809677 at *4 (S.D. Ala. Sept. 30, 1997).

[fn3] With the exception of the emphasized language, both the Federal Rule and the Mississippi Rule state:

> All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action. All persons *(and any vessel, cargo or other property subject to admiralty process in rem)* may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action. A plaintiff or defendant need not be interested in obtaining or defending against all the relief demanded. Judgment may be given for one or more of the plaintiffs according to their respective rights to relief, and against one or more defendants according to their respective liabilities.

Fed.R.Civ.P. **20**(a) and Miss R. Civ. P. 20(a) (emphasized language appearing only in Fed.R.Civ.P. **20**(a)).

[fn4] The Court notes that all of the cases cited by Plaintiffs in which courts held that the joinder of OxyContin prescribing physicians and other out-of-state defendants did not result in

misjoinder were decided before the Mississippi Supreme Court rendered its decision in Janssen.
Page 1

Copyright © 2005 Loislaw.com, Inc. All Rights Reserved