IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| MORRIS FOREST PRODUCTS, LLC;<br>STAN PITTMAN, | ) <br> ) <br> ) | |
| Plaintiffs, | ) <br> ) | |
| v. | ) <br> ) | Civil Action Number:<br>3:05-CV-00564-B |
| KEYSTONE EXTERIOR DESIGN,<br>LLC; JERRY TURNER; DON<br>LUDWIG; UNIVERSAL FOREST<br>PRODUCTS; MATTHEW J. MISSAD;<br>DOUGLAS P. HONHOLT; DANA<br>RECTOR; KRAIG JANSEN, | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | |
| Defendants. | ) | |

## UNIVERSAL FOREST PRODUCTS' RESPONSE
## TO PLAINTIFFS' MOTION TO REMAND

COMES NOW Defendant Universal Forest Products Eastern Division, Inc.

(designated in Plaintiff's Complaint as "Universal Forest Products" and hereinafter

"Universal") and by and through its attorney of record, Joseph Stott, does hereby request that

this Honorable Court deny the Plaintiffs' Motion to Remand. In support of this response,

Universal states as follows:

### STATEMENT OF FACTS

Plaintiffs filed this action in the Circuit Court of Tallapoosa County, Alabama,

Alexander City Division, on May 12, 2005. Plaintiffs' Complaint alleged breach of contract,

intentional interference with the business relationship, suppression, and fraud against all Defendants.[1]  The Plaintiffs' Complaint alleges intentional conduct under its intentional interference claim, however the remainder of the Complaint does not allege intentional conduct against any individual Defendant.[2]

The Plaintiffs claims arise, in part, from an alleged breach of a licensing agreement between Keystone Exterior Designs, L.L.C, (hereinafter "Keystone") and Morris Forest Products (hereinafter "MFP").  Universal had no part in this licensing agreement nor in its termination by the parties. (Affidavit of Don Ludwig[3]).  Universal had no involvement with either Keystone or MFP until after the expiration of the prior licensing agreement between Keystone and MFP and until after Keystone advised MFP that it considered the agreement to be terminated.  The Plaintiffs claims also arise from a meeting on February 7, 2005, attended by MFP and Universal employees.  During this meeting, Defendant Dana Rector's only statements were an introduction of who he was and his position with Universal. (Affidavit of Dana Rector[4]).  He left the meeting before its completion and toured MFP's manufacturing

---

[1] The Plaintiffs cite this Honorable Court to a First Amended Complaint, however no such Complaint appears to have been filed with the clerks of court in Tallapoosa County or this Honorable Court.  The only apparent difference between these two Complaints are that the First Amended Complaint adds a "Conspiracy" claim to the Plaintiffs' case.  This claim has no bearing on the Motion to Remand, regardless if the Amended Complaint was ever filed, because any claim for conspiracy is based on the underlying torts, which are being addressed in this brief.  *See* McLemore v. Ford Motor Co., 628 So. 2d 548, 550-551 (Ala. 1993)

[2] Plaintiffs' Complaint is attached hereto as Exhibit "A".

[3] Attached hereto as Exhibit "B".

[4] Attached hereto as Exhibit "C".

facilities, which was his primary purpose for being there on that occasion. (Affidavit of Dana Rector).  Plaintiff Stan Pittman was present at the meeting, however Defendants Matthew Missad[5], Douglas Honholt[6], Kraig Jansen[7], and Dana Rector had never met him prior to that time. (*Id.*).  These Defendants did not know how Mr. Pittman was compensated and had no intention of harming him in any way. (Id.)

## LEGAL STANDARD

A federal district court may exercise subject matter jurisdiction over a civil action in which only state law claims are alleged if the civil action arises under the federal court's diversity jurisdiction. *See* 28 U.S.C. § 1332(a)(1).  The diversity statute confers jurisdiction on the federal courts in civil actions "between citizens of different states," in which the jurisdictional amount is met. Id.

The filing of a frivolous or otherwise illegitimate claim against a non-diverse defendant solely to prevent removal is called "fraudulent joinder" and courts may disregard the citizenship of fraudulently joined parties when assessing the existence of complete diversity. Wright v. American General Life and Accident Insurance Co., 136 F. Supp. 2d 1207 (M.D. Ala. 2001); *see also* Tedder v. F.M.C. Corp., 590 F.2d 115, 117 (5th Cir. 1979)[8]

---

[5] Attached hereto as Exhibit "D".

[6] Attached hereto as Exhibit "E".

[7] Attached hereto as Exhibit "F".

[8] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981)(en banc) the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit issued prior to October 1, 1981.

The Eleventh Circuit applies a three-fold test for determining whether a defendant has been fraudulently joined: the removing party must show (1) that there is no possibility the plaintiff could establish a cause of action against the resident defendant in state court, (2) that the plaintiff fraudulently pleaded jurisdictional facts, or (3) where a diverse defendant is joined with a nondiverse defendant as to whom there is no joint, several or alternative liability and the claim has no real connection to the claim against the nondiverse defendant. Wright, at 1211; *see also* Triggs v. John Crump Toyota, 154 F.3d 1284, 1287 (11th Cir. 1998).

## **ARGUMENT**

This Honorable Court should deny the Plaintiffs' Motion to Remand because said motion is moot because the non-diverse defendants have filed Motions to Dismiss and those motions are due to be granted. Additionally, this Honorable Court should deny the Plaintiffs' Motion to Remand because the Plaintiffs have fraudulently joined Stan Pittman and Defendant Dana Rector, and fraudulently plead the citizenship of Kraig Jansen.

**I.    Pending Motions To Dismiss Are Due To Be Granted**

Defendants Matthew Missad, Douglas Honholt, Dana Rector, and Kraig Jansen have filed Motions to Dismiss with this Honorable Court and for reasons stated therein, those motions are due to be granted. The granting of these motions would render the Plaintiffs' Motion to Remand moot because there would be complete diversity among the remaining Plaintiffs and Defendants. For this reason, this Honorable Court should deny the Plaintiffs' Motion to Remand.

## II.    Fraudulent Joinder of Parties

In the instant case, in an attempt to defeat federal jurisdiction, the Plaintiffs have fraudulently joined Plaintiff Stan Pittman and Defendant Dana Rector. Additionally, the Plaintiffs have fraudulently plead the citizenship of Kraig Jansen. Given these facts, this Honorable Court should deny the Plaintiffs Motion to Remand and keep jurisdiction over this matter.

### A.    Stan Pittman is a Fraudulently Joined Plaintiff

The Eleventh Circuit has held that a party is fraudulently joined if "there is no possibility the plaintiff could establish a cause of action against the resident defendant in state court." Wright, *supra*.. Plaintiffs' Motion to Remand is due to be denied because there is no possibility that Stan Pittman can establish a cause of action in state court against the resident defendant, Dana Rector.

#### 1.    Intent Was Not Plead

Mr. Pittman's claims are due to be dismissed because he has not plead a necessary element of his claim, namely intent. The only time the word "intent" appears in the Plaintiffs' Complaint is in the claim for intentional interference with a business relationship.[9] No where in the rest of the Complaint do the Plaintiffs allege intent on the

_____

[9] Of course, Mr. Pittman, individually, does not have or even alleges to have a business relationship with Keystone with which to interfere. Mr. Pittman does not have or alleges to have a contract with Keystone that can be breached. The failure of these claims was addressed extensively in the Defendants' Brief in Support of Petition for Removal, and said Brief is adopted and incorporated herein. Additionally, the Plaintiffs have admitted that in order for any of Mr. Pittman's claims to succeed, he must be able to prove that the Defendants intended to harm him. The intent issues discussed in this brief go to Mr. Pittman's standing to bring the

part of any Defendant. No where in the rest of the Complaint does Stan Pittman claim that his alleged injuries were the result of the Defendants intentional conduct.

The Plaintiffs contend that intent need only be generally plead and that it does not need to be plead with the specificity of a properly plead fraud claim. However, the Plaintiffs have failed to even generally plead intent. The Plaintiffs argue that their pleadings are sufficient because they put the Defendants on notice of the claims, however this is not accurate. Alabama law clearly recognizes that there can be unintentional fraud, as well as intentional fraud, and without even generally pleading intent, the Defendants do not know which one the Plaintiffs are claiming. Therefore, the Defendants are not on notice of the Plaintiffs claim and cannot properly defend it. For this reasons, this Honorable Court should deny the Plaintiffs' Motion to Remand.

### 2. Even If Sufficiently Plead, No Possibility of Recovery

#### a. Lack of Intent

Assuming arguendo that Mr. Pittman has properly plead his claims, said claims are due to be dismissed because there are no possible facts under which Mr. Pittman would be entitled to recovery. The Plaintiffs erroneously allege that Stan Pittman's claims for intentional interference with the business relationship, suppression, fraud, and conspiracy are grounded in the Second Restatement of Agency and its adoption by the Alabama Supreme Court in Joe Cooper and Assoc., Inc. v. Central Life Assurance Co. 614 So. 2d

_____

claims alleged in the Complaint.

982, 991 (Ala. 1992). (Pl.'s Mot. Remand, p. 4.) The Plaintiff's take on the Restatement of Agency is simply wrong. Instead, a more careful, less cursory read of the Second Restatement of Agency, <u>Cooper</u>, and a case decided by this Court, <u>Moorer v. Hartz Seed Co.</u>, 120 F. Supp. 2d 1283 (M.D. Ala. 2000), reveals that the very Restatement of Agency upon which the Plaintiff bases its entire argument completely precludes Mr. Pittman's claims.

The Second Restatement of Agency forbids an employee who suffers economic loss or injury from bringing any claims against a third party that caused harm or misfortune to the employee's company. Section 374(2) of the Second Restatement of Agency, states that "[a] servant or other agent has no action of tort because another has tortiously harmed the principal or destroyed his business, unless the other acted for the purpose of harming the agent's interests." The Restatement (2d.) of Agency §374(2) (2004). The authors of this Restatement give both a comment and an illustration, making clear the meaning of this provision. The Comment states that:

> "[i]n conformity with the normal tort rule, a servant who loses his job or otherwise suffers economic loss as a result of the principal's misfortune, tortiously caused by another, has not thereby an action against the other. If, however, the other destroys the master's business in order to cause loss to the servant, the latter has a cause of action."

The Restatement (2d.) of Agency §374(2), Comment b (2004).

The Restatement authors then clarify this even further through two illustrations:

> 1) Because of hatred of P, T burns P's manufactory, thereby causing A, an employee, to lose his job. T is not liable to A.

> 2) P, a stern parent, dislikes attention which A, a manager of a small business owned by T, is paying to P's daughter. In order to harm A, P, by underselling T's products at a loss, causes T's bankruptcy and A loses his position. A has a cause of action.

The Restatement (2d.) of Agency §374(2), Illustration.

In the instant case, the Plaintiffs have admitted that in order to avoid federal jurisdiction, they must convince this Honorable Court that Stan Pittman has a legitimate claim, as an individual, against Dana Rector as an individual. Thus, Stan Pittman must be able, without committing fraud, to allege that the conduct complained of arose out of Dana Rector's hatred and dislike of Stan Pittman, as an individual.[10] He cannot.

The Plaintiffs erroneously contend that the caveat in the Restatement of Agency that an individual can bring a claim against a third party if he was intentionally harmed by the third party applies to this case. This position is preposterous. To the contrary, Stan Pittman is precisely the type of agent the Restatement says does not have a claim. None of the Defendants had met or even knew Stan Pittman before meeting him at the February 7, 2005 meeting. As such, Mr. Pittman cannot possibly allege that the Defendants, including Mr. Rector, set out to harm him unless that allegation is purely fraudulent.

Mere common sense suggests that if the Defendants made any intentional fraudulent representations at the meeting, these representations would have been meant to harm

---

[10] Since Mr. Jansen is a North Carolina resident, Mr. Pittman and Mr. Rector are the only two parties who have a common residence. The Plaintiffs' Motion to Remand states, "[a]ll that is required by the Plaintiffs is to show that there is some possible cause of action that Mr. Pittman may maintain against the Georgia Defendants." *See* Plaintiffs' Motion to Remand, p. 3 - 4.

Plaintiff Morris Products, not employee Stan Pittman. According to the comment, the intentions would have to be reversed. The Defendants would have had to act for the purpose of intentionally harming Stan Pittman and the harm caused to MFP would be a mere by-product of the goal of harming Mr. Pittman. The Defendants have provided this Honorable Court with sworn affidavits stating specifically that they have never done or said anything to intentionally cause harm to Stan Pittman. This evidence alone precludes any possibility of recovery by Stan Pittman. The Plaintiffs will likely argue that these affidavits create a fact issue, however, the Plaintiffs themselves have stated that the evidence of intent lies solely with the Defendants.[11] The Plaintiffs have conceded that "only the Defendants can speak of why they committed the wrongful acts against the Plaintiffs," and that is exactly what is being done. The Defendants have testified that they did not even know Stan Pittman, much less set out to harm him. This same proposition was followed in this Honorable Court's order denying jurisdictional discovery.[12] There is no fact issue created because the Plaintiffs and this Honorable Court have agreed that there is no evidence that the Plaintiffs can submit that will show the Defendants' intent. The only evidence of intent is the affidavits submitted by the Defendants and based on this evidence, there is no possibility that the Defendants

---

[11] "Mr. Pittman does not possess the information of Defendants' intent or conditions of the mind regarding the wrongful actions against Plaintiffs. Only the Defendants can speak of why they committed the wrongful acts against the Plaintiffs." p. 8 of Plaintiffs' Response to Order to Show Cause Why Defendants' Motion For Leave to Conduct Jurisdiction-Related Discovery Should Not Be Granted.

[12] "The intent of the Defendants would not be information in the possession of Stan Pittman, however." p. 4 of the Order of Honorable Judge W. Harold Albritton, August 19, 2005, denying jurisdictional discovery.

intended to harm Stan Pittman directly. As such, he is forbidden from bringing any claims against the Defendants.

The Plaintiffs also argue that the cases of <u>Moorer v. Hartz Seed Co.</u>, 120 F. Supp. 2d 1283 (M.D. Ala. 2000), and <u>Joe Cooper and Assoc., Inc. v. Central Life Assurance Co.</u>, 614 So. 2d 982 (Ala. 1992), support their claims, however this is not the case. The Plaintiffs here, much like those in <u>Moorer</u>, misinterpret the court's application of the Restatement in <u>Joe Cooper and Assoc., Inc. v. Central Life Assurance Co.</u>, 614 So. 2d 982 (Ala. 1992) because that case is easily differentiated from the case at bar. In <u>Cooper</u> the court determined that the defendants had intentionally tried to financially injure Plaintiff Fox. <u>Cooper</u>, at 992. However, a number of key facts differentiate the situation in <u>Cooper</u> from the instant case. First, Fox was the president, CEO, and chief stock holder of his company; Stan Pittman was merely an employee in charge of manufacturing and distribution. Second, Fox dealt extensively and exclusively with the defendant in a series of negotiations; Stan Pittman attended one short meeting with the Defendants, none of whom had ever met him prior to that time. Third, Fox entered into agreements with the defendant; neither Stan Pittman, nor his employer, MFP, for that matter, entered into any sort of agreement with the Defendants. Fourth, the defendant made specific fraudulent representations directly to Fox; if the Defendants made any fraudulent representations at the February 7, 2005 meeting, they were certainly not directed toward Mr. Pittman. Fifth, Fox relied upon the defendant's representations and acted upon them by entering into an agreement with another company as part of the agreement hashed out between Fox and the defendant; in the instant case, as

stated before, there was no agreement to begin with between the Plaintiff and the Defendants, and the Defendants did not tell Stan Pittman to do anything or say anything that could have resulted in him doing anything.  Sixth, Fox's employer never sued the defendant– only Fox sued; in this case, both Stan Pittman and his employer, MFP, have sued the Defendants.  Seventh, the defendant owed Fox a duty to disclose to him what they were planning to do because of their business relationship based on their agreement; in the instant case, the Defendants did not owe Stan Pittman any sort of duty.  For all of these reasons, the decision in Cooper is easily differentiated from the case at bar.

A case that is identical to the one presented is Moorer v. Hartz Seed Co., 120 F. Supp. 2d 1283 (M.D. Ala. 2000), which this Honorable Court decided.  In Moorer, Moorer Seed Company (MSC) and Melvin Moorer, Jr., an employee of MSC sued Hartz Seed Company for selling them substandard soybean seeds.  Melvin Moorer, in his capacity as an employee with MSC, signed the soybean contracts with the defendant, and thus, the disputed contracts were between MSC and the defendant.  The defendant objected to Melvin Moorer being joined to the lawsuit on the grounds that Federal Rule of Civil Procedure 17(a) requires that every civil action be prosecuted in the name of a real party in interest– a party that possesses an enforceable right.  Ultimately, this Court determined that Melvin Moorer was not a real party in interest and, thus, had been improperly joined in the action.

In rendering its decision, this Court consulted agency law to ascertain whether Moorer was properly joined as a real party in interest.  According to this Court, "[t]he general rule for both contract and tort suits is that an agent has no standing to sue, in his own

name, a third party who has allegedly perpetrated some actionable wrong against the principal." <u>Moorer</u>, 120 F. Supp. 2d at p. 1288, *citing* <u>Cooper</u>, 614 So. 2d at 991. Precisely like the Plaintiffs in the instant case, the plaintiffs in <u>Moorer</u> argued that under the standard adopted in <u>Cooper</u>, Moorer could maintain an individual action against the defendant because the defendant intended Moorer to act on the fraudulent representation in a manner affecting Moorer. However, as this Court rationally posited, "the difficulty with this approach is that it would allow virtually any employee 'affected' by an adverse action taken against his employer to sue the adverse actor . . . [and] [t]his standard would, of course, lead to absurd results." <u>Moorer</u>, 120 F. Supp. 2d at 1289. Moreover, this Court, in footnote (1), pointed out that <u>Cooper</u>, which was relied upon by the plaintiffs in <u>Moorer</u> and is relied upon by the Plaintiff in the instant case, was a different case with different facts "because there was evidence in the record suggesting that the third party had intended to harm the agent personally," and under those set of facts, the agent can then bring a claim in tort. There is no such evidence in this case. Insightfully, as it was relevant to the <u>Moorer</u> case and also relevant to the case at bar, this Court cited a hypothetical used by the Alabama Supreme Court in <u>Steiner v. Clisby</u>, 15 So. 612, 615 (1894) when addressing an analogous issue:

> If the false representation is made to A. to induce him to part with his money, and he does so, A. must sue; but, if made to him to induce B. to part with his, and B. is induced thereby to do so, he, and not A., is the party injured, who may maintain the action.

     <u>Moorer</u>, 120 F. Supp. 2d at 1287.

Using this logic, this Court concluded that "any harm done Moorer, Jr. was a consequence of his employment with MSC and is not cognizable . . . [and] [t]he real party in interest is MSC."

The principals and logic this Court employed in <u>Moorer</u> must also be applied in the instant case. Like plaintiff Moorer, Plaintiff Stan Pittman acted solely in his capacity as an agent for his employer, MFP when he attended the February 7, 2005, meeting with Defendant Universal and its employees, Defendants Missad, Jansen, Honholt, and Rector. Thus, like in <u>Moorer</u>, agency law dictates whether Mr. Pittman is or is not a proper party to this action. Therefore, Mr. Pittman, as an employee of Plaintiff Morris Products, acting solely as its agent, is precluded from bringing any tort claims against the Defendants. Also, like in <u>Moorer</u>, the Plaintiff in the case at bar has attempted to incorrectly rely upon <u>Cooper</u> to circumvent this provision in the law of agency. This Court already answered this argument in <u>Moorer</u> and specifically stated that allowing such an attempt would lead to absurd results. This is precisely what the Plaintiffs are asking this Honorable Court to do; believe in the absurdity that would be necessary for Stan Pittman to recover despite the Defendants lack of knowledge of him and lack of intent to hurt him. In the instant case, the affidavits of Defendants Missad, Honholt, Jansen, and Rector, all evidence that they never knew Stan Pittman until meeting him briefly at the February 7 meeting and inform this Honorable Court that if the Defendants made any misrepresentations those representations were not meant to induce action from or deceive Stan Pittman individually.

Finally, the Plaintiffs' own conduct proves the fact that the real claims, if any, lie

with MFP, not Stan Pittman.  On February 3, 2005, and February 21, 2005, MFP send out

demand letters that listed two settlement options with regard to the claims in this lawsuit.

Option A called for the total purchase of MFP's assets, with a $5 million payment to MFP,

with no payments to MFP employees.  Option B called for a lesser degree of assets to be

purchased and required that the Defendants provide employees for the business.  Again,

there was no demand for payment to Stan Pittman.  These demands make it clear that the

real claims in this case lie with MFP and Mr. Pittman's claims are simply derivatives of

those claims.  Claims by Stan Pittman do not appear until the Plaintiffs get ready to file a

lawsuit and are looking for a non-diverse plaintiff.  This further shows that Stan Pittman was

not the focus of some intentional harm, but rather an individual included in this lawsuit

solely for the purposes of defeating diversity jurisdiction.

More importantly, an essential fact that cannot be overlooked is that the February 3,

2005 demand letter absolutely proves that any attempt to claim proper standing by Stan

Pittman is outright fraud.  As shown above in the illustrations contained in the Restatement

of Agency, *supra*., in order for Stan Pittman to have proper standing as a Plaintiff in this

action he must prove that the alleged harm suffered by Morris Forest Products resulted out

of some action that was intended to harm Stan Pittman.  If instead, Stan Pittman's damages

simply arise out of the fact that he is an employee of Morris Forest Products, he does not

have standing to sue and this case must remain in Federal Court.

Stan Pittman has admitted in the Complaint that his claims arise solely out of the loss

of accounts suffered by Morris Forest Products.  In paragraph 21 of the Plaintiff's

Complaint, Stan Pittman admits that "Mr. Pittman was going to be paid an extra commission in addition to his salary based upon the volume of sales to Menards. As a result of the wrongful acts of the Defendants and the resulting loss of the products and the Menards' account, Mr. Pittman suffered damages through loss of commission."[13]  Thus, Pittman has already agreed that his losses are linked to the loss of business allegedly suffered by Morris Forest Products. As such, in order to determine whether Stan Pittman has proper standing as a Plaintiff in this case, the only question is whether Stan Pittman suffered losses because of harm to Morris Forest Products, or whether Morris Forest Products suffered harm because of intentional acts aimed at harming Stan Pittman. If the former is true, then Pittman has no standing and the Motion to Remand must be denied.

The February 3, 2005 letter described above, coupled with the affidavits attached hereto, are conclusive proof that Stan Pittman does not have standing as a Plaintiff in this case.[14]  By sending the February 3, 2005 letter, Morris Forest Products has established that its claimed losses had already occurred as of February 3, 2005.[15]  However, on that date, none of the individual Defendants had ever met Stan Pittman. They did not meet Stan Pittman until the February 7, 2005 meeting which occurred four days after Morris Forest

_____

[13] *See* Plaintiffs' Complaint, Exhibit "A", paragraph 21

[14] *See* Exhibits "C", "D", "E", and "F", and Exhibit "F" of the Brief in Support of the Petition for Removal, which attached as Exhibit "G".

[15] In fact, the February 3, 2005 letter specifically references MFP's alleged damages related to the loss of the Menard's account, which is the only basis of the damages alleged by Mr. Pittman. Thus, it is clear that the specific damages Mr. Pittman claims existed prior to the Defendants' knowledge of Mr. Pittman's existence.

Products explained its losses in writing. In fact, none of the individual Defendants even knew that Stan Pittman existed at a point in time that Morris Forest Products was already claiming damage arising out of the events described in the Plaintiff's Complaint. Because this evidence is undisputed, and because this evidence is written in Plaintiff Morris Forest Products' own hand, there is absolutely no set of circumstances in which Stan Pittman can claim that Morris Forest Products' alleged losses resulted out of some scheme which was actually intended to harm Stan Pittman. Because the Defendants were not even aware of Stan Pittman's existence at a point in time where Morris's claimed losses were already documented, any such claim would be nothing short of outright fraud.

Therefore, since the Defendants, especially Mr. Rector, did not intend to harm Mr. Pittman, and Mr. Pittman cannot show that he was the focus of the alleged acts, Mr. Pittman has no standing to sue and this Honorable Court should deny the Plaintiffs' Motion to Remand.

### b.    No Reliance

Since Mr. Pittman did not have a contractual relationship with Keystone and he was not a third party beneficiary under any contract with Keystone, his only possible claim would be for fraud.[16] One of the necessary elements for a prima facie case of fraud is reasonable

---

[16] The Plaintiffs have failed to designate which claims belong to Mr. Pittman and which claims belong to MFP, so the Defendants will proceed as if all of the claims are for Mr. Pittman. For arguments as to why Mr. Pittman has no claims for breach of contract, intentional interference with a business relationship, and suppression, please see Universal's Brief in Support of Petition for Removal, which is incorporated fully herein and attached hereto as Exhibit "G".

reliance on the part of the plaintiff. *See* Saia Food Distributors and Club, Inc. v. SecurityLink From Ameritech, Inc., 2004 WL 2757417 (Ala. 2004), *quoting* Waddell & Reed, Inc. v. United Investors Life Ins. Co., 875 So. 2d 1143, 1160 (Ala. 2003). In the instant case, Mr. Pittman, or MFP for that matter, cannot prove that he reasonably relied on any statements made by the Defendants and therefore, the fraud claims are simply not possible.

In the instant case, Stan Pittman as an individual did not and could not rely on anything done or said by the Defendants. A primary example of this is the demand letters sent by MFP on February 3, 2005, and February 21, 2005. Both of these letters include options A and B. Option A involves the outright purchase of all of MFP's assets and mentions nothing of the individual employees, while Option B retains some of the employees and avoid an outright purchase of the assets. Clearly, had Option A been chosen, Stan Pittman would be out of a job, but if Option B would have been chosen, he might have kept his position. In either event, Mr. Pittman was at the mercy of his employer, MFP. Mr. Pittman was not in control of his own destiny with regards to his employment with MFP, but rather MFP was in control. It is impossible for Mr. Pittman to rely on any alleged actions or statements by the Defendants when he did not even have a choice in the matter. Regardless of what was done or said at the meeting, Mr. Pittman was subject to whatever MFP decided to do, not what he wanted to do. He had no contractual relationship with any Defendant and had no say-so in any negotiations. For these reasons, he could not and did not rely on anything that was done or said by the Defendants and therefore, his claims are fraudulent.

**B.    Dana Rector is a Fraudulently Joined Defendant**

Dana Rector is fraudulently joined because the Plaintiffs have no possibility of recovery against him.  Mr. Rector had no knowledge of any relationship between Universal and Keystone until the February 7, 2005, meeting. Mr. Rector is the Director of Manufacturing and his role with Universal is solely in the manufacturing of products; he is not involved in negotiations of contracts between Universal and other entities.

Additionally, Mr. Rector's participation in the February 7, 2005 meeting was solely for the purpose of inspecting MFP's manufacturing facilities.  His only statements at the meeting consisted of a brief introduction of who he was and what he did.  The statements undisputably can not be actionable as fraud or as a misrepresentation because Mr. Rector was truthful in his identity.  If the Plaintiffs were allowed any possibility of recovery against Mr. Rector, every secretary or similar office staff could potentially be sued for statements made by others in a meeting.[17]  The secretary may have only been in the meeting to say hello and bring some coffee, however the Plaintiffs would want this Honorable Court to believe that there is a possibility of recovery against her, solely for her attendance.  This is ridiculous and shows the measures the Plaintiffs are willing to go to avoid federal jurisdiction.  This Honorable Court should not be blinded by such tactics and thereby deny the Plaintiffs'

---

[17] Plaintiffs' Complaint does not even delineate the fraudulent statements allegedly made by Mr. Rector.  The Plaintiffs have simply attributed some fraudulent statements to a group of people, however Alabama law requires that they specifically state who said which statement. *See* Brooks v. Blue Cross & Blue Shield of Florida, 116 F.3d 1364, 1381 (11th Cir. 1997). This issue is addressed in Mr. Rector's Motion to Dismiss / Motion for More Definite Statement, which is incorporated by reference herein.

Motion to Remand.

**C.    Kraig Jansen's is a North Carolina Resident**

The Plaintiffs have joined Kraig Jansen is a Georgia resident, however this is not so. Kraig Jansen has lived in North Carolina since 1992 and has intended for North Carolina to be his permanent residence since that time.[18]  Therefore, Mr. Jansen is not a Georgia resident, thereby making him completely diverse from the Plaintiffs.  His residency was fraudulently plead by the Plaintiffs and therefore, should not be considered in determining diversity jurisdiction.

**<u>CONCLUSION</u>**

For the reasons stated, this Honorable Court should deny the Plaintiffs' Motion to Remand.  Currently pending before the Court are Motions to Dismiss filed by Defendants Missad, Honholt, Jansen, and Rector, and, for reasons stated therein, these Motions are due to be granted.  This would leave the parties in complete diversity and make the Plaintiffs' Motion to Remand moot.

The Plaintiffs' Motion to Remand is also due to be denied because the Plaintiffs have fraudulently joined Stan Pittman and Dana Rector and fraudulently plead jurisdictional facts about Kraig Jansen.  Stan Pittman is not a proper party to this case because there is no possibility that Mr. Pittman can recover against any of the Defendants.  According to

---

[18] See Affidavit of Kraig Jansen, Exhibit "F"

Alabama law, specifically a decision rendered by this Honorable Court, Mr. Pittman, as an

agent of MFP, must prove that the Defendants' primary purpose in their actions was to harm

him. The Plaintiffs have absolutely no evidence of this, so much so that they did not even

plead intent on the part of the Defendants. Additionally, the Plaintiffs own demand letters

never mention Mr. Pittman and he does not appear until jurisdiction is considered. Simply

put, Mr. Pittman is an employee who was allegedly injured when a business deal between

his employer, MFP, and Keystone was not renewed. This is precisely the type of claim this

Honorable Court precluded in <u>Moorer</u> and that was considered absurd by this very Court.

Mr. Pittman also lacks standing because he did not rely on anything the Defendants

said or did. Reliance is another necessary element that Mr. Pittman has no evidence of and

therefore no claim. As an employee of MFP, Mr. Pittman's salary was allegedly tied to what

MFP decided to do. Mr. Pittman had no say-so or control over what was going to happen

and was an employee who was at the mercy of his employer, MFP. Therefore, he not only

did not rely, but he also could not have relied on anything the Defendants did or said.

Finally, the Plaintiffs' Motion to Remand is due to be denied because they have

fraudulently joined the only non-diverse Defendant, Dana Rector. Mr. Rector had no

involvement with the negotiations between MFP and Keystone and played no role in the

discussions with MFP and Universal. While Mr. Rector was present at the meeting on

February 7, 2005, he merely stated his name and position with the company. His purpose for

being there was to inspect the manufacturing facilities. He never made any statements,

much less fraudulent ones, that could have harmed anyone. For these reasons, Mr. Rector is

not a proper Defendant and should be dismissed from this action. This would leave

complete diversity among the parties, thereby requiring this Honorable Court to deny the

Plaintiffs' Motion to Remand.


Respectfully submitted,


***s/Joseph E. Stott***

_____

Attorney for Defendant Universal Forest
Products, Matthew Missad, Douglas
Honholt, Dana Rector, and Kraig Jansen
2450 Valleydale Road
Birmingham, Alabama 35244
Phone: 205-967-9675
Facsimile: 205-967-7563
jstott@sssandf.com
**ASB-4163-T71J**


**OF COUNSEL:**

**SCOTT, SULLIVAN, STREETMAN & FOX, P.C.**
2450 Valleydale Road
Birmingham, AL 35244
(205) 967-9675
E-mail: jstott@sssandf.com Email Joseph Stott

## CERTIFICATE OF SERVICE

      This is to certify that on this 2nd day of September, 2005, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the attorneys of record, and I hereby certify that I have mailed by U.S. Mail the document to the non-CM/ECF participant:

Tref Cleveland
Maynard, Cooper & Gale, P.C.
AmSouth/Harbert Plaza
1901 6th Avenue North, Suite 2400
Birmingham, Alabama 35203-2618

                        Respectfully submitted,

                        *s/Joseph E. Stott*
                        **ASB-4163-T71J**
                        Attorney for Defendant Universal Forest
                        Products, Matthew Missad, Douglas
                        Honholt, Dana Rector, and Kraig Jansen
                        2450 Valleydale Road
                        Birmingham, Alabama 35244
                        Phone: 205-967-9675
                        Facsimile: 205-967-7563
                        jstott@sssandf.com
                        **ASB-4163-T71J**

**EXHIBIT "A"**

**EXHIBIT "B"**

**EXHIBIT "C"**

**EXHIBIT "D"**

**EXHIBIT "E"**

**EXHIBIT "F"**

**EXHIBIT "G"**

**EXHIBIT "H"**