**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **MORRIS FOREST PRODUCTS, LLC,** | ) | |
| **et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **CASE NO.  05-CV-00564** |
| **v.** | ) | |
| | ) | |
| **KEYSTONE EXTERIOR DESIGN,** | ) | |
| **LLC, et al.** | ) | |
| | ) | |
| **Defendants.** | ) | |

**PLAINTIFFS'  REPLY TO UNIVERSAL FOREST PRODUCTS, KEYSTONE**
**EXTERIOR DESIGN, LLC, JERRY TURNER AND DON LUDWIG'S**
**RESPONSE TO PLAINTIFFS' MOTION TO REMAND**

COME NOW Plaintiffs Morris Forest Products, LLC and Stan Pittman, by and through

counsel, and in reply to Defendants' Response to Plaintiffs' Motion to Remand[1], move this Court

to grant Plaintiffs' Motion to Remand.  As grounds therefore, Plaintiffs would show unto the

Court as follows:

**FACTS**

Plaintiffs filed this action in the Circuit Court of Tallapoosa County, Alabama, Alexander

City Division, on or about May 12, 2005.  Plaintiffs' Complaint alleges the following causes of

action against all Defendants:  Breach of Contract, Intentional Interference with a Business

Relationship, Suppression, and Fraud.  Defendants removed this action from State Court on the

basis of diversity jurisdiction and the fraudulent joinder of non-diverse parties, including Stan

Pittman and the individual defendants who are employees of Universal Forest Products and

---

[1] Defendants Keystone Exterior Design, LLC, Jerry Turner and Don Ludwig and Defendant Universal Forest
Products filed separate responses to Plaintiffs' Motion to Remand.  Plaintiffs' reply is a single reply to both sets of
Defendants' Response to Plaintiffs' Motion to Remand.

residents of the state of Georgia.[2]  Plaintiffs followed with a Motion to Remand, which led to Defendants' request to conduct jurisdiction-related discovery.  The Court denied Defendants' request to conduct jurisdiction-related discovery.

This litigation centers around a Licensing Agreement entered into between Keystone and Morris Forest Products on or about November 21, 2003.  The Agreement granted Morris Forest Products the right to manufacture and market several products, including a residential deck system.  The Agreement also granted Morris Forest Products the right of first refusal in the event that Keystone received an offer to purchase its stock from a third party.  Without disclosure to Morris Forest Products, Keystone entered into discussions with Universal for the sale of Keystone to Universal.  In January/February 2005, defendants Universal and Keystone requested a conference with Morris Forest Products, specifically with the desire to have the conference at the manufacturing facilities of Morris Forest Products.  *See* Affidavit of Stan Pittman, paragraph 6, attached hereto as Exhibit A.  This meeting occurred on or about February 7, 2005 and was attended by representatives of Keystone and Universal.  Defendant Jerry Turner was the representative from Keystone while defendants Matthew Missad, Daniel Rector, Douglas Honholt, and Craig Jansen were all present on behalf of Universal. *See* Affidavit of Stan Pittman.  During this conference, all individual defendants, including Mr. Rector, made representations regarding the future relationship between Morris Forest Products and Keystone/Universal.  *See* Affidavit of Stan Pittman.  After the conference, the five individual defendants requested a tour

---

[2] The Plaintiffs, based on information and relief, allege in their Complaint that Dan Rector and Craig Jansen are resident citizens of the State of Georgia.  Attached to Defendant Universal's Response to Plaintiffs' Motion to Remand was an Affidavit of Mr. Jansen stating he was not a resident of Georgia but instead of North Carolina.  Defendants did admit Mr. Rector is a citizen of Georgia.  *See* Universal's Response to Plaintiff's Motion to Remand, page 8.  It is interesting to note that Defendant Universal's Notice of Removal did not dispute that Mr. Jansen was a resident of Georgia.  *See* Universal's Notice of Removal.  This Court, in Your Honor's Order of August 19, 2005 even stated that it was apparent that there is no dispute as to whether Mr. Jansen or Mr. Rector were residents of Georgia.  *See* Your Honor's Order of August 19, 2005, page 3.  This apparent change in facts should have no bearing on this Court's analysis since it has been admitted  that Mr. Rector is a citizen of Georgia, and therefore complete diversity does not exist.  However, plaintiff's do reserve all objections to Mr. Jansen's alleged residency.

of Morris Forest Products production area to view their manufacturing area and production line. It was only after additional representations and assurances of a continued business relationship that Morris Forest Products agreed to allow the representatives from Keystone and Universal to tour their facilities. *See* Affidavit of Stan Pittman. During the tour, the individual defendants again, including Rector, made representations and guarantees regarding a continued business relationship between Morris Forest Products and Keystone/Universal. During the tour, the individual defendants representing Universal asked several specific questions regarding Morris Forest Products' manufacturing process, space needed, employees needed, inventory and production rates. *See* Affidavit of Stan Pittman. The individual defendants representing Universal also took specific notes and drew various diagrams of Morris Forest Products' facilities. *See* Affidavit of Stan Pittman.

On the same night of February 7, 2005, plaintiff Stan Pittman had dinner with Jerry Turner. *See* Affidavit of Stan Pittman. At this dinner, Mr. Turner offered Mr. Pittman employment with Keystone/Universal in the residential deck system product line. *See* Affidavit of Stan Pittman. Mr. Pittman declined Mr. Turner's invitation, but Mr. Turner continuously made employment advances to Mr. Pittman. Mr. Pittman declined his offers and told him Mr. Tuner that he was loyal to Morris Forest Products.

This sale of Keystone to Universal ultimately occurred and Morris Forest Products was never given the right of first refusal due under the Licensing Agreement. Universal then terminated the Licensing Agreement and took over the manufacturing and distributing of the products outlined in the Agreement. Morris Forest Products was left with a substantial investment in equipment and inventory that it could not use. As a result of Defendants' tortious

action and the breach of the Licensing Agreement, Morris Forest Products was substantially damaged.

In addition, Stan Pittman also suffered injury. Contrary to Defendants' assertions, Stan Pittman was not an employee of Morris Forest Products, but instead was an independent contractor and received an 1099 from Morris Forest Products. *See* Affidavit of Stan Pittman. Mr. Pittman was in charge of the manufacturing and distribution of products under the Licensing Agreement with Keystone. Id. Mr. Pittman expected to earn significant commission based upon the volume of sales under the Licensing Agreement. Defendant Jerry Turner was aware that Mr. Pittman was solely compensated by Morris Forest Products based on commission. Id. As a result of defendants' wrongful acts, Mr. Pittman suffered damages and lost commission.

## LEGAL STANDARD

In alleging fraudulent joinder, the removing party has the burden of proving that either: (1) there is no possibility plaintiff can establish a cause of action against a resident defendant, or (2) plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into State court. *Pacheco de Perez v. AT&T Company*, 139 F. 3d. 1368, (11th Cir. 1998).[3] When reviewing the issue of fraudulent joinder, the district court should preserve all questions of fact and controlling law in favor of the plaintiff. *Cabalceta v. Standard Fruit Company*, 833 F. 2d. 1553 (11th Cir. 1989). Further, all doubts about removal and jurisdiction should be resolved in favor of a remand to state court. *University of South Alabama v. American Tobacco Company*, 168 F. 3d. 405 (11th Cir. 1989).

---

[3] The Eleventh Circuit has identified a third situation of fraudulent joinder, "Where a diverse defendant is joined with a non-diverse defendant as to whom there is no joint, several or alternative liability and where the claim against the diverse defendant has no real connection to the claim against the non-diverse defendant." *Triggs v. John Crump Toyota, Inc.*, 154 F. 3d. 1284, 1287 (11th Cir. 1998). Based on the facts of this action, it is apparent that the third situation promagated in *Triggs* does not apply to this litigation.

The Eleventh Circuit has gone to great detail to articulate the difficult standard facing a defendant alleging fraudulent joinder. "If there is even a possibility that a State Court would find that the Complaint states a cause of action against any one of the resident defendants, the Federal Court must find the joinder was proper and remand the case to State Court." *Triggs v. John Crump Toyota, Inc.*, 154 F. 3d. 1284, 1287 (11th Cir. 1998). (Citing *Coker v. Amoco Oil Company*, 709 F. 2d. 1433, 1040-41 (11th Cir. 1983)). The court in *Triggs* further expanded upon *Coker* and stated, "The plaintiff need not have a winning case against the allegedly fraudulent defendant; he need to only have a possibility of stating a valid cause of action in order for the joinder to be legitimate." *Triggs*, 154 F. 3d. at 1287. Further, the Eleventh Circuit in *Crowe v. Cullman* stated:

> For a Plaintiff to present an arguable claim against an in-state defendant and, therefore, to require the case removed to Federal Court to be remanded to state court, **the plaintiff need not show that he could survive in the district court a motion for summary judgment filed by that in-state defendant. For a remand, the plaintiff's burden is much lighter than that:** after drawing all reasonable inferences from the record in the plaintiff's favor and then resolving all contested issues of fact in favor of the plaintiff, there need only be "a reasonable basis for predicting that the state law **might** impose liability on the facts involved."

*Crowe v. Cullman*, 113 F. 3d. 1536, 1544 (11th Cir. 1997) (quoting *Bobby Jones Apt. Inc. v. Suleski* 391 F. 2d. 172-173 (5th Cir. 1968).[4]

The Court in *Crowe* further cautioned, "District courts must exercise extraordinary care to avoid jumbling up motions for remand and motions for summary judgment that come before them." *Crowe*, 113 F. 3d. at 1542. Although district courts may look beyond the face of the Complaint, "The district court is to stop short of adjudicating the merits of the case that do not appear regularly to be frivolous or fraudulent." *Id.*

---

[4] The Eleventh Circuit adopted all decisions from the former Fifth Circuit issued prior to October 1, 1999. *Bonner v. City of Pritchard*, 661 F. 2d. 1206 (11th Cir. 1981).

<u>**ARGUMENT**</u>

**I.    DEFENDANTS' ENTIRE FACTUAL PREMISE FOR THEIR REMOVAL IS INCORRECT**

Defendants base their entire removal on the alleged factual premise that Pittman is a "mere employee" and therefore cannot recover damages and does not have a cause of action independent from Morris Forest Products.  The Defendants are wrong.  First, Pittman is **not** an employee.  *See* Affidavit of Stan Pittman, paragraph 3.  Pittman does not receive a W-2 from Morris Forest Products.  *Id.*  Instead, Pittman is an independent contractor who receives a 1099 form Morris Forest Products.  *Id.*  Second, Pittman was the lead point man for Morris Forest Products for the residential deck system.  *Id.* at paragraph 4.  Pittman spent twenty-four months working on this project and invested his time and effort in hopes of receiving substantial commission. Id.

These two facts totally undercut Defendants' arguments and are distinguishing facts for the case law cited by Defendants.

**II.    MOTION TO DISMISS**

Defendants' Motions to Dismiss are not proper at this point in the litigation.  Defendants' motions should be delayed until a ruling on Plaintiffs' Motion to Remand has been issued.[5]

**III.    THE COMPLETE DIVERSITY RULE**

The United States Supreme Court has consistently interpreted diversity jurisdiction as requiring complete diversity.  *Exxon Mobil Corporation v. Allapattah Services, Inc.*, 125 S. Ct. 2611, 2617 162 L. Ed. 2d. 502, 518 (2005).  "In a case with multiple plaintiffs and multiple

---

[5] Undersigned counsel contacted the Court Clerk to determine whether Plaintiffs should respond to Defendants' Motions to Dismiss before a ruling was issued on Plaintiffs' Motion to Remand.  Plaintiffs were told not to respond to Defendants' Motions to Dismiss until the Court had determined the jurisdictional issues.  Further, Plaintiffs were told that if the Court retained jurisdiction over the litigation the Court would issue an order setting deadlines to respond to the Defendants' Motions to Dismiss.

01227666.1

defendants, the presence in the action of a single plaintiff from the same state as a single defendant deprives the district court of original diversity jurisdiction over the entire action." *Exxon Mobil Corporation,* 125 S. Ct. at 2617;  12 L. Ed. 2d. at 517 (citing *Strawbridge v. Curtis*, 7 U.S. 267, 3 Cranch 267, 2 L. Ed. 435 (1806);   *Owen Equipment and Erection Company v. Kroger,* 437 U.S. 365, 375, 57 L. Ed. 2d. 274, 98 S. Ct. 2396 (1978)).  The court in *Exxon* further stated

> "[the court]…has adhered to the complete diversity rule in light of the purpose of the diversity requirement, which is to provide a federal forum for important disputes where state courts might favor, or be perceived as favoring, home state litigants.   The present case has parties from the same state on both sides of the case dispels this concern, illuminating your principle reason for conferring §1332 jurisdiction over any of the claims in the action."

*Exxon Mobil Corporation,* 125 S. Ct., at 2617-2618, 162 L. Ed. 2d. at 517.

As stated above, in actions involving multiple plaintiffs and multiple defendants, once it is determined that there is no complete diversity of citizenship of the parties, the existence of Federal Diversity jurisdiction is defeated.  *Id.*  Further all claims, even claims among diverse parties, must be remanded back to state court.  *Id.*

In this case, all Plaintiffs have to show is that a plaintiff and a defendant are non-diverse parties.  Plaintiffs have accomplished this task since Defendants have admitted that Mr. Pittman and Mr. Rector are the only two parties that have a common residence.  *See* Universal Forest Products' Response to Plaintiffs' Motion to Remand, page 8, footnote 10.

Universal Forest Products' argument that a cause of action must be established specifically between Mr. Pittman and Mr. Rector is not correct.[6]  Plaintiffs do not have to show a valid claim between the non-diverse defendants (Mr. Pittman and Mr. Rector).  Instead, so long

---

[6] Plaintiffs acknowledge that in their Motion to Remand they stated, "All that is required by the Plaintiffs is to show that there is some *possible* cause of action that Mr. Pittman may maintain against the Georgia Defendants."   While certainly a cause of action against a Georgia Defendant would defeat diversity, it is not required to do so.

as a single plaintiff and a single defendant share common residency, the plaintiff (sharing the common residency) has a valid cause of action against any defendant, and any plaintiff has a valid claim against the non-diverse defendant, then complete diversity does not exist.  For example, in this litigation so long as Mr. Pittman has a valid claim against any defendant and so long as any plaintiff has a valid claim against Mr. Rector, there is not complete diversity of citizenship and this case must be remanded back to state court based on the holding in *Exxon Mobil Corporation v. Allapattah Services, Inc.* (citation omitted).

## IV.    PLAINTIFFS HAVE PROPERLY PLED ALL CAUSES OF ACTION AGAINST DEFENDANTS

Defendant Universal Forest Products argues that Stan Pittman is a fraudulently joined plaintiff since Plaintiffs' Complaint does not properly plead intent.  Universal offers no case law on this argument but it simply generally states intent was not properly pled.  Plaintiffs' pleadings are sufficient and Defendants' claims to the contrary are unfounded:

> Under Rule 8, Alabama Rules of Civil Procedure, a Complaint is sufficient if it puts a defendant on notice of the claims against him. (Citing *Phillips College of Alabama, Inc. v. Lester*, 622 So. 2d. 308, 311 (Alabama 1993)…. However the rule of generalized notice pleading is qualified by Rule 9(b), where the Plaintiff pleads fraud.  This special requirement as to fraud does not require every element in such actions to be stated with particularity.  It simply commands the pleader to use more than generalized or conclusionary statements to set out the fraud complaint of.  The pleading must show time, place, the contents or substance of the false representations, the fact misrepresented, and identification of what has been obtained.  But knowledge by the defendant of the falsity of the representation and reliance on the representation by the plaintiff can still be generally alleged…. Rule 9(b) also provides that conditions of the mind, such as malice, intent or knowledge, may be averred generally since **further specification in such cases is possible only by pleading the evidence**.

*Bethel v. Thorn*, 757 So. 2d. 1154, 1158 (Ala. 1999).

Plaintiffs' Complaint clearly puts Defendants on notice of Mr. Pittman's potential claims. Further, it cannot be denied that Plaintiffs pled with particularity[7] their Fraudulent Misrepresentation and Fraudulent Suppression claims. See Plaintiffs' Complaint, Count 3, paragraph 33-35 and Count 4, paragraph 36-40, attached hereto as Exhibit B. Plaintiffs are not required to specifically plead conditions of the mind, which in this case would be the Defendants' intent and reasons for wrongful actions. As the Court in *Bethel* stated, "conditions of the mind may be pled generally," therefore, Plaintiffs have properly pled the causes of action asserted by Mr. Pittman. *Bethel*, 757 So. 2d. at 1158. Further, in an Order dated August 19, 2005,[8] this Court stated the following:

> Universal Forest Products has alluded to three facts in the context of a discussion of the Plaintiffs' sufficiency of pleading. The first fact mentioned is that the Plaintiffs have yet to identify the individuals who made alleged fraudulent statements. In the Complaint, however, the Plaintiffs allege the following: "Defendants Universal, Missad, Honholt, Rector and Jansen in a face-to-face meeting held at MFP on January 7, 2005 made...material representations to the Plaintiffs...." Complaint at ¶ 38. Universal Forest Products has not demonstrated, therefore, that discovery is required as to the Defendants' identity. Universal Forest Products also states that intent on the part of the Defendants is an element of Stan Pittman's claims. The intent of the Defendants would not be information in the possession of Stan Pittman, however.

According to the Alabama Rules of Civil Procedure and the holding in *Bethel*, Plaintiffs are not required to plead with particularity conditions in the mind. Further, this Court has already confronted this issue of Plaintiffs' pleading of Defendants' intent in their Complaint.

## V.     PLAINTIFF STAN PITTMAN CERTAINLY HAS A POSSIBILITY OF RECOVERY

---

[7] By satisfying the time, place, substance requirements of Rule 9(b) and *Bethel*, Plaintiffs' causes of actions have by plead with particularity and specifically. *See* paragraph 21 of Plaintiffs' Complaint.

[8] On August 19, 2005, this Court issued a written order denying the Defendants' Motion for Leave to Conduct Jurisdiction Related Discovery.

Defendants argue that the Restatement (Second) of Agency § 374(2) provides no recovery to Mr. Pittman. The Defendants further argue that the cases of *Joe Cooper & Associates v. Central Life Assurance Company*, 614 So. 2d. 982 (Ala. 1992) and *Moorer v. Hartz Seed Company,* 120 F. Supp. 2d. 1283 (M.D. Ala. 2000) can be distinguished from the facts of this suit. Plaintiffs generally do not disagree with Defendants' characterization of the law surrounding the Restatement (Second) of Agency, but instead take issue with Defendants' application of facts to the law.

It is true that in order for Mr. Pittman to ultimately recover, he must show his master's business was destroyed in order to cause harm to him. The Restatement (Second) of Agency § 374(2), Comment (B) cannot be clearer:

> [i]n conformity with the normal tort rule, a servant who loses his job or otherwise suffers economic loss as a result of the principal's misfortune, tortiously caused by another, has not thereby an action against the other. **If, however, the other destroys the master's business in order to cause loss to the servant, the latter has a cause of action.**

The Restatement (2d.) of Agency § 374(2), Comment B (2004).

The second sentence of Comment (B) gives the individual a valid cause of action, so long as he can meet the proper burden of proof. Defendants argue that the facts in this action are such that,

> The Plaintiffs erroneously contend that the caveat in the Restatement of Agency that an individual can bring a claim against a third party if he was intentionally harmed by the third party applies to this case. This position is preposterous. To the contrary, Stan Pittman is precisely the type of agent the Restatement says does not have a claim. None of the Defendants had met or even knew Stan Pittman before meeting him at the February 7, 2005 meeting. As such, Mr. Pittman cannot possible allege that the Defendants including Mr. Rector, set out to harm him unless that allegation is purely fraudulent.

*See* Defendant Universal's Response to Plaintiffs' Motion to Remand, page 8.

As previously stated in the Facts section of this brief, the Plaintiffs allege that the Defendants' Affidavits contain portions which are inaccurate. Clearly, the statement that, "None of the Defendants had met or even knew Stan Pittman before the February 7, 2005 meeting" is untrue. Defendant Jerry Turner had dealt with Mr. Pittman numerous times and also had continuous contact with Pittman regarding the residential deck system. Further, even if the Universal Defendants had never "met" Mr. Pittman prior to the February 7th meeting, clearly those Defendants, including Mr. Rector, had knowledge of the relationship between Keystone and Morris Forest Products.[9] While Defendants allege that, "mere common sense suggests that if the Defendants had any intentional fraudulent representations at the meeting, these representations would have been meant to harm Plaintiff Morris Forest Products, not employee Stan Pittman." *See* Defendant Universal's Response to Plaintiffs' Motion to Remand, pages 8-9. The appropriate legal standard before this Court is not "mere common sense". All Mr. Pittman must present is a mere "possibility of recovery" against any of the Defendants. *Triggs,* 154 F.3d @ 1287. Mr. Pittman has met his burden by stating in his affidavit, **"It is my strong belief that Keystone and Universal sought vengeance against myself and Morris Forest Products as a result of my denial of their employment opportunity."** *See* Affidavit of Stan Pittman, paragraph 10.

Next, Defendants argue that *Joe Cooper & Associates v. Central Life Assurance Company.,* 614 So. 2d. 982 (Ala. 1992) does not support Plaintiffs' claims. The Defendants attempt to distinguish *Cooper* on the basis of, again facts, not law.

In *Cooper*, various corporations and agents of those corporations filed an action against Central Life Assurance Company alleging counts such as breach of contract, intentional

---

[9] *See* Affidavit of Stan Pittman, paragraph 5.

interference and fraud. *Cooper,* 614 So. 2d. at 983. During its analysis, the Court concluded that James Fox's fraud claim, based on a loss of commission, should not have been dismissed on Defendant's Motion for Summary Judgment. *Id.* at 983. Mr. Fox brought a fraud claim against Central based on the purported contract and agency relationship he negotiated between Central and American Medical Administration Group, Inc., which was the corporation Mr. Fox was an agent for. *Id.* at 991. The Court stated that, "[a]n agent can maintain a fraud action against a third party to recover for injuries suffered while transacting business for his principle if the third party intended that the agent act on the fraudulent representations in a manner affecting the agent." *Id.* at 991. The Court further stated that, "[t]he question of whether the third party intended for his conduct to harm the agent personally is a question for the jury to resolve". *Id.* Based on the above, the Court in *Cooper* reversed the trial court's grant of summary judgment and remanded the issue back to the trial court for a jury to determine the issue. *Id.* at 992.

Defendants first attempted to differentiate the facts in *Cooper* by stating, "First, Fox was the president, CEO, and chief stock holder of his company; Stan Pittman was merely an employee in charge of manufacturing and distribution." *See* Defendant Universal's Response to Plaintiffs' Motion to Remand, page 10. While the Court in *Cooper* certainly did not limit recovery under the Second Restatement only to presidents and CEOs of companies, nonetheless, Defendants' characterization of Mr. Pittman is untrue. *See* paragraphs 3 and 4 of Stan Pittman's Affidavit. As discussed above, Mr. Pittman was clearly not a "mere employee" but the point man for this project with over twenty-four months entrusted. Plaintiffs next argue, "Second, Fox dealt extensively and exclusively with the defendant in a series of negotiations; Stan Pittman attended one short meeting with the Defendants, none of whom had ever met him prior to that

time."[10]  Again, Defendants' characterizations of the facts are incorrect.  As stated in Mr. Pittman's Affidavit, he was the lead person on this project and worked continuously with Defendant Keystone, which included various negotiations.  Defendants also argue, " Third, Fox entered into agreements with the defendant;  neither Stan Pittman, nor his employer, MFP, for that matter, entered into any sort of agreement with the Defendants."  *Id.*  Likewise, this statement is clearly untrue.  As alleged in Plaintiffs' Complaint, Morris Forest Products had a valid agreement with Defendant Keystone.  Further, as stated in the Complaint and Mr. Pittman's Affidavit, Universal, Keystone and the individual defendants made various fraudulent representations regarding the continued business relationship between Keystone/Universal and Morris Forest Products.  For the same reason as stated in response to Defendants' fourth argument, Defendants' fifth argument is clearly untrue.[11]  Sixth, Defendant argue, "Fox's employer never sued the defendant, only Fox sued; in this case, both Stan Pittman and his employer, MFP, have sued the Defendants."[12]  Nowhere in the Court's holding in *Cooper*, or the Restatement (Second) of Agency § 374(2), is it stated that if the employer brings an action, the employee's individual action is barred.  Defendants' final factual distinction and argument states, "Seventh, the defendant owed Fox a duty to disclose to him what they were planning to do because of their business relationship based on their agreement;  in the instant case, the Defendants did not owe Stan Pittman any sort of duty.  For all of these reasons, the decision in *Cooper* is easily differentiated from the case at bar."  *Id.*  As many of the other factual

---

[10] *See* Defendant Universal's Response to Plaintiffs' Motion to Remand, page 10.

[11] "Fifth, Fox relied upon the defendant's representations and acted upon them by entering into an agreement with another company as part of the agreement hashed out between Fox and the defendant;  in the instant case, as stated before, there was no agreement to begin with between the Plaintiff and the Defendants, and the Defendants did not tell Stan Pittman to do anything or say anything that could have resulted in him doing anything." *See* Defendant Universal's Response to Plaintiffs' Motion to Remand, pages 10-11.

[12] *See* Defendant Universal's Response to Plaintiffs' Motion to Remand, page 11.

distinctions in Defendants' argument, number seven it is simply just not true. As stated in the Plaintiffs' Complaint, Morris Forest Products and Defendant Keystone had a valid contractual business relationship. Further, Keystone **did** have a duty to disclose its relationship with Universal pursuant to its right of first refusal. *See* Plaintiffs' Complaint, paragraphs 11, 12, 18, 19. In addition, Defendant Universal, as stated in Mr. Pittman's Affidavit, made fraudulent representations regarding the continued business relationship between Keystone/Universal and Morris Forest Products. Certainly, Universal had a duty not to fraudulently misrepresent and make untrue assurances to both Morris Forest Products and Pittman.

For these reasons stated above, Defendants' contention that *Cooper* is factually different than the case at hand is not correct. Further, it is worth noting that Defendants have continuously attempted to argue that the "facts" in this case do not allow recovery for Mr. Pittman. As stated by the Court in *Cabalceta*, "the district court should preserve all questions of fact and controlling law in favor of the plaintiff. *Cabalceta,* 833 F.2d at 1555.

Defendants contend that *Moorer v. Hartz Seed Company,* 120 F. Supp. 2d. 1283 (M.D. Ala. 2000) is, "identical to the one presented." *See* Defendant Universal's Response to Plaintiffs' Motion to Remand, page 11. Defendants argue *Moorer* bolsters their argument, but clearly it does not at this juncture in the litigation. In *Moorer*, this Court adopted *Cooper* and the cause of action stated in the Restatement (2d.) of Agency, § 374(2). *Moorer,* 120 F. Supp. 2d. at 1288-1289. *Moorer* involved a seed company and the company's manager, Mr. Moorer, who brought causes of action against Hartz based on breach of contract, suppression, and fraudulent misrepresentation. *Id.* Even though the court granted Defendant's Motion for Summary Judgment[13] relating to Mr. Moorer's individual causes of action, the Court did recognize that an

---

[13] While Defendants are correct that the Court concluded that pursuant to Federal Rule of Civil Procedure 17(a) Mr. Moorer was not a real party in interest, Defendant Universal neglects to state this was under the Federal Rules

agent may bring a cause of action based on fraud, so long as the conduct was intended to cause loss to the agent. *Moorer,* 120 F. Supp. 2d. at 1289.

What is most important to take from this Court's holding in *Moorer* is what was not stated. Defendants would have this Court believe that *Moorer* essentially eliminated the cause of action set forth in the Restatement (Second) of Agency § 374(2) and in *Cooper.* This Court did not do such, but instead concluded that the Supreme Court of Alabama, which had previously adopted § 374(2) in *Cooper,* would also adopt Comment (B) to § 374(2). *Id.* This Court reasoned that, without adopting Comment (B), virtually any employee affected by an adverse action taken against his employer would have a cause of action to sue the adverse actor. *Id.* This Court thereby affirmed *Cooper,* while also including the text of Comment (B) of § 374(2) to the analysis. Id. This Court further stated, "There is no evidence in the record suggesting that Defendants intended to harm Moorer, Jr. in his individual capacity. Moorer, Jr. acted solely as an agent of MSC, and it appears clearly from the record that the cause of action should belong only to MSC. Any harm done to Moorer, Jr. was consequential of his appointment with MSC and it is not cognizable." *Id.* at 1290.

The major difference in *Moorer* and this action, one that cannot be ignored, is that the *Moorer* decision was pursuant to a Defendant's **Motion for Summary Judgment**. *Id.* at 1286-1287. The Court in *Moorer* simply reviewed and commented on the lack of Mr. Moorer's evidence in the record. *Id.* at 1290. This is because the Court was required to do such under Rule 56 of the Federal Rules of Civil Procedure. *Id.* at 1286. (*See* II, Summary Judgment Standard). At this point in the litigation, all Defendants must do is show a mere "possibility that a state court would find a cause of action." *Triggs,* 154 F. 3d. at 1287. As previously stated, the

---

summary judgment standard of review. *Id.* Defendants Keystone and Turner's response concedes this point. *See* Keystone Response to Plaintiffs' Motion to Remand, page 5.

01227666.1

Eleventh Circuit has held that to present a viable claim, and avoid removal, **plaintiffs do not need to show they could survive a Motion for Summary Judgment**. *Crow*, 113 F. 3d. at 1541. The plaintiffs before this Court are not held to the same burden as in *Moorer*. Plaintiffs need not show Mr. Pittman's claims could defeat a motion for summary judgment, as Mr. Moorer was required, but instead must only present a mere possibility of recovery. Plaintiffs have gone above and beyond this burden. Although not required to meet the summary judgment standard this Court promagated in *Moorer,* these Plaintiffs have. Stan Pittman's Affidavit submits sufficient evidence to the record to overcome the summary judgment burden in *Moorer.*

In this action there is substantial "evidence in the record suggesting that the Defendants intended to harm" Mr. Pittman in his individual capacity. *Moorer* at page 1290. Mr. Pittman's Affidavit states that Defendant Jerry Turner, a representative of Keystone, knew that Mr. Pittman was solely compensated through commission by Morris Forest Products. *See* Affidavit of Stan Pittman, paragraph 9. Mr. Turner was also aware that Mr. Pittman expected a substantial sum of his income to be derived from the residential deck system agreement between Keystone and Morris Forest Products. *Id.* In addition, it is Mr. Pittman's strong belief that Defendants acted in concert and with vengeance to harm him individually, along with Morris Forest Products, for rejecting Defendants' offer of employment. *Id* at paragraph 10. Mr. Pittman, along with Morris Forest Products, continued to rely on representations by Mr. Turner regarding Keystone and its continued relationship with Morris Forest Products. *Id* at paragraph 9. Based on Mr. Pittman's Affidavit there is substantial "evidence in the record suggesting Defendants intend to harm" Mr. Pittman. (Citation omitted.)

There is also a major factual difference between *Moorer* and this action. In *Moorer,* "At all times relevant to this proceeding, Moorer, Jr. has been a salaried employee/manager of

MSC." *Moorer,* 120 F. Supp. 2d. at 1289.  As stated in his Affidavit, Mr. Pittman was not a W-2 employee of Morris Forest Products but was instead a 1099 independent contractor.  *See* Affidavit of Stan Pittman. Mr. Pittman did not receive salary from Morris Forest Products but was instead compensated solely through commission.  *See* Affidavit of Stan Pittman, paragraph 3.

 *Moorer* has three major implications for the Court in its analysis.  First, *Moorer* recognizes the cause of action pursuant to § 374(2), so long as the requirements of Comment (B) to said section are satisfied.  Second, *Moorer's* analysis centered around a Motion for Summary Judgment, which is not the situation in this action.  Third, even though Plaintiffs' burden is much lighter than that of Plaintiffs in *Moorer,* the Court did promagate what a plaintiff must show in order to defeat a motion for summary judgment regarding § 374(2).  While Defendants still contend that they need not show specific evidence at this point in litigation, such as would be needed to defeat summary judgment, Defendants have nonetheless met the summary judgment burden in *Moorer.*

## VI. PLAINTIFFS MAY OFFER GOOD FAITH ALLEGATION, AND AFFIDAVITS IN SUPPORT OF, DEFENDANTS' INTENT

 Plaintiffs contend that Defendants are precluded from submitting affidavits or other evidence regarding Defendants' actions that evidence intent.  In a previous motion submitted to this Court, Plaintiffs stated that, "Mr. Pittman does not possess the information of Defendants' intent or conditions of the mind regarding the wrongful action against Plaintiffs.  Only the Defendants can speak of why they committed the wrongful acts against Plaintiffs."  *Id.  See* Plaintiffs' Response To Order To Show Cause Why Defendants' Motion For Leave To Conduct Jurisdiction-Related Discovery Should Not Be Granted, page 8.  The above statement explains exactly why Defendants are not required to specifically plead intent, and other conditions of the

mind pursuant to the Alabama Rules of Civil Procedure. *Bethel,* 757 So. 2d. at 1158. What was meant by Plaintiffs in their previous brief was that Plaintiffs may not speak for Defendants regarding their intent. While it would be beneficial for Plaintiffs' cause of actions, Plaintiffs may simply not speak for Defendants with sworn testimony. At this point in litigation, to do so would be improper, since Plaintiffs have yet to have the benefit of discovery. What Plaintiffs are allowed to do at this point, pursuant to the fraudulent joinder standard, is to make good faith allegations in their Complaint, supported by affidavits based on personal knowledge, concerning their causes of action. It is absurd for Defendants to imply that Plaintiffs must have all their evidence when filing a lawsuit. It is even more absurd for Defendants to argue that they are the only party that is allowed to present evidence, in the form of affidavits, to the Court.

Case law clearly states Defendants' argument is incorrect. Courts may allow parties to submit affidavits when considering fraudulent joinder. *Owen v. Life Insurance Company of Georgia,* 289 F. Supp. 2d. 1319, 1324 (M.D. Ala. 2003). Further, as stated throughout this brief, all questions of fact and law must be viewed in Plaintiffs' favor. *Cabalceta,* 832 F. 2d. at 1555. (See also *Wright v. American General*, 136 F. Supp. 2d. 1207, 1211 (M.D. Ala. 2001)). Therefore, not only may Plaintiffs submit affidavits supporting their allegations, but these affidavits are reviewed more favorably and given the benefit over Defendants' affidavits.

## VII.    CLAIMS OF STAN PITTMAN

Defendants allege Mr. Pittman can only possibly have a claim based upon fraud.[14] This is not the case, as Plaintiffs stated in their Motion to Remand. Mr. Pittman is making a claim centered on the Restatement (Second) of Agency § 374(2).[15] The Restatement (Second) of

---

[14] *See* Defendant Universal's Response to Plaintiffs' Motion to Remand, page 16.

[15] Plaintiffs put Defendants on notice of this claim by stating in their Complaint that Mr. Pittman expected to earn a commission based upon the licensing agreement and based upon the tortious acts of the Defendants, Mr. Pittman did not receive this commission. *See* Plaintiffs' Complaint, paragraph 21.

Agency § 374(2) (1957) states, "An agent cannot bring an action in his own name **for a tort** by a third party against a principal, unless the third party's actions were intended for the purpose of harming the agent's interests." Mr. Pittman has pled the torts of Fraud, Intentional Interference with a Business Relationship, and Suppression. *See* Plaintiffs' Complaint. It is § 374(2) that gives Mr. Pittman the avenue to his own individual causes of actions independent from Morris Forest Products.

### A.    Fraud

Defendants are correct in stating that Mr. Pittman must have relied on the fraudulent misrepresentations of the Defendant(s) in order to recover for Fraud. The argument of whether Mr. Pittman did in fact rely on Defendants' statements seems premature at this point, since this once again is arguing facts and would be proper for a summary judgment proceeding. As previously stated, Plaintiffs have properly pled their fraud action, as noted by the Court in Your Honor's ruling on August 19, 2005. Further, in Mr. Pittman's Affidavit it is stated that Mr. Turner was aware of Mr. Pittman's compensation and also made representations to him regarding his future with the residential deck project. In addition, it is Plaintiffs' contention that Universal and Keystone were working in concert when their torts were committed. While Defendants do not have evidence at this time of Universal's representations to Mr. Pittman, Plaintiffs are entitled to conduct discovery to see if memos, notes, e-mails or other documents may appear that would confirm Plaintiffs' belief that Universal instructed Keystone to make representations to Mr. Pittman, offer Mr. Pittman future employment and then upon Mr. Pittman's denial, instructed Keystone to terminate the relationship with Morris Forest Products and Mr. Pittman. Therefore, Plaintiffs currently have evidence of reliance of Mr. Pittman of

01227666.1

statements made by Mr. Turner and have sufficiently pled reliance and fraud against Universal and its individual Defendants.

### B.    Intentional Interference with a Business Relationship

The elements of Intentional Interference with a Business Relationship are: "(1) the existence of a contract or business relation; (2) the defendant's knowledge of the contract or business relation; (3) intentional interference by defendant of the contact or business relation; and (4) damage to the plaintiff as a result of the defendant's interference." *Century 21 Academy Realty, Inc. v. Breland,* 571 So. 2d. 296, 297-298 (Ala. 1990).  Much like the Fraud claim, Mr. Pittman's Affidavit is actual evidence of existence of an Intentional Interference claim against Keystone and Mr. Turner.  It is Plaintiffs' contention that Universal and Keystone were working together in concert when performing their tortious actions.  Plaintiffs, including Mr. Pittman, have properly pled Intentional Interference against all Defendants and should be given the opportunity to conduct discovery to establish evidence of such against Universal and its individual Defendants.

### C.    Suppression

As stated with Fraud and with Intentional Interference, the Plaintiffs have properly pled Suppression as a cause of action in their Complaint against all Defendants.  Plaintiffs should be given the opportunity to conduct discovery to establish evidence of such suppression.

### VII.    CONCLUSION

Plaintiffs have complied with the appropriate legal standard in this action by showing that Stan Pittman has "a possibility that a state court would find that the Complaint states a cause of

01227666.1

action." *Triggs*, 154 F. 3d. at 1287.  Further, Defendants' arguments are largely based upon fact, which has been disputed by Mr. Pittman's Affidavit.  It is important that the Defendants are not even required at this time to argue facts, since all facts and questions of law must be preserved in favor of the Plaintiffs.  *Cabalceta*, 833 F. 2d. at 1555.  Also, "[the] plaintiff need not show that he could survive in the district court a motion for summary judgment filed by that in-state defendant.  For a remand, the plaintiff's burden is much lighter than that…"  *Crowe*, 133, F. 3d. at 1544.  Plaintiffs have demonstrated to this Court that there is no complete diversity of citizenship between the parties.  Defendant has admitted as such by stating that Plaintiff Pittman and Defendant Rector are both citizens of the state of Georgia.  Defendants' argument that Mr. Pittman must have a direct cause of action against Mr. Rector is incorrect pursuant to the United States Supreme Court's ruling in *Exxon Mobil Corporation v. Allapattah Services, Inc.* (Citation omitted).

Plaintiffs have properly pled Mr. Pittman's causes of action against all Defendants, but have also gone above and beyond by producing evidence of Mr. Pittman's claims against Defendant Keystone and Mr. Turner.  Although not necessary to overcome an allegation of fraudulent joinder, Plaintiffs have overcome the summary judgment standard handed down in *Moorer v. Hartz Seed Company.* (Citation omitted).  Not only did *Moorer* set the applicable summary judgment standard as requiring substantial "evidence on the record suggesting defendants intended to harm" plaintiff, but it also recognized the cause of action pursuant to § 374(2), so long as the requirements of Comment (B) to said section are satisfied.

Plaintiffs have certainly satisfied their burden regarding the issue of fraudulent joinder and at least has raised significant doubts as to Defendants' arguments.  All doubts about removal jurisdiction should be resolved in favor of remand to state court.  *University of South Alabama v.*

01227666.1

*American Tobacco Company*, 168 F. 3d. 405 (11th Cir. 1989).  Based on the above facts and arguments, Plaintiffs respectfully request this Court to remand this action to the Circuit Court of Tallapoosa County, Alabama, Alexander City Division.


s/Randall S. Haynes_____
 Randall S. Haynes


OF COUNSEL:

MORRIS, HAYNES & HORNSBY
131 Main Street
Alexander City, AL 35010
(256) 329-2000


s/ Ollie A. (Tres) Cleveland, III _____
W. Percy Badham III
Ollie A. (Tres) Cleveland, III


OF COUNSEL:

MAYNARD, COOPER & GALE, P.C.
1901 Sixth Avenue North
Suite 2400 AmSouth/Harbert Plaza
Birmingham, AL 35203
(205) 254-1000


Attorneys for Plaintiffs

01227666.1

<u>**CERTIFICATE OF SERVICE**</u>

I do hereby certify that a copy of the foregoing has been served upon the following:

William Scott, Jr.
Joseph E. Stott
Scott, Sullivan, Strutman & Fox, P.C.
2450 Valleydale Road
P.O. Box 380548
Birmingham, AL 35244

Patrick C. Davidson
Adams, Umbach, Davidson and White, LLP
205 South 9th Street
Opelika, AL 36801

via CM/ECF Electronic Noticing on this the 13th day of September, 2005.

<u>s/ Ollie A. (Tres) Cleveland, III</u>
Of Counsel

01227666.1