IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| MORRIS FOREST PRODUCTS, LLC; | ) | |
| STAN PITTMAN, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil Action Number: |
| v. | ) | 3:05-CV-00564-B |
| | ) | |
| KEYSTONE EXTERIOR DESIGN, | ) | |
| LLC; JERRY TURNER; DON | ) | |
| LUDWIG; UNIVERSAL FOREST | ) | |
| PRODUCTS; MATTHEW J. MISSAD; | ) | |
| DOUGLAS P. HONHOLT; DANA | ) | |
| RECTOR; KRAIG JANSEN, | ) | |
| | ) | |
| Defendants. | ) | |

SUPPLEMENTAL BRIEF IN OPPOSITION TO
PLAINTIFFS' MOTION TO REMAND

COME NOW Defendants Universal Forest Products Eastern Division, Inc. (designated

in the Plaintiffs' Complaint as "Universal Forest Products" and herein after referred to as

"Universal") and Defendants Dana Rector, Matthew Missad, Douglas Honholt and Kraig Jansen

and hereby file their Supplemental Brief in Opposition to the Plaintiffs' Motion to Remand

pursuant to this Court's Order of September 30, 2005.  As grounds therefore, the Defendants

state as follows:

STATEMENT OF FACTS

By this juncture, the Court is well aware of the factual background surrounding the

Plaintiffs' alleged causes of action and the various jurisdictional Motions and Briefs that have

been filed.  As such, the Statement of Facts herein is limited to the additional information which

has come to light as a result of the deposition of Stan Pittman that was completed on October 24, 2005.

Stan Pittman began working as a contract sales agent with Morris Forest Products selling boards and wedges to the mobile home industry in or around the Fall of 2000. Per the terms of his written contract, he was compensated on a commission basis. (See Deposition of Stan Pittman at pages 9-12)[1]. When he left Morris Forest Products in September of 2005, there was approximately one year left on his contract. (See Deposition of Stan Pittman at page 13).

Approximately three years after Mr. Pittman began working with Morris Forest Products, Morris entered into a relationship with Keystone. (See Deposition of Stan Pittman at pages 26-27). Mr. Pittman had no say so whatsoever in the terms of the contract between Morris and Keystone. All of that was left up to the owners of Morris Forest Products. (See Deposition of Stan Pittman at page 19). Of the five years that Stan Pittman worked with Morris Forest Products, Morris had a contract with Keystone for only one to one and a half years. (See Deposition of Stan Pittman at page 33). Once the relationship between Morris Forest Products and Keystone ended, Mr. Pittman continued his relationship with Morris Forest Products until he and Mr. Morris reached a mutual agreement to end the contract in September of 2005. (See Deposition of Stan Pittman at pages 159-160).

Because he was not involved in negotiating the contract between Morris and Keystone, Mr. Pittman was not aware that the contract between Morris and Keystone contained an

---

[1] The entire deposition of Stan Pittman is attached to this Motion as Exhibit "A."

expiration date of October, 2004.  (See Deposition of Stan Pittman at pages 34-35).  He cannot recall whether or not he was involved in any discussions relating to the termination of the contract in or around October of 2004.  (See Deposition of Stan Pittman at page 36).  Though he knew there was some communication between Morris and Keystone prior to the February 7, 2005 meeting made the basis of this lawsuit, he was not aware of the details that Mr. Morris had sent a letter to Keystone asking for buy out of left over equipment and product. (See Deposition of Stan Pittman at pages 37-38).  He cannot recall if he was consulted about the terms of the proposed buy out of the supplies and product, and he does not recall being offered any money in the event that Keystone agreed to pay Morris Forest Products to purchase the supplies and left over materials.  (See Deposition of Stan Pittman at pages 39-40).

Mr. Pittman first learned that there would be a meeting on February 7, 2005 by speaking to Mr. Jerry Turner of Keystone.  Other than his conversation with Jerry Turner, which occurred on or about February 1, 2005, he cannot recall receiving any other information about possible involvement of Universal Forest Products in relation to Keystone or Morris Forest Products. (See Deposition of Stan Pittman at pages 40, 43, 45, and 72).  He is not aware of Dana Rector participating in any way with that February 1st conversation.  He understood from speaking to Mr. Turner that Mr. Turner was going to meet with Dana Rector at some point prior to the February 7, 2005 meeting at Morris Forest Products, but he does not know if that meeting ever took place.  (See Deposition of Stan Pittman at pages 69-71).

On February 7, 2005, a meeting occurred at the Morris Forest Products conference room. Each of the Defendants attended that meeting. By the end of the meeting, Mr. Pittman felt that Morris would continue to be involved as the manufacturing facility for the Keystone product. Though he cannot remember anyone stating the exact words, the gist of the conversation was that Morris Forest Products was involved and everything would progress "just like it was." (See Deposition of Stan Pittman at pages 87-92). Mr. Pittman only remembers a few specific statements. He recalls that Dana Rector made the statement that everything would be wonderful if it stayed at Morris Forest Products, Matthew Missad stated that he did not want a confrontational relationship with Morris Forest Products and thought that it could be worked out where everyone could progress on and everything would be okay as far as manufacturing, and Doug Honholt asked several questions. (See Deposition of Stan Pittman at pages 92, 94-95, 98). Mr. Pittman does not remember any other specific statements, and cannot remember any statements that were made by Kraig Jansen or Jerry Turner. (See Deposition of Stan Pittman at page 99). Mr. Pittman agrees that the specific statements that were made by Dana Rector were true. (See Deposition of Stan Pittman at page 207). Basically, the tone of the conversation led Mr. Pittman to have a "warn fuzzy feeling" that Morris would continue to do the manufacturing of the Keystone product. (See Deposition of Stan Pittman at page 100).

Prior to the meeting of February 7, 2005, Mr. Pittman had never met any of the individuals from Universal, including Mr. Honholt, Mr. Missad, Mr. Jansen, or Mr. Rector. (See Deposition of Stan Pittman at page 117). Further, there was no animosity between himself

and any of the Defendants until after the February 7, 2005 meeting had already concluded. (See Deposition of Stan Pittman at pages 123 and 160-169).

After the meetings of February 7, 2005 had concluded, Mr. Pittman had a meal with Jerry Turner at Burger King. At the very end of that conversation, Mr. Pittman believes he was offered a job with Keystone which he turned down. (See Deposition of Stan Pittman at pages 119-122). After turning down the job on a second occasion on February 11, 2005, Mr. Pittman believes that some animosity was created. (See Deposition of Stan Pittman at pages 168-169). The only reason that he can think of that anyone with Universal or Keystone would want to harm him is as a result of his turning down that job. (See Deposition of Stan Pittman at pages 160-169). However, he did not turn down the job until after all of the allegedly fraudulent statements were made. He had never turned down a job with Keystone prior to his conversation with Jerry Turner which occurred after the February 7, 2005 meeting. (See Deposition of Stan Pittman at pages 208-209). In fact, he believes that if he would have not turned down the job offers on the night of February 7, 2005 and on February 11, 2005, the business between Morris and Keystone would have carried on. (See Deposition of Stan Pittman at pages 186-187).

Within a few weeks after the February 7, 2005 meeting, Mr. Pittman learned that Morris would not continue to do the Keystone work. (See Deposition of Stan Pittman at page 140). Mr. Pittman admits that he is not aware of anything and he cannot think of anything that he would have done differently if it was not for the statements that were made at the meeting of February 7, 2005. Moreover, he is not aware of any opportunities that he passed up or anything

that he would have changed if it was not for those statements. (See Deposition of Stan Pittman at pages 140-145). Though Mr. Pittman has no idea how much he earned working with Keystone, and in fact cannot testify whether it was more or less than $10,000 a year, more or less than a $1,000,000 a year, or more or less than $50,000,000 a year, he does know that his income after February 7, 2005 was not less than it had been prior to February 7, 2005. (See Deposition of Stan Pittman at pages 30-31, 213).

Mr. Pittman had no direct relationship whatsoever with either Keystone or Universal, and in fact admitted that the relationship between Morris and Keystone was none of his business. (See Deposition of Stan Pittman at pages 49-52, 57-58, 65-69 and 154-156). For the reasons presented below, all claims of Stan Pittman must fail, and all claims against Dana Rector must fail. As such, the Plaintiffs' Motion to Remand is due to be denied.

## ARGUMENT

There is very little dispute as to the legal standard to be applied when fraudulent joinder has been pled. In order to establish fraudulent joinder, and thereby establish federal jurisdiction over this claim, the Defendants must show either that the claims of the non-diverse Plaintiff are without basis, or that the claims against the non-diverse Defendant are without basis. In this case, the only parties who have been joined in this action who share a common state of residence are Plaintiff Stan Pittman and Defendant Dana Rector. Though the Plaintiff originally pled that Defendant Kraig Jansen was also a resident of Georgia, the Affidavit previously filed by Kraig Jansen establishes otherwise. The Plaintiff has filed no Affidavit or other evidence

countering Mr. Jansen's testimony.  As such, if the Defendant can establish either that Stan Pittman has no legitimate claim, or that there are no legitimate claims against Dana Rector fraudulent joinder is established and this Court may disregard the citizenship of either party to determine the existence of diversity.  See, e.g., Wright v. American General Life & Accident Insurance Company, 136 F.Supp. 2d 1207, 1211 (M.D. Ala. 2001) and Triggs v. John Crump Toyota, 154 F.3d 1284, 1287 (11th Cir. 1998).

In this case, Plaintiff Stan Pittman has no legitimate claims and cannot demonstrate any possibility of recovery against any Defendant particularly against the only allegedly non-diverse Defendant Dana Rector.  Moreover, there is no possibility of recovery by any Plaintiff against Dana Rector.  As such, the Plaintiff's Motion to Remand this case to State Court must be denied on the basis of fraudulent joinder.

## I.  **Claims of Stan Pittman**

In their recent Brief in Support of their Motion to Remand, the Plaintiffs summarize the claims of Stan Pittman as follows:

> Mr. Pittman is making a claim centered on the Restatement (Second) of Agency §374(2) to the Restatement (Second) of Agency §374(2)(1957) states, "An agent cannot bring an action in his own name **for a tort** by a third party against a principal, unless the third party's actions were intended for the purpose of harming the agent's interests."  Mr. Pittman has pled the torts of Fraud, Intentional Interference with a Business Relationship, and Suppression. *See* Plaintiffs' Complaint. It is §374(2) that gives Mr. Pittman the avenue to his own individual causes of actions independent from Morris Forest Products.

*See*, Plaintiffs' Reply to Universal Forest Products, Keystone Exterior Design, LLC, Jerry Turner and Don Ludwig's response to Plaintiffs' Motion to Remand at page 18-19. (Emphasis in original).

As shown above, the Plaintiff has made it clear that he is bringing only tort claims in this action, including the torts of fraud, intentional interference with a business relationship, and suppression. However, Mr. Pittman has absolutely no possibility of recovery under any of those theories. As such, it is clear that Mr. Pittman was joined in this action solely for the purpose of attempting to defeat diversity jurisdiction. As such, his state of residency must be disregarded for jurisdictional purpose and the Plaintiffs' Motion to Remand must fail.

### A.    <u>Fraud</u>

Mr. Pittman's fraud claims fail for a number of reasons. There is not one single element of a fraud claim that Mr. Pittman can meet. Based on his deposition testimony, there is no possibility under any circumstances that Mr. Pittman can recover under a claim of fraud. Under Alabama law, the elements of Stan Pittman's claim of fraud are as follows:

> The elements of fraud are (1) a false representation (2) of a material existing fact (3) reasonably relied upon by the Plaintiff (4) who suffered damage as a proximate consequence of the misrepresentation. To prevail on a promissory fraud claim such as that at issue here, that is, based upon a promise to act or not to act in the future, two additional elements must be satisfied: (5) proof that at the time of the misrepresentation, the Defendant had the intention not to perform the act promised, and (6)proof that the Defendant had an intent to deceive.

SAIA Food Distributors v. Security Link, 902 So.2d 46, 56-57 (Ala. 2004)(citing Waddell & Reid, Inc. v. United Investors Life Insurance Company, 875 So.2d 1143, 1160 (Ala. 2003)(quoting Padgett v. Hughes, 535 So.2d 140, 142 (Ala. 1998)).

As stated above, Plaintiff Stan Pittman cannot meet a single one of these elements, particularly as against the only allegedly non-diverse Defendant Dana Rector. As such, there is absolutely no possibility that Stan Pittman will succeed in a fraud claim in this action.

## 1. Stan Pittman Cannot Demonstrate a False Representation of Existing Material Fact

The first two elements of a fraud claim under Alabama law are intertwined and will be discussed together. In order to pursue a claim for fraud, the Plaintiff must be able to demonstrate a misrepresentation of an existing material fact. In this case, Plaintiff Stan Pittman cannot point to any misrepresentations of material fact, particularly as against Defendant Dana Rector. In fact, in his deposition of October 24, 2005, Mr. Pittman could not come up with a single specific untrue statement that was made by any individual. The only statements Mr. Pittman can specifically recall that were made at the February 7, 2005 meeting were as follows: Dana Rector stated that "everything would be wonderful if it stayed at Morris Forest Products" or "everything would be wonderful if it stayed manufactured at Morris Forest Products." Matthew Missad stated that he "did not want a confrontational relationship with Morris Forest Products and thought that [they] could 'work it out' where [they] could progress on and everything would be okay as far as manufacturing." Finally, Doug Honholt simply asked questions about Morris' products. Pittman cannot remember any specific statements made by

-9-

any of the other attendees of the meeting including Mr. Kraig Jansen and Mr. Jerry Turner. (See Deposition of Stan Pittman at pages 87-110).

Though Mr. Pittman repeatedly testified that the gist of the conversation was that Morris Forest Products would continue its involvement and everything would progress "just like it was." Mr. Pittman cannot remember any specific words that were used other than those quoted above that led him to that conclusion. In fact, he cannot recall anyone who specifically stated that Morris Forest Products would continue to be involved with the Keystone product. Instead, when listening to the specific statements described above, it simply gave him the feeling that everything would go on as normal. (See Deposition of Stan Pittman at pages 104-108).

None of those statements constitute a misrepresentation of an existing material fact. The only words used by Mr. Honholt were questions, rather than statements. Obviously, questions cannot form a basis of a claim for fraud. The statement by Matthew Missad, that he did not want a confidential relationship, is not a statement of fact at all but instead an expression of the desires of Mr. Missad to avoid a confidential relationship. The remaining portion of that statement, that Mr. Missad "thought that we could work everything out where we could progress on and everything would be okay as far as manufacturing"[2] is clearly a statement of opinion and cannot form a basis of a claim of fraud. "[O]ne cannot commit fraud by expressing opinions . . . ." Shuttershop, Inc. v. Amersham Corp., 114 F.Supp. 2d 1218 (M.D. Ala. 2000). *See also*, Crowne Investments, Inc. v. Bryant, 638 So.2d 873 (Ala. 1994)(holding that statements of

---

[2] See Deposition of Stan Pittman at page 98.

opinion are not statements of material fact and therefore will not support claims of fraud).

Finally, the only other two specific statements mentioned, that it would be a wonderful thing if Morris could keep the work and that the manufacturing processes at the facility were good, are both statements of opinion and, according to Mr. Pittman himself, true statements. (See Deposition of Stan Pittman at page 207).  *See*, <u>Desouza v. Lauderdale</u>, Ct. Civ. App. Ala. Case No. 2031051 (June 30, 2005)(citing <u>Prestwood v. City of Andalusia</u>, 709 So.2d 1173, 1175, 1177 (Ala. 1997)(finding that "a false statement is an essential element of fraud" and hold that "[a] fact finder could not reasonably find that [a Defendant] made a misrepresentation [ ] when not one witness could say under oath that the statement was untrue")).  Finally, any remaining "statements" were not statements at all, but instead Mr. Pittman's impression of everything he heard at the meeting.  He admittedly got the impression that Morris Forest Products would continue to do the Keystone work, but cannot recall anyone actually stating those words.  Even if the words had been stated, they are still not actionable fraud, because they do not state a material existing fact, but instead discuss the potential future relationship between Morris and Keystone.  As such, even if those exact statements had been made, they could not support a claim for existing fraud.[3]  As such, Mr. Pittman, by his own admissions, cannot meet the first two elements of a claim of fraud.  Because he cannot change his sworn testimony in the future to try to make out a fraud claim, there are no circumstances under which he can be successful in a claim for fraud against these Defendants.

_____

[3] Of course, statements as to future actions can support a claim for promissory fraud, which will be discussed in Section I(A)(iv) below.

Moreover, in order to defeat diversity, Mr. Pittman must show that he has actual claims against Dana Rector. If Mr. Pittman does not have any claims against Mr. Rector, all of the claims in this lawsuit will meet the complete diversity test there will not be a single claim between a Plaintiff and Defendant with the same citizenship for diversity purposes. Mr. Pittman plainly admits that the only statement that he can recall being made by Dana Rector was that it would be wonderful if Morris could continue to do the Keystone work. Not only is this an expression of opinion, but by Stan Pittman's own admission is actually a true statement and therefore cannot support a claim of fraud.

### 2.    Stan Pittman Did Not Rely on Any Statements Made at the February 7, 2005 Meeting

As has been discussed in various Briefs filed in this case, all of the Plaintiffs' claims of fraud center around statements that were made at the meeting of February 7, 2005. For the reasons shown above, none of those statements by any Defendant were untrue statements of existing material fact. However, to the extent that Mr. Pittman can convince this Court that he somehow can still maintain a fraud claim on the basis of those statements, he cannot meet the next test for determining whether he has any possibility of recovery. In order to move forward on a claim for fraud, Pittman must present evidence that he relied on the alleged misrepresentation.

Though he could not point to any actual statements made by any Defendants, Mr. Pittman continually referred to the "gist of the conversation" that Morris Forest Products would continue to be involved with Keystone Product. However, Mr. Pittman in no way relied on any of those

statements.  Under Alabama law, the element of reliance requires proof that the alleged false statement "actually induced the injured party to change its course of action."  Hunt Petroleum Corp. v. State, 901 So.2d 1, 4 (Ala. 2004)(citing Restatement (Second) of Torts §537(1977)("the recipient of a fraudulent misrepresentation can recover . . . but only if . . . he relies on the misrepresentation in acting or refraining from action . . . ."); 9 Stuart M. Speiser, et al., The American Law of Torts §32:49 (Clark Boardman Callaghan 1992)("It is a fundamental principal of the law of fraud . . . that in order to secure redress, [the Plaintiff] must have relied upon the statement or representation as an inducement to his action or injurious change of position.")).

After citing law from at least eight separate states and various treatises, the Alabama Supreme Court stated in Hunt v. State, supra, that "although the terminology varies from state to state, the underlying principal is the same - for a Plaintiff to state a fraud claim, he must show that the misrepresentation induced him to act in a way he would not have otherwise have acted, that is, that he took a different course of action because of the misrepresentation."

Mr. Pittman admits that within a few weeks of the February 7, 2005 meeting he learned that, in fact, Morris would not continue to do the Keystone work.  Thus, in order to support a claim for fraud, Mr. Pittman must be able to show some act that he did or some act that he refrained from doing in that few week period before he learned the truth of the alleged misrepresentations.[4] Because Mr. Pittman no longer believed the alleged misrepresentations,

_____

[4] Obviously, anything that he did after learning the truth of the alleged misrepresentations would not be evidence of reliance on the alleged misrepresentations.  "To claim reliance upon a misrepresentation, the allegedly deceived party must have believed it to be true.  If . . . he placed no confidence in it, it cannot be viewed as substantial cause of his conduct."  Liberty National

and in fact found out the truth of the matter within only a few weeks, the time period in which his "reliance" must have taken place had to have occurred within that few week period.  See Hunt Petroleum Corp. v. State, *supra*, at 17(citing Waddell & Reid, Inc. v. United Investors Life Insurance Company, 875 So.2d 1143, 1160 (Ala. 2003)(holding that initial reliance on alleged misrepresentations ceases to be reasonable when the person relying on them becomes aware that the representations were false)).

Mr. Pittman's claims fail as a matter of law because he admits that he neither acted nor failed to act on any opportunities in the relevant time period.  He admits that he is not aware of anything and that he cannot think of anything that he did that he would have done differently if it were not for the statements made in the meeting of February 7, 2005.  Moreover, when asked if there were any opportunities that he passed up or anything that he would have done differently or anything he would have decided to do if it was not for those statements, his answer was "I ain't got a clue."  (See Deposition of Mr. Pittman at pages 140-145).

Because he cannot demonstrate any action that he took or any act that he refrained from doing as a result of the alleged misrepresentations, Mr. Pittman cannot support a claim for fraud, and moreover has no possibility of succeeding on such a claim.

---

Life Insurance Company v. Allen, 699 So.2d 138, 141 (Ala. 1997)(citing Smith v. J.H. Berry Realty Company, 528 So.2d 314 (Ala. 1988)).

**3.** **Plaintiff Stan Pittman Was Not Individually Damaged by the Alleged Fraudulent Statements**

Under Alabama law, in order to go forward with any claim for fraud, the Plaintiff must be able to establish that he was damaged by the alleged fraudulent statement. "In fraud actions, damages must be shown because injury is an essential element of the cause of action." Gloor v. Bankcorpsouth Bank, Ct. Civ. App. Ala. Case No. 2030673 (Oct. 14, 2005)(citing Maring-Crawford Motor Company v. Smith, 285 Ala. 477, 485, 233 So.2d 484, 491(1970)).

In this action, Plaintiff Stan Pittman admits that he has absolutely no damages which were caused by the alleged fraud. As shown above, and as shown in the Plaintiffs' Complaint, all of the claims of fraud are premised upon statements which occurred at the meeting of February 7, 2005. During his deposition, Stan Pittman was asked about the commission checks he received from Morris Forest Products. During that deposition, the following questions and answers were given:

> Q.    Are you saying that your checks after February 7, 2005 were less than your checks before February 7, 2005?
>
> A.    My checks that I received was based on my commission for the lumber and board and wedges that I had sold.
>
> Q.    Was that less after February 7, 2005 than the period before February 7, 2005?
>
> A.    No.

See, Deposition of Stan Pittman at page 213.

The only alleged damage Stan Pittman has claimed is future commissions. (See Plaintiffs' Complaint at paragraph 21 and Deposition of Stan Pittman at page 154). Of course, these future damages are not only speculative, but also fall outside of the time period of the alleged fraud. As shown above, Mr. Pittman admits that he learned the truth of the alleged fraudulent statements within a few weeks of the time that they were made. As such, as a matter of law, any potential claim for damages must have fallen within that mid to late February, 2005 time period. Mr. Pittman admits that he had no damages during that time period and therefore he cannot recover. *See*, Hunt Petroleum Corp. v. State, *supra*, at 17(citing Waddell & Reid, Inc. v. United Investors Life Insurance Company, 875 So.2d 1143, 1160 (Ala. 2003). Because Mr. Pittman admits that he had no damages during the relevant time period, and that all of his damages are for some speculative time period that would have occurred in the future, those damages are, as a matter of law, not the result of the alleged fraudulent statements. Thus, even if Mr. Pittman could point to some untrue statement, and even if he could point to some reliance on an untrue statement of existing material fact, he cannot establish that he was damaged in any way by the alleged statements given that he learned the truth of the alleged statements without incurring any losses. As such, Mr. Pittman has absolutely no possibility of recovering under a claim of fraud.

**4.    Stan Pittman Cannot Make Out a Claim for Promissory Fraud**

In addition to the elements of fraud discussed in the preceding sections, any claim based upon a promise to perform some act in the future carries with it an additional burden on the

Plaintiff to show that the alleged promises were made with no intention of carrying out the promises and with a present intent to deceive. Centon Electronics, Inc. v. Bonar, 614 So.2d 999, 1003 (Ala. 1993)(citing Hearing Systems, Inc. v. Chandler, 512 So.2d 84, 87 (1987) and Purcell Company v. Spriggs Enterprises, Inc., 413 So.2d 515, 519 (Ala. 1983)). *See also*, Moncrief v. Donohoe, 892 So.2d 379 (Ala. Civ. App. 2004).

Though he cannot point to a single person who made such a statement, Stan Pittman has made it clear in his Affidavit and in his deposition testimony that the only basis of any claim of fraud that he intends to pursue in this case arises from an alleged promise by the Defendants that Morris Forest Products would continue to do business with Keystone in the future. Such an alleged promise clearly falls under the "promissory fraud" standard cited herein.

In fact, what Mr. Pittman has done in his Affidavit and deposition testimony is to place himself in a situation where he has absolutely no possibility of recovery regardless of whether his testimony is believed. As has been made clear numerous times in Briefs filed with this Court, in order to have standing to sue for Morris Forest Products loss of business, Mr. Pittman must be able to show that he was the intended victim of an alleged tort against Morris Forest Products. In order to demonstrate that he was the alleged target of the business decisions made by Keystone and/or Universal, Mr. Pittman has left himself in a position where he cannot recover under any theory of the case.

In order to bring himself within the requirements of the *Restatement (Second) of Agency* §374(2), Mr. Pittman has completely changed the claims as they existed in the Complaint, and molded the fraud claim into one of promissory fraud. Unfortunately for Mr. Pittman, by doing so, he has established that the elements of promissory fraud do not exist.

In order to show that he was the target of the actions of the Defendants, Mr. Pittman had testified that after the February 7, 2005 meeting concluded and after everyone who attended the meeting had left, he had dinner with Jerry Turner of Keystone at Burger King near the airport. (See Deposition of Stan Pittman at page 119). Towards the end of his meal with Mr. Turner, at the very end of his conversation with Mr. Turner, he was offered a job with Keystone which he turned down. (See Deposition of Stan Pittman at pages 121-122). He received another job offer from Mr. Turner on or about February 11, 2005, four days later. It was not until after he turned down the job on this second occasion, on or about February 11, 2005, that anyone had the intent to harm him. (*See* Deposition of Stan Pittman at page 168-169). In fact, Mr. Pittman made the specific statement that "I feel like after turning the job down twice, that the animosity was built by the Universal/Keystone Group, ever how they are joined or united, against me in the intent was to harm **after that**." (See Deposition of Stan Pittman at pages 168-169)(emphasis added). Mr. Pittman further admits that he had no animosity whatsoever with the Defendants prior to turning down Mr. Turner's job offer. In fact, Mr. Pittman specifically stated that his turning down a position with Keystone created animosity "that had not previously been present." (See Deposition of Stan Pittman at page 123). In fact, he admits that prior to the

February 7, 2005 meeting, he had never even met any of the individuals from Universal, and that any animosity with any of those individuals would have had to have come after the meeting. (See Deposition of Stan Pittman at 117). Further, he was obviously close enough with Jerry Turner of Keystone that Mr. Turner would offer him a position in the first place. Finally, he admits that he had never turned down a job with Keystone prior to February 7, 2005 and cannot recall any conversations with anyone at Keystone about jobs with Keystone prior to the night of February 7, 2005. (See Deposition of Stan Pittman at pages 208-209). Mr. Pittman is not aware of any other reasons whatsoever why any of the Defendants would go through the trouble of taking the Keystone business from Morris Forest Products to harm Mr. Pittman. (See Deposition of Stan Pittman at pages 160-166).

Given Mr. Pittman's testimony, there are only two possible results. If Mr. Pittman is correct in his understanding of the reasons that Morris Forest Products lost the Keystone business, his claims are barred because he cannot, under any circumstances, meet the necessary elements to state a claim of promissory fraud. If he is incorrect in his assumption, his claims are barred because he cannot meet the elements required by the *Restatement (Second) of Agency* § 374(2). Thus, under either scenario, there is no possibility that Mr. Pittman can succeed in his claims of fraud in this case.

First, with regard to the claims of promissory fraud, Mr. Pittman freely admits that the only allegedly fraudulent statements made the basis of his claims are that Keystone and Morris would have future business relationship. Because the alleged statements surround a promise

to do some action in the future, in order to make out a claim, Mr. Pittman must not only allege but also offer evidence that those statements, made on the morning and/or afternoon of February 7, 2005, were made with a present intent to deceive and a present intent not to perform at the time the statements were made.  "Of course, mere failure to perform is not of itself evidence of intent not to perform at the time the promise or contract was made.  If it were, a mere breach of contract would be tantamount to fraud."  Hinkle v. Cargill, Inc., 613 So.2d 1216 (Ala. 1992)(citing Walker v. Woodall, 288 Ala. at 513, 262 So.2d at 759 (Ala. 1972).

Because Mr. Pittman admits that, assuming his theory is correct, the intent not to perform was not present at the time the statements were made, but instead was not born until after he turned down a job offer on two occasions, with both occasions coming after the allegedly fraudulent statements were made.  In fact, Mr. Pittman goes so far as to admit that if he would not have turned down the job offers on the night of February 7, 2005 and on or about February 11, 2005, he believes that the business between Morris and Keystone would have carried on. (See Deposition of Stan Pittman at pages 186-187).  Further, throughout his deposition, Mr. Pittman maintains that the reason that Morris Forest Products no longer has the Keystone business was due to Mr. Pittman's actions of turning down a job offer on the night of February 7, 2005, after the meetings had concluded, and on February 11, 2005.  (See Deposition of Stan Pittman at pages 185 through 209).  Thus, if the decision to end the relationship between Morris and Keystone resulted from decisions made by Mr. Pittman after all of the statements of February 7, 2005 were made, there is not set of circumstances under which Mr. Pittman can

demonstrate that any statements made during the meeting of February 7, 2005 were made with the intent to deceive or with the intent that the alleged promises would not be carried out. Thus, there is no set of circumstances under which Mr. Pittman can recover for a claim of promissory fraud.

If, on the other hand, Mr. Pittman is wrong about the decision that Keystone and Morris would no longer do business together, he is barred from recovery by the *Restatement of Agency*. As this Court well knows, the *Restatement of Agency* section relied upon by the Plaintiffs in trying to make out a claim on behalf of Stan Pittman requires that the business decisions that formed the basis of this case would have to be made for the purpose of intentionally harming Stan Pittman, and not for any other reason. Mr. Pittman freely admits that other than turning down a job offer after all of the allegedly fraudulent statements were made, he has no evidence whatsoever and further no reason to believe that any of the Defendants sought to cause him harm. His claims of intent are predicated solely on his action of turning down job offers after the allegedly fraudulent statements were made. He admits that he had no animosity with any of the Defendants prior to turning down the job offers and he knows of no reason why any of the Defendants would have wanted to cause him harm prior to ordering the February 7, 2005 meeting.

Put simply in order to show a possibility of recovery under an allegation of fraud, Stan Pittman must not only demonstrate that he was the target of the alleged tortious behavior but also that there was a present intent to commit fraud and to deceive him during the meetings that

took place on February 7, 2005. By his own admission he cannot do so. There are no circumstances under which he can meet both the *Restatement of Agency* criteria and the promissory fraud criteria. As such, there is no set of circumstances under which Stan Pittman can recover in this action.

For the reasons set out above, it is clear that the claims of Stan Pittman are barred either by the elements of fraud and/or promissory fraud, or by the *Restatement Second of Agency* §374(2), or both. He has shown no possibility that he can recover under a theory of fraud. He can present no evidence which meet the criteria of a fraud claim under Alabama law, and his attempts to bring himself within the *Restatement of Agency* section relied upon create a complete bar to his claim of promissory fraud.

Given his own testimony, there is no possibility of recover by Stan Pittman, and his state of residency cannot be considered for jurisdictional purposes.

**B.    Fraudulent Suppression**

In order to establish a claim of fraudulent suppression under Alabama law, the Plaintiff must be able to demonstrate (1) that the Defendant had a duty to disclose an existing material fact; (2) that the Defendant suppressed an existing material fact; (3) that the Defendant had actual knowledge of the fact; (4) that the Defendant's suppression induced the Plaintiff to act or refrain from acting; and (5) that the Plaintiff suffered actual damage as a proximate result. Johnson v. Sorensen, Sup. Ct. Ala. Case No. 1021945 (May 27, 2005)(citing State Farm & Casualty Company v. Slade, 747 So.2d 293, 323-324 (Ala. 1999).

Just as with the fraud claim described above, in order to present even a possibility of recovery, Mr. Pittman must be able to establish all of these elements, as well as the elements required by the *Restatement (Second) of Agency* §374(2). He cannot do so and thus cannot demonstrate to this Court that he was not fraudulently joined in this action.

With regard to elements 2, 4 and 5, the reasons that Mr. Pittman cannot recover are identical to those as cited in section I(A) above. As such, the Defendant will not belabor the argument in this section. Put simply, Mr. Pittman's understanding that the Defendant's conveyed the idea that Morris and Keystone would do business in the future is not an "existing material fact." Further, Mr. Pittman cannot demonstrate that he as induced to act in any way in the relevant time period, nor can he show that he refrained from doing anything that he otherwise would have done. Finally, he admits that he suffered no damages in the relevant time period where the alleged "facts" where unknown to him. For those reasons, he simply cannot recover and cannot present to this Court any possibility of recovery.

Moreover, in addition to those elements that have already been discussed, fraudulent suppression carries with it the additional elements that the Plaintiff must demonstrate that the Defendants owed a duty to him to disclose the alleged facts and the Defendants had actual knowledge of the alleged facts at the time of the suppression. Mr. Pittman cannot present any evidence with respect to either of these issues and therefore cannot recover under a claim of fraudulent suppression.

1.    <u>No Duty To Disclose</u>

In order to recover for a claim of fraudulent suppression, Plaintiff Stan Pittman must be able to demonstrate that the Defendants owed some duty to him to disclose the facts at issue. In this case, the only "fact" pointed to by Stan Pittman is the question of whether or not Morris and Keystone would have future business relationship.

Plaintiff Stan Pittman admits that he had no relationship whatsoever with either Keystone or Universal. (See Deposition of Stan Pittman at pages 154-156). In fact, he had never even met any of the Universal employees that have been sued individually prior to the meeting of February 7, 2005. (See Deposition of Stan Pittman at page 117). In fact, with regard to contractual relations between Morris and Keystone, Mr. Pittman admitted on numerous occasions in his deposition that, that was between Morris and Keystone, and was none of his business. (See Deposition of Stan Pittman at pages 49-52, 57-58, 65-69).

In any claim for fraudulent suppression, the existence of a duty to disclose is a question of law to be determined by the Court. <u>Ex Parte Farmers Exchange Bank</u>, 783 So.2d 24, 27 (Ala. 2000)(citing <u>State Farm Fire & Casualty Company v. Owens</u>, 729 So.2d 834 (Ala. 1999). "A duty to disclose can arise either from a confidential relationship . . . or from the particular circumstances of the case." <u>Id.</u> (citing *Alabama Code* 1975 §6-5-102, and <u>Ex Parte Ford Motor Credit Company</u>, 717 So.2d 781, 785 (Ala. 1997)).

In this case, there is no relationship between Mr. Pittman and any of the Defendants whatsoever, much less a "confidential relationship." Instead, Mr. Pittman admits that he is a

mere subcontractor who, as a part of his own contract with Morris Forest Products was involved in the sale of the Keystone product. The Alabama Supreme Court has held that even where a direct contractual relationship exists, the mere existence of a contract does not create a confidential relationship which would require a Defendant to disclose the nature and extent of his contracts with other entities. In the case of Humber v. BF Goodrich Company, 561 So.2d 511 (Ala. 1990), the Alabama Supreme Court held that there was no confidential relationship between Plaintiffs James Humber and Defendants Williams Misco and BF Goodrich so as to require Misco or Goodrich to disclose to Humber the existence of contracts between the two Defendants. In that case, Humber contracted directly with Defendant Misco to haul tires to and from the Goodrich plant. If no confidential relationship exists in those circumstances, then there is no possibility of a confidential relationship in these circumstances where Plaintiff Pittman was merely a subcontractor doing subcontract work for Co-Plaintiff Morris Forest Products and had no direct relationship whatsoever with any of the Defendants. Without substantial evidence of a confidential relationship or some other reason for a duty to disclose, Stan Pittman has no possibility of making out a claim for fraudulent suppression, even if he could meet the other elements described above, which he cannot. As such, his claims of fraudulent suppression must fail.

## 2. Stan Pittman Does Not Even Allege Actual Knowledge of the Alleged Suppressed Fact

The third element of a claim for fraudulent suppression described in the case of Johnson v. Sorensen, *supra*, requires that the Defendant, at the time of the alleged suppression, have

actual knowledge of the fact alleged to have been suppressed.  In this case, similar to the discussions above with regard to the fraud claim, Stan Pittman has elected to tailor his testimony in order to attempt to bring his claims within the *Restatement (Second) of Agency* section which he relies upon to support his claims.  However, in so doing, he has removed all doubt about the required failure of his suppression claim.  By claiming that the Defendants did not make the decision to end the relationship between Morris and Keystone until after the meeting at issue concluded Pittman has defeated his own suppression claim.  Obviously, if the Defendants did not decide to cease doing business with Morris Forest Products until some time after Pittman turned down a job offer on the night of February 7th and again on February 11, 2005, the Defendants did not hold present knowledge of the allegedly suppressed fact at the time of the meeting made the basis of this lawsuit.  Clearly, the Defendants could not have had knowledge that the business relationship between Keystone and Morris would end during the meeting of February 7, 2005, if the decision to end the relationship was not made until after events which took place after the meeting.

Conversely, if Pittman attempts to claim that the Defendants did in fact have knowledge that the relationship was to end at the time of the meeting, he can no longer bring his claim within the requirements of the *Restatement (Second) of Agency* §374(2), because he admits that there was no intent to harm Stan Pittman as of that date, because any such intent would have been created after the fact.  Thus, again, Pittman cannot establish the elements necessary to prosecute a claim for fraudulent suppression while still bringing his claims within the

*Restatement (Second) of Agency* §374(2). As such, there is no set of circumstances under which Pittman can prosecute a claim for fraudulent suppression.

### C.    Tortious Interference

To make out a claim for intentional interference with a contractual business relationship, Plaintiff Stan Pittman must be able to demonstrate that he had such a relationship to be interfered with. As stated above, Stan Pittman freely admits that he had no business relationship whatsoever with Keystone at the time of the actions complained about in this lawsuit. As such, his claims must fail. See, e.g., <u>Parsons v. Aaron</u>, 849 So.2d 932 (Ala. 2002), and <u>Serra Chevrolet, Inc. v. Edwards Chevrolet, Inc.</u>, 850 So.2d 259 (Ala. 2002). In fact, the Plaintiffs' Complaint does not even attempt to allege a contractual or business relationship between Pittman and Keystone. Instead, the Plaintiffs admit in their Complaint that the only relationship in existence was between Morris Forest Products and Keystone. (See Plaintiffs' Complaint at paragraph 28). Thus, under Alabama law, the Plaintiff simply has no standing to bring such a claim.

The only contractual relationship held by Stan Pittman was his contractual relationship with Morris Forest Products directly. Mr. Pittman admits that there was no interference whatsoever with that relationship. That relationship began some three years before Morris ever entered into a contract with Keystone, and that contractual relationship was still in place after Morris' relationship with Keystone ended. (See Deposition of Stan Pittman at pages 12-13, 26-27, 157-160). He further admits that there was no one involved in the termination of his

contract with Morris Forest Products other than a mutual agreement between he and Mr. Morris. (See Deposition of Stan Pittman at pages 159-160). Thus, Mr. Pittman is left with absolutely no action whatsoever for intentional interference with a business or contractual relationship. He cannot demonstrate any relationship with Keystone with which to interfere, and the only contractual or business relationship that he held was not interfered with. As such, his claim simply cannot survive.

Further, even if Mr. Pittman somehow could make out a claim for intentional interference as a result of his employer's loss of business, Mr. Pittman would still have to prove that the means employed by the Defendants to allegedly interfere were somehow illegal or improper. See, e.g., Soap Company v. Ecolab, Inc., 646 So.2d 1366, 1369 (Ala. 1994). See also, Toms Foods, Inc. v. Carn, 896 So.2d 443 (Ala. 2004).

In this case, neither Pittman has not alleged any illegal conduct on the part of the Defendants. Moreover, the only "tortious" conduct alleged by Pittman is fraud and suppression. However, for the reasons stated in parts A and B above, Pittman cannot demonstrate the necessary elements of fraud or suppression and therefore cannot establish that any illegal or wrongful means were employed.[5] As such, there is no set of circumstances under which Pittman can recover for a claim of intentional interference with contractual or business relations.

---

[5] Of course, even the alleged "wrongful motives" were the motives of Jerry Turner, an employee of Keystone. The tortious interference claims are against Universal and the Universal employees only. As such, even if the Plaintiff could establish the wrongful motives of Keystone, it does not create a tortious interference claim against Universal or its employees. Obviously, Keystone cannot interfere with its own contract.

## II.    Claims Against Dana Rector

As stated above, the Defendants in this action can establish fraudulent joinder either by showing that Plaintiff Stan Pittman has no legitimate claims, or that there are no legitimate claims against Defendant Dana Rector.  Though it has been made clear above that there are not legitimate claims that Stan Pittman can possibly prove, it is also as clear that there are no legitimate claims against Dana Rector.  As against Rector individually, the Plaintiffs have pled in their Complaint claims of breach of contract, intentional interference, suppression, and fraud.  However, for the reasons present below, the Plaintiffs cannot establish that any of those claims are viable as against Defendant Dana Rector, the only allegedly non-diverse Defendant in this action.

### A.    Breach of Contract

The breach of contract allegation is simple.  No where in the Plaintiffs' Complaint or in any Affidavit or deposition do the Defendants even allege that Dana Rector, individually, stood in a contractual relationship with any other party.  Because he was not party to any contract, he cannot be guilty of breach of contract.  As such, the breach of contract claim must fail.

### B.    Fraud

The Plaintiffs have failed to state a cause of action against Defendant Dana Rector for fraud.  The Plaintiffs have generally stated, through the Affidavit and deposition testimony of Stan Pittman, that all of the Defendants, as a group, engaged in conversation that gave the Plaintiffs a "warm fuzzy feeling" that business would go on as normal.  (See Deposition of Stan Pittman at pages 90, 100).  Plaintiff Pittman described this feeling by stating that "when they

walked out of the conference room, we felt like everything would go on just as normal." (See Deposition of Stan Pittman at page 107). However, making general allegations against a group of Defendants will not result in liability of an individual Defendant unless the Plaintiffs can specify the role of that specific Defendant in the alleged fraud. See Brooks v. Blue Cross and Blue Shield of Florida, 116 F.3d 1364, 1381 (11th Cir. 1997)(citing DiVittorio v. Equidyne Extractive Industries, Inc., 822 F.2d 1242, 1247 (2nd Cir. 1987)).

Simply stating that Dana Rector was one of a group of employees of Universal who attended a meeting, and that the Plaintiffs got a "warm fuzzy feeling" at the meeting does not sufficiently state a claim of fraud against Rector individually. Moreover, when asked what specific statements were made by Mr. Rector himself, the Plaintiff was able to point to only a single statement that he can recall Mr. Rector making. Mr. Rector stated only that "everything would be wonderful if it stayed at Morris Forest Products." (See Deposition of Stan Pittman at page 92). However, as stated above, in Section I(A)(1) such a statement is merely an expression of opinion and furthermore Mr. Pittman admits that the statement was not false. As such, as this is the only statement that the Plaintiffs have attributed to Mr. Rector individually, there is no viable claim against Dana Rector for fraud. As Rule 9 of the *Federal Rules of Civil Procedure* requires fraud to be pled with particularity, any claims based on the allegation of fraud are due to be dismissed as against Mr. Rector individually.

## C.    <u>Suppression</u>

As shown above, the tort of fraudulent suppression requires that the Defendant have a confidential relationship with the Plaintiff.  There is not even an allegation, much less evidence, that Defendant Dana Rector stood in a confidential relationship with any of the Plaintiffs in this action.  As such, it is not necessary to go any further to determine that a claim for suppression cannot exist as against Dana Rector.  Moreover, as shown above, a claim for suppression requires proof that the person allegedly suppressing information have actual knowledge of the material facts which were suppressed.  The Affidavit of Dana Rector, attached Exhibit "C" to Universal Forest Products' response to the Plaintiffs' Motion to Remand clearly demonstrates that he was not involved in negotiations of contracts between Universal and other entities.  Moreover, as of the date of the meeting in question, he had no knowledge of the business relationship, if any, between Universal and Keystone and therefore did not have the requisite knowledge to make any representations about that relationship.

Mr. Rector's Affidavit has not been challenged and thus there is no possibility of proving a claim of suppression as against Mr. Rector individually.[6]

---

[6]  The Affidavit of Stan Pittman, submitted by the Plaintiffs in their Reply Brief in support of remand attempts to challenge the Affidavit of Dana Rector, but fails to do so.  On paragraph 5 of his Affidavit, Stan Pittman offered his handwritten notes reflecting a telephone conversation between himself and Jerry Turner.  He admits in his deposition that Dana Rector did not participate in that telephone conversation, and it was merely his understanding that Mr. Turner intended on meeting with Dana Rector prior to the February 7, 2005 meeting.  Of course, he cannot attest as to whether such a meeting ever took place nor can he attest to the substance of the meeting.  Instead, he simply believed based on a conversation with Jerry Turner, that Jerry Turner had the intent to meet with Mr. Rector at some point prior to the February 7, 2005 meeting.  This is far from evidence which would impute any knowledge to Dana Rector, particularly knowledge of what Keystone may choose to do with its relationship with Morris

D.    **Intentional Interference**

The final purported claim against Dana Rector is for intentional interference with a contractual or business relations.  However, the Plaintiffs cannot show any improper interference by any entities, much less by Mr. Rector as an individual.  Again, Mr. Rector's Affidavit makes it clear that he was not involved in any negotiations whatsoever between Universal and Keystone.  As such, to the extent that any of those negotiations could be labeled as "interference" by the Plaintiffs, such allegations would not apply to Mr. Rector as an individual.  Mr. Rector has been added as a Defendant in this action solely as an attempt to defeat federal jurisdiction.  There is simply no basis for a claim against him as an individual for intentional interference.

For the reasons stated herein, there is no possibility of proving any claim against Dana Rector as an individual.  As such, his state of residency cannot be considered for the purpose of destroying diversity jurisdiction.  As such, the Plaintiffs' Motion to Remand is due to be denied.

III.    **Claims Between Pittman and Rector**

For the reasons stated in partes I and II above, there are no claims that can be maintained by Stan Pittman, and that there are no claims that can be maintained against Dana Rector individually.  However, even if the Court were to find that there was some possibility of recovery under some theory by Stan Pittman as against Universal or Keystone, there is certainly

_____

Forest Products.  (See Deposition of Stan Pittman at pages 69-71).

no possibility that he can recover against Dana Rector individually. Though they have now attempted to change their position, the Plaintiffs previously admitted that in order to establish a lack of diversity jurisdiction, they had to demonstrate that Stan Pittman had some legitimate claim against Dana Rector, the only two allegedly non-diverse parties in this case. (See Plaintiffs' Motion to Remand at pages 3-4).

For the sake of brevity, the Defendant will not go through each and every element of the causes of action stated by Stan Pittman above. Instead, the defense will simply state that it is clear that Stan Pittman cannot make out a claim against Dana Rector. He admits that he is aware of only one statement made by Dana Rector at the meeting of February 7, 2005, which is the mere opinion that it would be wonderful if Morris would continue to manufacture the Keystone product. Not only does Pittman admit that the statement is true, he also admits that he was not damaged by the statement and did not rely on the statement in any way. With regard to the suppression claim, it has been established that Dana Rector did not possess any information which could be suppressed from Stan Pittman. With regard to the tortious interference claim, it is clear that Pittman did not have a relationship with which to interfere, and it has further been established that Dana Rector did not interfere. Finally, even if Pittman could somehow get around all of these undisputed facts, he cannot establish the "intent to harm" required by the *Restatement (Second) of Agency* §374(2) which would require not only that all of the elements of fraud, suppression and/or intentional interference be met, but also that Mr. Rector had the intent to harm Stan Pittman on February 7, 2005. However, Stan Pittman and

Dana Rector both agree that they had never met each other as of February 7, 2005, and there was absolutely no animosity between them prior to or during the meeting in question. Instead, as Pittman has admitted, the only motivating factor that he can come up with which would be directed at Pittman was the conversation between Pittman and Keystone employee Jerry Turner which occurred after Mr. Rector's involvement had ended. As such, it is clear that there is simply no claim that Stan Pittman could possibly hold against Dana Rector as an individual.

Though the Plaintiffs now argue that the "complete diversity" standard would require remand even if Pittman had no claims against Rector, that simply cannot be the case. If Pittman has no claims against Rector, each and every claim in this lawsuit meets the diversity requirement. Each and every Plaintiff would maintain claims only against diverse Defendants, and each and every Defendant would have claims against them only with diverse Plaintiffs.

## CONCLUSION

For the reasons presented herein, and as a result of the deposition testimony of Stan Pittman, it is clear that the Defendants have met their burden of demonstrating fraudulent joinder in this case. Stan Pittman has absolutely no possibility of succeeding on any claims whatsoever in this lawsuit, particularly with regard to those claims purported to exist against Dana Rector as an individual. Moreover, there are no legitimate claims against Dana Rector as an individual pending in this action.

When Stan Pittman decided to rely upon his allegedly turning down a job offer as the motivating factor for his claims, he actually destroyed any chance that he had at presenting those

-34-

claims, as each and every claim requires a present intent to deceive or present intent to mislead which could have not been in existence on February 7, 2005 when, according to Stan Pittman's own testimony, the decisions were not made until February 11, 2005.

Because Stan Pittman cannot present legitimate claims, and because there are no legitimate claims pending against Dana Rector, the state of residency of each individual should be disregarded for the purposes of determining the existence of diversity jurisdiction. If the Court agrees that either Mr. Pittman's claims or the claims against Dana Rector, or both, are not legitimate, the Plaintiffs' Motion to Remand must be denied. For the reasons present herein, the outcome is clear. The Plaintiffs' Motion to Remand is in fact due to be denied.

WHEREFORE, the Defendants respectfully request that this Court enter an Order denying the Motion to Remand and retaining full jurisdiction over the claims of this case. The Defendants further move that Stan Pittman's claims be dismissed in their entirety and the claims against Dana Rector as an individual be dismissed in their entirety.

Respectfully submitted,

*s/Joseph E. Stott*
Attorney for Defendant Universal Forest Products, Matthew Missad, Douglas Honholt, Dana Rector, and Kraig Jansen
2450 Valleydale Road
Birmingham, Alabama 35244
Phone: 205-967-9675
Facsimile: 205-967-7563
jstott@sssandf.com Email for Joseph Stott

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| MORRIS FOREST PRODUCTS, LLC;<br>STAN PITTMAN, | ) | |
| | ) | |
|     Plaintiffs, | ) | |
| | ) | Civil Action Number: |
| v. | ) | 3:05-CV-00564-B |
| | ) | |
| KEYSTONE EXTERIOR DESIGN,<br>LLC; JERRY TURNER; DON<br>LUDWIG; UNIVERSAL FOREST<br>PRODUCTS; MATTHEW J. MISSAD;<br>DOUGLAS P. HONHOLT; DANA<br>RECTOR; KRAIG JANSEN, | )<br>)<br>)<br>)<br>)<br>) | |
| | ) | |
|     Defendants. | ) | |

## CERTIFICATE OF SERVICE

This is to certify that on <u>October 31, 2005</u>, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the attorneys of record: Ollie A. "Tres" Cleveland, III, Esq., Randall S. Haynes, Esq., Patrick C. Davidson, Esq. and I hereby certify that I have mailed by U.S. Mail the document to the non-CM/ECF participant:

Respectfully submitted,

<u>s/</u>*Joseph E. Stott*
**ASB-4163-T71J**
Attorney for Defendant Universal Forest Products, Matthew Missad, Douglas Honholt, Dana Rector, and Kraig Jansen
2450 Valleydale Road
Birmingham, Alabama 35244
Phone: 205-967-9675
Facsimile: 205-967-7563
jstott@sssandf.com Email for Joseph Stott