IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| MORRIS FOREST PRODUCTS, LLC, et al., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) CASE NO. 05-CV-00564 ) ) |
| KEYSTONE EXTERIOR DESIGN, LLC, et al. | ) ) ) |
| Defendants. | ) ) |

**PLAINTIFFS' MOTION TO FILE SUPPLEMENTAL
REPLY TO DEFENDANTS' SUPPLEMENTAL BRIEF
IN OPPOSITION TO PLAINTIFFS' MOTION TO REMAND**

COME NOW Plaintiffs Morris Forest Products, LLC and Stan Pittman, by and through counsel and request this Court for an Order allowing Plaintiffs to file a supplemental reply to Defendants' Supplemental Response to Plaintiffs' Motion to Remand.  As grounds thereof, Plaintiffs would show unto the Court as follows:

In response to Defendants' Motion to strike Plaintiffs' Original Reply to Defendants' Opposition of Plaintiffs' Motion to Compel, Your Honor entered an order on September 30, 2005 giving Defendants until October 31, 2005 to take the deposition of Stan Pittman and file a supplemental response to Plaintiffs' original reply.  The deposition of Mr. Pittman was conducted on October 24, 2005 and Defendants submitted a supplemental response on October 31, 2005.  Defendants' Supplemental Response contained various mischaracterizations of Mr. Pittman's testimony.  The following is a list of some of the major contested items of fact that the Defendants' Supplemental Response would have this court believe are not contested.

1

Defendants' mischaracterizations are stated first with Plaintiffs' statements showing the fact being contested is contained in parentheses: [1]

- Mr. Pittman had no say whatsoever in the terms of the contract between Morris and Keystone. All of that was left up to the owners of Morris Forest Products. (Mr. Pittman actually testified that he could offer opinions regarding the business relationship between Morris Forest Products and Keystone. Mr. Pittman specifically testified that he offered an opinion as to whether the Defendants should have been allowed to tour the Morris Forest Products manufacturing facility on February 7, 2005.)

- Once the relationship between Morris Forest Products and Keystone ended, Mr. Pittman continued his relationship with Morris Forest Products until he and Mr. Morris reached a mutual agreement to end the contract in September of 2005. ( While the statement is technically true, Defendants are implying to this court that the Defendants had nothing to do with the ending of the contract between Morris Forest Products and Mr. Pittman. Mr. Pittman testified during his deposition that the wrongful acts of the Defendants were directly to blame for his having to leave Morris Forest Products.)

- Because he was not involved in negotiating the contract between Morris and Keystone, Mr. Pittman was not aware that the contract between Morris and Keystone contained an expiration date of October, 2004. (While Mr. Pittman did testify he was not aware of any expiration date of the contract, Defendants are attempting to imply that there was no contract between Keystone and Morris Forest Products during the February 7, 2005 meeting. As stated in Plaintiffs' Complaint, Morris Forest Products does allege there was a valid and existing contract between the parties on February 7, 2005.)

---

[1] The citations to Mr. Pittman' deposition have been omitted. All facts are cited and thoroughly discussed in Plaintiffs' Supplemental Reply attached hereto as Exhibit A.

01253898.1

- Though he knew there was some communication between Morris and Keystone prior to the February 7, 2005 meeting made the basis of this lawsuit, he was not aware of the details that Mr. Morris had a letter to Keystone asking for buy out of left over equipment and product. (The reason Mr. Pittman testified that he was not aware that Mr. Morris had sent a letter to Keystone asking for a buy out prior to the February 7, 2005 meeting is because it is not true. Mr. Morris has not been deposed but will testify that he drafted a letter on February 3, 2005 regarding Morris Forest Products' relationship with Keystone. This letter was given only to the Universal Defendants on February 7, 2005 but not sent via mail. Keystone intentionally was not given a copy of this letter on February 7, 2005. Morris Forest Products did not submit this February 7th correspondence to Keystone until approximately April 2005.)

- Mr. Pittman is not aware of Dana Rector participating in any way with that February 1st conversation. he understood from speaking to Mr. Turner that Mr. Turner was going to meet with Dana Rector at some point prior to the February 7, 2005 meeting at Morris Forest Products, but he does not know if that meeting ever took place. (Obviously Mr. Pittman was aware of the possibility of Dana Rector participating prior to February 7, 2005 since Mr. Turner specifically stated during a telephone conversation that he would be meeting with Mr. Missad and Mr. Rector prior to the February 7th meeting.)

- At the end of the meeting, Mr. Pittman felt that Morris would continue to be involved at the manufacturing facility for the Keystone product. Though he cannot remember anyone stating the exact words, the gist of the conversation was that Morris Forest Products was involved and everything would progress "just like it was." (This statement is simply not true. Mr. Pittman did not just feel that he and Morris Forest Products would

3

01253898.1

continue the relationship with Keystone but testified several times during his deposition that all the Defendants made representations during the February 7, 2005 meeting. Mr. Pittman could also remember exact words of Mr. Turner and Mr. Missad which were false representations. Further, just because Mr. Pittman could not remember verbatim the exact words of the Defendants, he testified over and over again that each and every Defendant made false representations. (For specific examples, see Plaintiffs' Supplemental Reply attached hereto as Exhibit A, pages 6-11.))

- Mr. Pittman does not remember any other specific statements, and cannot remember any statements that were made by Kraig Jansen or Jerry Turner. Mr. Pittman agrees that the specific statements that were made by Dana Rector were true. Basically, the tone of the conversation led Mr. Pittman to have a "warm fuzzy feeling" that Morris would continue to do the manufacturing of the Keystone product. (Again, Mr. Pittman testified that each and every Defendant, all of which were in attendance at the February 7, 2005 meeting, made false representations. This would include Mr. Jansen and Mr. Turner. Further, Mr. Pittman never agreed that all the statements made by Dana Rector were true. Defendants' counsel is mischaracterizing Mr. Pittman's deposition testimony that one of the statements that Dana Rector said was true. (See page 207 of the Deposition of Stan Pittman for a full explanation.) Mr. Pittman also did not just have a "warm fuzzy feeling" but also stated during his deposition that, without adequate representations and a "warm fuzzy feeling" the Defendants would not have been allowed to view the Plaintiffs' manufacturing facility.)

- Further, there was no animosity between himself and any of the Defendants until after the February 7, 2005 meeting had already concluded. (While Mr. Pittman can testify

4

01253898.1

regarding any animosity he personally had to any of the Defendants, he cannot possibly testify to the state of mind of the Defendants at any time.)

- In fact, he believes that if he would have not turned down the job offers on the night of February 7, 2005 and on February 11, 2005, the business between Morris and Keystone would have carried on. (Again, this is speculation on Mr. Pittman's behalf as he cannot offer testimony on behalf of the Defendants.)

- Still, he does know that his income after February 7, 2005 was not less than it had been prior to February 7, 2005. (As stated in Mr. Pittman's deposition, he emphatically stated that as a result of the Defendants' wrongful actions, he is not making as much money today as he would have been. Mr. Pittman also testified that he would draw on an account every few weeks from Morris Forest Products. This account held all of his commissions. He would take out the same amount each time so that when his sales were down, he would still have a steady income. This is why Mr. Pittman maintained the same income after February 7, 2005.)

- Mr. Pittman admits that he is not aware of anything and he cannot think of anything that he would have done differently if it was not for the statements that were made at the meeting of February 7, 2005. Moreover, he is not aware of any opportunities that he passed up or anything that he would have changed if it was not for those statements. (Again, this is a mischaracterization of Mr. Pittman's testimony. He testified that he continued to work on the Keystone project after the false representations were made. Obviously, he would not have done this if he would have known that the Keystone project was not to go forward. This is further evidenced in Mr. Pittman's deposition

5

when he stated a long list of things the company and himself would not have done if they would have known the project would have been wrongfully taken from them.)

In addition, Defendants misstate the law as it relates to the Defendants' burden in a fraudulent joinder analysis and the possibility of recovery for fraud and intentional interference with a business or contractual relationship. Defendants also continue to misstate their basis for diversity jurisdiction by maintaining that a cause of action must be had directly between Mr. Pittman and Mr. Rector, which is not the true nature of the complete diversity rule.

Another reason to allow Plaintiffs to file a supplemental response is that this is the Plaintiffs' Motion to Remand. The normal course of motions is a motion, a response and a reply. The party filing the motion gets the last word. In this case, the rare occurrence of jurisdictional – related discovery was allowed by the court. It would be unfair to allow Defendants to conduct discovery and then file a response regarding that discovery without allowing the Plaintiffs at least the opportunity to make their own arguments.

So that the court may have an full understanding of the actual misrepresentations and misstatements of law, Plaintiffs have attached hereto as Exhibit A their Supplemental Reply. For the reasons stated above, and more specifically detailed in Plaintiffs' Supplemental Reply, Plaintiffs respectfully request this Court to enter an Order allowing Plaintiffs to file a Supplemental Reply to Defendants' Supplemental Brief in Opposition to Plaintiffs' Motion to Remand.

                                        s/Randall S. Haynes_____
                                          Randall S. Haynes

OF COUNSEL:

MORRIS, HAYNES & HORNSBY
131 Main Street
Alexander City, AL 35010
(256) 329-2000

           s/ Ollie A. (Tres) Cleveland, III
           W. Percy Badham III
           Ollie A. (Tres) Cleveland, III

OF COUNSEL:

MAYNARD, COOPER & GALE, P.C.
1901 Sixth Avenue North
Suite 2400 AmSouth/Harbert Plaza
Birmingham, AL 35203
(205) 254-1000

           Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I do hereby certify that a copy of the foregoing has been served upon the following:

William Scott, Jr.
Joseph E. Stott
Scott, Sullivan, Strutman & Fox, P.C.
2450 Valleydale Road
P.O. Box 380548
Birmingham, AL 35244

Patrick C. Davidson
Adams, Umbach, Davidson and White, LLP
205 South 9th Street
Opelika, AL 36801

via CM/ECF Electronic Noticing on this the 8th day of November, 2005.

           s/ Ollie A. (Tres) Cleveland, III
           Of Counsel