# Exhibit A

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION**

| | | |
|---|---|---|
| **MORRIS FOREST PRODUCTS, LLC,** | ) | |
| **et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **CASE NO.  05-CV-00564** |
| **v.** | ) | |
| | ) | |
| **KEYSTONE EXTERIOR DESIGN,** | ) | |
| **LLC, et al.** | ) | |
| | ) | |
| **Defendants.** | ) | |

**PLAINTIFFS' SUPPLEMENTAL REPLY TO DEFENDANTS' SUPPLEMENTAL
BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION TO REMAND**

COME NOW Plaintiffs Morris Forest Products, LLC and Stan Pittman, by and through

counsel and herein, and reply to Defendants' Supplemental Response to Plaintiffs' Motion to

Remand, and move this Court to grant Plaintiffs' Motion to Remand.  As grounds thereof,

Plaintiffs would show to the Court as follows:

**I.    INTRODUCTION**

Despite Plaintiffs' objection, Stan Pittman was deposed on October 24, 2005 pursuant to

this Court's Order of September 30, 2005.  The deposition was ordered to be limited to areas

relating to jurisdictional issues.  It was not.  Defendants' Supplemental Brief brings to light the

reasons why Plaintiffs objected so forcefully to the deposition of Mr. Pittman.  The Defendants'

supplemental brief mischaracterizes many aspects of Mr. Pittman's deposition testimony[1] and

continuously misstates the law as it applies to an analysis based upon fraudulent joinder.

As stated throughout various motions filed before this Court, this is not a motion for

---

[1] For a summary/list of the major factual misrepresentations of contested fact, see Plaintiffs' Motion to File
Supplemental Reply to Defendants' Supplemental Brief in Opposition to Plaintiffs' Motion to Remand, pages 2-5.

summary judgment. Despite Defendants' arguments, Plaintiffs are not required to have evidence at this juncture of litigation. "The district court is to stop short of adjudicating the merits of the case that do not appear regularly to be frivolous or fraudulent." *Crowe v. Cullman* 113 F. 3d 1536, 1542 (11th Cir. 1997). Defendants have entered the arena warned of in *Crowe* and are attempting to have this Court adjudicate the merits of this case. Further,

> [T]he plaintiff need not show that he could survive in the district court a motion for summary judgment filed by that in-state defendant. For a remand, the plaintiff's burden is much lighter than that: after drawing **all** reasonable inferences from the record in the plaintiff's favor and then resolving **all** contested issues of fact in favor of the plaintiff, there need only be 'a reasonable basis for predicting that the state law **might** impose liability on the facts involved.'

*Crowe,* 113 F. 3d. at 1544 (emphasis added) (quoting *Bobby Jones Apt. Inc. v. Suleski* 391 F. 2d. 172-173 (5th Cir. 1968).

All Plaintiffs must show is that they **might** recover. As the Court is aware, Plaintiffs have not engaged in any discovery and therefore cannot possibly present evidence regarding the nature of the relationship between Keystone, Universal and all of the individual Defendants. Plaintiffs have continuously stated that it is their good faith belief that all of the Defendants were acting in concert in committing their wrongful acts. Plaintiffs have not had the benefit of taking the depositions of Defendants nor receiving any documentation that would evidence the relationships. There could, which means there might, be all sorts of documents evidencing the relationship between the Defendants and their intentions behind their wrongful acts. These documents could be e-mails, correspondence, letters, internal memos, notes or any other similar type business records.

Defendants also attempt to have Mr. Pittman testify regarding Defendants' intent. The Plaintiffs cannot speak on behalf of Defendants regarding their intentions. *See Wright v. American General,* 136 F. Supp. 2d 1206, 1213 (M.D. Ala. 2001); *Bethel v. Thorne,* 757

01251766.1

So.2d 1154, 1158 (Ala. 1999); and Alabama Rules of Civil Procedure 9(b).  In order to prove Defendants' intent, Plaintiffs must gather evidence through discovery, which Plaintiffs in this action have not had the opportunity to do.  Plaintiffs also have no personal knowledge regarding Defendants' intent.

Plaintiffs request this Court that while conducting its analysis that it dismisses no cause of action which could possibly be brought but for the fact Plaintiffs have not conducted discovery regarding the relationship between the Defendants or the circumstances surrounding Defendants' intent to commit their wrongful acts.

Plaintiffs must only show a mere possibility that Mr. Pittman might have a valid cause of action.  As stated above, all inferences and close questions must be viewed in his favor.  Plaintiffs submit to this Court that at least this is a close question as there has been approximately seven lengthy motions and briefs submitted on this issue.

## II.    LEGAL STANDARD

As stated by Plaintiffs throughout this action, the appropriate legal standard regarding the allegation of fraudulent joinder is that the removing party has the burden of proving that either: (1) there is no possibility plaintiff can establish a cause of action against a resident defendant, or (2) plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into State court.  *Pacheco de Perez v. AT&T Company*, 139 F. 3d. 1368, (11th Cir. 1998).[2]  When reviewing the issue of fraudulent joinder, the district court should preserve **all questions of fact and controlling law in favor of the plaintiff**.  *Cabalceta v. Standard Fruit Company*, 833 F. 2d. 1553 (11th Cir. 1989) (emphasis added).  Further, all doubts about removal and jurisdiction

---

[2] The Eleventh Circuit has identified a third situation of fraudulent joinder, "Where a diverse defendant is joined with a non-diverse defendant as to whom there is no joint, several or alternative liability and where the claim against the diverse defendant has no real connection to the claim against the non-diverse defendant." *Triggs v. John Crump Toyota, Inc.*, 154 F. 3d. 1284, 1287 (11th Cir. 1998).  Based on the facts of this action, it is apparent that the third situation promagated in *Triggs* does not apply to this litigation.

should be resolved in favor of a remand to state court. *University of South Alabama v. American Tobacco Company,* 168 F. 3d. 405 (11th Cir. 1989).

The Eleventh Circuit has gone to great detail to articulate the difficult standard facing a defendant alleging fraudulent joinder. "If there is **even a possibility** that a State Court would find that the Complaint states a cause of action against any one of the resident defendants, the Federal Court **must** find the joinder was proper and remand the case to State Court." *Triggs v. John Crump Toyota, Inc.*, 154 F. 3d. 1284, 1287 (11th Cir. 1998). (Citing *Coker v. Amoco Oil Company*, 709 F. 2d. 1433, 1040-41 (11th Cir. 1983)) (emphasis added). The court in *Triggs* further expanded upon *Coker* and stated, "The plaintiff need not have a winning case against the allegedly fraudulent defendant; he need to only have a possibility of stating a valid cause of action in order for the joinder to be legitimate." *Triggs,* 154 F. 3d. at 1287. Further, the Eleventh Circuit in *Crowe v. Cullman* stated:

> For a Plaintiff to present an arguable claim against an in-state defendant and, therefore, to require the case removed to Federal Court to be remanded to state court, the plaintiff need not show that he could survive in the district court a motion for summary judgment filed by that in-state defendant. For a remand, the plaintiff's burden is much lighter than that: after drawing **all** reasonable inferences from the record in the plaintiff's favor and then resolving all contested issues of fact in favor of the plaintiff, there need only be "a reasonable basis for predicting that the state law **might** impose liability on the facts involved."

*Crowe v. Cullman,* 113 F. 3d. 1536, 1544 (11th Cir. 1997) (quoting *Bobby Jones Apt. Inc. v. Suleski* 391 F. 2d. 172-173 (5th Cir. 1968).[3] (emphasis added)

The Court in *Crowe* further cautioned, "District courts must exercise extraordinary care to avoid jumbling up motions for remand and motions for summary judgment that come before them." *Crowe,* 113 F. 3d. at 1542. Although district courts may look beyond the face of the

---

[3] The Eleventh Circuit adopted all decisions from the former Fifth Circuit issued prior to October 1, 1999. *Bonner v. City of Pritchard*, 661 F. 2d. 1206 (11th Cir. 1981).

Complaint, "The district court is to stop short of adjudicating the merits of the case that do not appear regularly to be frivolous or fraudulent." *Id.*

## III.  THE COMPLETE DIVERSITY RULE

In Defendants' original response they argued that in order for complete diversity to exist Plaintiff Stan Pittman had to have a direct cause of action against Defendant Daniel Rector. [4]  In response to Defendants' argument, Plaintiffs in their original Reply correctly stated the complete diversity rule, which states that in actions involving multiple plaintiffs and multiple defendants that once it is determined that there is no complete diversity of citizenship of the parties, the existence of Federal jurisdiction is defeated.  *Exxon Mobil Corporation,* 125 S. Ct., at 2617-2618, 162 L. Ed. 2d. at 517.    All Plaintiffs have to show is that Mr. Pittman has a claim against any Defendant and that any Plaintiff has a claim against Mr. Rector.  For additional briefing of this argument and the lineage of Supreme Court precedent, see Plaintiffs' original Reply to Defendants' Response to Plaintiff's Motion to Remand, pages 6-8.

In short, Defendants' argument that there must be a direct cause of action between Mr. Pittman and Mr. Rector is simply incorrect.

## IV.  PLAINTIFF STAN PITTMAN HAS A POSSIBILITY OF RECOVERY FOR FRAUD

---

[4] Mr. Pittman and Mr. Rector are both admittedly citizens of the state of Georgia.  In Plaintiffs' Complaint, it was pled that Defendant Craig Jansen was also a citizen of Georgia.  Mr. Jansen has submitted an affidavit stating that he is not a citizen of the state of Georgia, but Plaintiffs believe this Affidavit of Mr. Jansen is improper because Defendants waived the ability to dispute Mr. Jansen's residency by not doing so in the first responsive pleading. After Plaintiffs filed their original Motion to Remand, Defendants then filed a motion seeking leave to conduct jurisdictional-related discovery.  During this motion, Defendants did not dispute Plaintiffs' allegation that Mr. Jansen was a Georgia resident, but instead, waited until the court entered an Order stating that it appeared there was no dispute as to the residency of Mr. Rector and Mr. Jansen before disputing Plaintiffs' allegation.  *See* Your Honor's Order of August 19, 2005, page 3.  *See also* Plaintiffs' Motion to Conduct Remand-Related Discovery.

### A.  Mr. Pittman has pled General Fraud

Plaintiffs will not restate the arguments made in Plaintiffs' original reply to Defendants' Response to Plaintiffs' Motion to Remand.  What is argued will only refute Defendants' argument made in their Supplemental Response, but for a full understanding of all Plaintiffs' arguments, please see Plaintiffs' above-mentioned original brief, pages 9-17.

In order to recover for fraud under Alabama law, Plaintiffs must show the following:  (1) a false representation (2) of an existing material fact (3) reasonably relied upon by the plaintiff and (4) damage suffered by the plaintiff as approximate cause of the misrepresentation. Citations omitted.  (*See* Defendants' Supplemental Brief, pages 8-9.)

In Defendants' Supplemental Brief, they argue that Mr. Pittman cannot meet any of the elements required to maintain a cause of action based upon general fraud.[5]  This argument is legally and factually incorrect.  Based upon Plaintiffs' Complaint, Mr. Pittman's previously filed affidavit and Mr. Pittman's deposition testimony, it is clear that there is at least "mere possibility" of recovery for Mr. Pittman for fraud.

First, Defendants state "In his deposition of October 24, 2005, Mr. Pittman cannot come up with a single specific untrue statement that was made by any individual."  *See* Defendants' Supplemental Response, page 9.  This is a clear misrepresentation of Mr. Pittman's testimony. While it is true that Mr. Pittman stated that he could not specifically remember what each defendant stated verbatim, he was very confident and stated several times that he did remember every defendant making various representations.

> Q.  And you said Mr. Turner told you he had talked to Universal and Morris would be involved, tell me what -- is that exactly what he said?
>
> A.  I can't recall it exactly to the detail.  But that was what he said.

---

[5] General Fraud only requires that elements 1-4 as stated above be satisfied.

Q.  Did he say what he meant by he had talked to Universal?

A.  Could you clear that up?

Q.  That is what I am asking you to do.  Did Mr. Turner tell you what he meant by the fact that he had talked to Universal?

A.  As I took it, that things would be just like they were.

Q.  What does that have to do with Mr. Turner talking to Universal?  Did he say what he talked to them about?

A.  He was in conversation with Universal and they were coming to meet and everything would stay just like it was.  We would keep -- business would stay just like it was.

Deposition of Stan Pittman, page 41, line 22 – page 42, line 21.

Q.  Tell me every word that you heard come out of Mr. Turner's mouth during the February 7, 2005 conversation.

A.  The best of my recollection that everything would -- the best of my recollection is the statements of Mr. Turner that everything would move on like it was at that moment.

Q.  You are telling the ladies and gentlemen of the jury he said everything would move on like it was?

A.  That is not verbatim.  But that's the gist of what he said.  Everything would move on in that direction.

Q.  Did he say anything else?

A.  There was other conversations, but as far as telling you specific words right now, I can't.

Deposition of Stan Pittman, page 211, lines 2-21, attached hereto as Exhibit 1.

Based on the above deposition testimony it is clear that prior to the February 7, 2005 meeting that Mr. Turner represented to Stan Pittman that the business relationship between Morris Forest Products and Keystone would continue.

01251766.1

In addition, Mr. Pittman testified that everyone involved in the February 7th meeting, which would include all individual Defendants, made false representations regarding the continued existence of  the business relationship between Morris Forest Products and Keystone.

Q.    Were there people who didn't talk at all other than shooting the breeze?

A.   No.  Everybody had a part of the conversation.

Q.   Tell me everything that Matt Missad said to you that was untrue.

A.    The conversation that was had there was that everything would progress normally, that Morris Forest Products would be involved, we would progress on, and that is the reason they got the tour of the plant.  Is that -- in manufacturing, you just don't take anybody through your plant unless you are sure they are going to be involved with you and you have that warm fuzzy feeling.

Q.   Do you know for a fact that Mr. Missad made any statements to that effect?

 MR. CLEVELAND:  Object to the form.  Asked and answered.

A.   I told you everything -- the statements that were in that conversation was that everything would move on.

Q.   I understand.  You also told me that some people talked more than others.  I know that everybody doesn't repeat the exact same phrases at a meeting.  What I want to know is do you  know for sure that Matt Missad made those statements?

MR. CLEVELAND:  Object to the form.

A.    The same as I stated before.   The gist of the conversation was everything was going to move on.

Q.   I understand that's the gist of the conversation.  What I want to know is was Matt Missad one of the people who said that?

A.   The gist of the conversation by everybody in there was that everything would progress on just like it was.

Q.   I take it you don't know whether Matt Missad made those statements or not?

9

A.   I am telling you the gist of the conversation, that everything would progress on just like it was.

Q.   Yes or no, you do or do not remember Mr. Missad making those statements?

A.   Making what statements?

Q.   The statements that you described as the gist of the conversation.

A.   I do remember with the gist of the conversation through Mr. Missad that the things would progress just like they were.

Deposition of Stan Pittman, page 89, line 10 – page 92, line 3.

***

Q.   What about Mr. Honholt, tell me everything that Mr. Honholt said during the meeting in the conference room.

A.   A lot of questions about product, a lot of questions about how things were done.

Q.   Did he make any statements or just ask questions?

A.   He asked questions and made statements.  The whole gist of that conversation was headed in the direction of Morris Forest Products doing the manufacturing, keeping things there.

Q.   Tell me the best you can recall anything that Mr. Honholt said during that meeting in the conference room that was not true.

MR. CLEVELAND:   Object to the term not true.  If you know any statements that he said for sure that weren't true, answer.

A.   The things that I know today that are not true in that, that that meeting was carried to lead us to believe that everything would progress, that I would continue doing just what I was doing, promoting and pushing the Keystone deck, sales, and that everything would go according to normal was what we were led to believe.

Q.   Right now I want to know what Mr. Honholt said that was untrue.

A.   We were not carried on in the production of the Keystone deck or the sales of the Keystone deck.

10

Q.  What did Mr. Honholt say that was contrary to that?

A.  The gist of that conversation that we would carry on, everybody in there.  The conversation was led to believe by the questions and the statements that were made through that conversation.  I can't recall specific words right this minute of what was said, but their gist was to lead on to we would be involved.

Q.  But you can't remember any specific words Mr. Honholt used?

A.  Not right at this moment.

Q.  What about Mr. Rector, anything that he said that was untrue, specific words that he used?

A.  The gist of that conversation that we would be continuing manufacturing.

Q.  Can you remember specific statements that Mr. Rector made that were untrue, specific words that he used?

A.  The specifics that was untrue that we would stay involved and we would be manufacturing after that date, which we didn't.

Q.  Is that something you specifically remember Dana Rector saying or was that the gist of the conversation among everybody?

A.  That was the gist of the conversation of everybody there.

Q.  I am trying to separate those two things.  I want to know if you recall specific statements.  At this time I am asking about very specific statements.  Let me go back to Mr. Honholt.  I think you said you can't remember the specific words he said.  What about Mr. Missad, can you remember specific words that he said?

A.  Matthew stated that he did not want a confrontational relationship with Morris Forest Products and thought that we could work it out where we could progress on and everything would be okay as far as manufacturing.

Deposition of Stan Pittman, page 94, line 19 – page 98, line 10.

The above testimony of Mr. Pittman clearly shows that all Defendants present at the

February 7th meeting made fraudulent representations that the status quo between Keystone and

Morris Forest Products would continue. It is absurd to argue that because Plaintiff cannot remember verbatim specific comments by each Defendant, that he cannot maintain a cause of action based upon fraud. In his Complaint, affidavit, and now deposition, Mr. Pittman has again and again stated with certainty that each and every Defendant present at the February 7, 2005 meeting made false representations regarding the continued business relationship between Morris Forest Products and Keystone.

Defendants' argument is even more absurd since Mr. Pittman did "state specifically" false statements made by Mr. Turner (Deposition of Stan Pittman, pages 41-42) and Mr. Missad (Deposition of Stan Pittman, pages 89-92, 98 and p. 113, lines 2-18). Since this Court must grant all questions of fact and controlling law in favor of the Plaintiffs, it is clear that Mr. Pittman has satisfied element one that the Defendants made false representations.

Defendants next argue that there is no possibility that Mr. Pittman could have reasonably relied upon any false representations of the Defendants. Likewise, Defendants mischaracterize Mr. Pittman's testimony. Mr. Pittman testified several times that he would not have suggested to Rod Morris that the Defendants be allowed to tour Morris Forest Products' manufacturing facilities if he did not receive adequate representations. *See* Deposition of Stan Pittman, page 87, lines 10-23, page 88, lines 1-9.

While Mr. Pittman's testimony may lack certain legal buzzwords such as "relied" and "detriment", it is straight and to the point. He basically states that after the individual Defendants assured Rod Morris and himself of a continued business relationship and maintaining the status quo, that the Defendants were then allowed to tour Morris Forest Products' facility. It is clear from Mr. Pittman's testimony that the individual Defendants would have not been allowed to tour **but for** their misrepresentations. Throughout the deposition Mr. Pittman

12

mentioned how rare it is in manufacturing to allow someone to tour your manufacturing facilities. *See* Deposition of Stan Pittman, page 89, lines 17-23, page 90, lines 1-4. This is further evidence that allowing the individual Defendants access to Morris Forest Products' facilities was a big deal and certainly done in reliance of their misrepresentations.

Defendants' Supplemental Brief also states, "Moreover, when asked if there were any opportunities that he passed up or anything that he would have done differently or anything he would have decided to do if it was not for those statements, his answer was 'I ain't got a clue.'" *See* Supplemental Brief of Defendants, page 14. Again, Defendants mischaracterize the Plaintiff's testimony.

> Q.   I don't know how else to ask it. There is a time period between February 7th, 2005 and a few weeks later where you thought that Morris was going to continue to do the Keystone business and at some point you found out they weren't.
>
> A.   Up until that point?
>
> Q.   Up until that point is there something in your life that you decided not to do that you would have done except for the untrue statements made to you at that meeting?
>
> A.   Up until that point my life and soul was Keystone decks and selling and maintaining the customers and keeping the product alive and doing well. Until that point where it was plain that it was over, that was what I was doing. That was my heart and soul.
>
> Q.   Is there some opportunity that you passed up or something that you would have done differently, something you would have decided to do if it wasn't for the feeling that you were going to continue to do the Morris work?
>
> A.   I ain't got a clue.
>
> Deposition of Stan Pittman, page 144, line 14 – page 145, line 17.

Again, while Mr. Pittman's words may lack "legalese," they are simple and evidence the extent of his reliance. Until Mr. Pittman became aware that Keystone was wrongfully ending the

relationship with Morris Forest Products, Mr. Pittman's life centered around the selling of the Keystone deck system.   The hard work of Mr. Pittman did not stop on February 7th but it continued until he was made aware that the relationship was over.   Obviously, it goes without saying that Mr. Pittman would not have continued to do the work necessary to sell the Keystone deck system if he knew the deal was over.   There is further evidence of this point in Mr. Pittman's deposition where he states many of the various activities that he and Morris Forest Products would not have done if they had known that Keystone was going to wrongfully end the relationship.   *See* Deposition of Stan Pittman page 135, line 5 through page 136, line 9.   Mr. Pittman's statement of  "I ain't got a clue" in no way limits his reliance argument.   This question was related to opportunities and decisions that Mr. Pittman would have made differently but for the fact that he thought the relationship between Morris Forest Products and Keystone was to continue.   Mr. Pittman's answer was perfectly reasonable because at the time referenced by the question he did not have the knowledge that the representations were not true and that the relationship would not continue.   As stated in the testimony, Mr. Pittman continued to work giving his entire heart and soul to the Keystone project.   Obviously Mr. Pittman might have missed opportunities that he did not know about at the time, since he was spending almost all of his time on the Keystone project.   As evidenced by his testimony, if he would have known the project would not continue, he would have stopped devoting his time to it and do what salesman do, make other sales.   But to know exactly what sales, decisions or opportunities Mr. Pittman did not take advantage of requires Mr. Pittman to speculate and to assume knowledge that he did not have at the time.[6]

---

[6] This is why Rule 9(b) of the Alabama Rules of Civil Procedure allow reliance to be generally alleged.  *Bethel v. Thorne,* 757 So.2d 1154, 1158 (Ala. 1999).

Based on the above arguments, and since all questions of fact and controlling issues of law must be viewed in Plaintiffs' favor, Mr. Pittman certainly has shown "a mere possibility" that he reasonably relied.

Next, Defendants argue that Mr. Pittman was not individually damaged as a result of Defendants' fraud.  Defendants attempt to argue that Mr. Pittman can only recover for damages from the time that the fraudulent statements were made until he became aware of the fraud.  This is simply not the status of the law in Alabama.  Plaintiffs regularly seek and recover damages for loss of profits, consequential damages and expectancy damages.  *Mannington Wood Floors v. Port Epes Transportation,* 669 So.2d 817, 823 (Ala. 1995).  As stated in Mr. Pittman's Complaint and in his deposition, he expected to dramatically increase his income as a result of the Keystone project. Obviously, this did not occur when the project was wrongfully taken from him.

> Q.   You don't know if you are making more money or less money today than you were making when you worked for Morris Forest Products?
>
> A.   If Universal hadn't came in and snatched out the decks out from under us, I would have been making a whole lot more money than what I am making right now.
>
> Deposition of Stan Pittman, page 149, lines 14-22.

Defendants attempt to argue that Mr. Pittman's loss of future commissions are speculative in nature and therefore he can receive no recovery on them.  As the Court is aware, Defendants have not been able to conduct discovery regarding Mr. Pittman's damages.  It is quite possible that Mr. Pittman could have made a great deal of money from commission sales resulting from the Keystone deck system.  Further, *Mannington* held there only be some reasonable estimate for the amount of damages and "absolute certainty is not required." *Mannington Wood Floors,* 669 So.2d at 823. Until Defendants are able to conduct discovery

01251766.1

from Keystone and Universal regarding projected sales and actual sales of the deck system after wrongfully cutting out Morris Forest Products, the question of whether Mr. Pittman's damages are speculative cannot be answered.  It is certainly reasonable to expect profit on a project that one tirelessly devoted themselves to for twenty-four months before having it wrongfully taken away.

Also, while it is true that Mr. Pittman admitted that his pay from Morris Forest Products did not decrease after February 7th, this fact has no bearing on the possibility of Mr. Pittman's damages.  Just because Mr. Pittman made the same amount of money does not mean that he did not lose potential sales from Keystone during that time.  Mr. Pittman did testify that he sold "board and wedges" in addition to other items for  Morris Forest Products.  *See* Deposition of Stan Pittman, pages 9-10.  It is entirely possible that during the period after February 7, 2005, Mr. Pittman had an increase of "board and wedges" sales or an increase of sales of other items.  Also, Mr. Pittman testified that he took a steady draw every week from Morris Forest Products.  *See* Deposition of Stan Pittman, page 130, line 14 – page 131, line 20.  Based on Mr. Pittman's testimony, his commissions went into an account where he would take a consistent draw so that there would be money there when sales were down.  *See* Deposition of Stan Pittman, pages 130-131.  Therefore, again it entirely possible that Mr. Pittman made no sales after the February 7th time period, but continued to be paid the same amount because he had a large sum saved in his account.

What cannot be missed from Mr. Pittman's testimony is that he believes he would be making a lot more money today if he would have continued with Morris Forest Products on the Keystone project.  Therefore, Mr. Pittman has certainly shown a possibility of damages since all questions of fact and controlling law must be viewed in his favor.

01251766.1

### B.  Mr. Pittman can maintain a Promissory Fraud Action

Defendants are correct in stating that, in order to maintain a cause of action based on promissory fraud, there are two additional elements to be satisfied:  (5) at the time of the misrepresentation defendant intended not to perform the act promised and (6) defendant had an intent to deceive.  Citations omitted.  *See* Defendants' Supplemental Response, page 9.

While Defendants have correctly stated the law in this instance, the problem with their argument is that Mr. Pittman's fraud claim is not based on promissory fraud.  This is because the fraud was not regarding a promise to act or abstain from acting in the future.  Plaintiffs have pled a breach of contract action against Defendants.  It is Plaintiffs' allegation that Morris Forest Products had a valid contract with Keystone which included a right of first refusal.  *See* Plaintiffs' Complaint, paragraphs 12, 23, 24, 25 and 26. Since the parties had a valid contract, these are not representations regarding a promised act in the future but instead representations to maintain the status quo and comply with the terms of the then existing contract.  Since all questions of fact and controlling issues of law must be viewed in the light most favorable to the Plaintiffs and since Defendants have not had the opportunity to conduct discovery in this case, Plaintiffs therefore have a general fraud cause of action.

Even if Defendants somehow convince this court that Mr. Pittman's fraud cause of action is one for promissory fraud, Defendants are still premature in their conclusion that Mr. Pittman cannot maintain a claim based upon promissory fraud.  The two additional requirements that differentiate promissory fraud from general fraud both relate to Defendants' intent at the time of the fraudulent misrepresentations.  At this point in the litigation Plaintiffs are not required to have any evidence of intent but instead may plead it generally.  This point is clarified in *Bethel v. Thorne* where the court held that Alabama Rule of Civil Procedure 9(b) states that plaintiffs only

need to generally state defendant's conditions of the mind such as intent or knowledge. *Bethel v. Thorne,* 757 So.2d at 1158 (Ala. 1999). In a previous filing before this Court, Defendants conceded this point by stating, "The Plaintiffs have admitted in prior filings that Mr. Pittman cannot speak to the Defendants' intent. Any attempt to do so is pure speculation." *See* Defendant Universal's Motion to Strike, page 6. Plaintiffs have continuously stated throughout this case that Mr. Pittman cannot testify or speak for Defendants regarding their intentions for committing their wrongful actions. It is apparent that both parties agree that any testimony by Mr. Pittman regarding Defendants' intent in nothing more than speculation. As stated in the introduction, Plaintiffs have not had the opportunity to conduct discovery regarding Defendants' intent. It is entirely possible that there are various e-mails, memos, correspondence and a host of other documents that will evidence the relationship between Universal and Keystone and each Defendant's intentions. It is impossible to know at this point the exact relationship between the Defendants and who had what intentions at what time. Mr. Pittman's fraud claim should not be viewed as inadequate, since he has not been given the same opportunities as the Defendants to conduct discovery. This is not a motion for summary judgment but instead analysis of fraudulent joinder, and therefore, pursuant to *Bethel v. Thorne* and the Alabama Rules of Civil Procedure Plaintiffs should be given the benefit regarding Defendants' intent. Since Plaintiffs have not conducted discovery it is possible for Plaintiffs to maintain a cause of action based on Promissory Fraud.

## V.  STAN PITTMAN HAS A POSSIBILITY OF RECOVERY FOR TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP.

Under Alabama law, in order to recover for the tort of intentional interference with a business or contractual relationship, the plaintiff must show

1)the existence of a contract or business relation; 2) the defendant's knowledge of the contract or business relation; 3) intentional interference by the defendant with the contract or business relation; 4) the absence of justification for the defendant's interference; and 50 damage to the plaintiff as a result of the interference.

*Tom's Foods, Inc. v. William C. Carn, III*, 896 So.2d 443, 453 (Ala. 2004) (citing *Parsons v. Aaron,* 849 So.2d 932 (Ala. 2000)).

As stated on page 20 of Plaintiffs' original Reply, Mr. Pittman has properly pled this cause of action against all Defendants.[7] Specifically, Mr. Pittman has sufficient evidence to maintain a cause of action against Universal and Jerry Turner for tortious interference.

The first element is satisfied through Mr. Pittman's deposition that he had a valid independent contractor agreement with Morris Forest Products. *See* Deposition of Stan Pittman at page 9, lines 9-16; page 12, lines 3-8. This contract was not at will, as it was for a specific duration of time, and gave Mr. Pittman a certain percentage of all sales he made on behalf of Morris Forest Products. *See* Deposition of Stan Pittman at page 10, lines 12-16. This is the contract that Defendants have intentionally interfered with.

Mr. Pittman also has evidence regarding the second element. Based on Mr. Pittman's affidavit, Jerry Turner, and therefore Keystone, had knowledge of Mr. Pittman's agreement with Morris Forest Products to sell for Morris Forest Products on commission. *See* Affidavit of Stan Pittman, paragraph 9.

Mr. Pittman has also satisfied element three by testifying that it is his opinion that Mr. Turner and Keystone tortiously ended the relationship with Morris Forest Products to directly harm Mr. Pittman. *See* Deposition of Stan Pittman, pages 168-169.[8] These intentional acts

---

[7] As stated throughout this brief, Plaintiffs have not taken discovery and are therefore unaware of the actual relationship and control at the time of the incidents surrounding this litigation between Keystone and Universal. Based on this handicap, no causes of action should be dismissed until discovery can be had.

[8] At this point in the litigation and pursuant to the previously stated fraudulent joinder analysis, all Mr. Pittman must do is show the possibility that this element will be satisfied. Actual proof of intent is not required. *See Bethel v.*

directly against Stan Pittman resulted directly in the interference with Mr. Pittman's contract with Morris Forest Products.  As previously stated, Mr. Turner was aware that Mr. Pittman was compensated solely through commission and therefore, he understood the best way to harm Mr. Pittman would be to stop him from receiving any commissions.  Also known by Mr. Turner was the fact that Mr. Pittman expected a significant portion of his income to be from the Keystone/Universal deck system.  *See* Affidavit of Stan Pittman, paragraph 9.

Defendants contend that since the relationship between Mr. Pittman and Morris Forest Products began before and continued after the relationship between Morris Forest Products and Keystone/Universal, then Mr. Pittman can therefore not recover.  Defendants further state "He (Mr. Pittman) further admits that there was no one involved in the termination of his (Mr. Pittman) contract with Morris Forest Products other than a mutual agreement between he (Mr. Pittman) and Mr. Morris.  *See* Defendants' Supplemental Response, page 27-28.  Again, Defense counsel is mischaracterizing Mr. Pittman's testimony.  Defendants would have this Court believe that Mr. Pittman testified that Keystone/Universal in no way contributed to ending the relationship between Morris Forest Products and Mr. Pittman.  In actuality, Mr. Pittman testified to the following:

> Q.  Why did you leave Morris Forest Products?
>
> A.  Why did I leave Morris Forest Products?
>
> Q.  Yes.
>
> A.   Well, Morris Forest Products had been damaged by this Keystone/ Universal, whatever you want to call it, and Morris Forest Products is under great financial stress.  Stan Pittman had to leave to try to survive.
>
> Deposition of Stan Pittman, page 211, line 22 – page 212, line 9.

---

*Thorne,* 757 So.2d 1154, 1158 (Ala. 1999). *See  also Wright v. American General,* 136 F. Supp. 2d 1206, 1213 (M.D. Ala. 2001).

Mr. Pittman's testimony could not be any more to the point. As a result of the Defendants' wrongful actions Mr. Pittman, despite his best efforts, had to leave Morris Forest Products and find other employment in order to make a living. Mr. Pittman directly attributes the wrongful actions of the Defendants to his leaving Morris Forest Products. Further, Defendants have cited no case law or expanded on their theory that one may not recover for intentional interference with a business relationship if the adversely affected parties attempt to resolve the situation in spite of the wrongful actions taken upon them. Alabama case law does not make this distinction, and one could argue that Mr. Pittman would be required to attempt to resolve the situation or he would not have mitigated his damages, as the law requires. This is not a Motion for Summary Judgment and Plaintiffs are not required to present evidence but merely show the possibility of satisfying the elements of this claim, and it is clear Mr. Pittman has done such with regard to element 3.

Analysis regarding element 4, justification, is not proper at this time since "justification for interference with a contractual or business relations is an affirmative defense to be pled and proved by the defendant." *Tom Foods Inc. v. Carn,* 896 So.2d 443, 454 (Ala. 2004). Defendants have offered no evidence regarding their justification of their wrongful acts. Since the parties are arguing fraudulent joinder issues and not a Motion for Summary Judgment, any evidence, argument or discussion regarding an affirmative defense would be improper. Further, since all questions of fact and controlling issues of law must be viewed in the Plaintiffs' favor, the issue of justification must be in the Plaintiffs' favor.

As previously stated, Mr. Pittman testified that he would be making more money today if not for the wrongful actions of the Defendants. *See* Deposition of Stan Pittman at pages 135-136. This testimony satisfies element 5 for purposes of showing that Mr. Pittman has a

possibility of showing damages.  See also pages 14-16 of this motion for full explanation of the possibility of Mr. Pittman's damages.

The summary of Mr. Pittman's testimony from his affidavit and deposition are as follows:  Mr. Turner knew of his agreement with Morris Forest Products to sell solely for commission;  Mr. Turner, as a agent of Keystone, attempted to hire Mr. Pittman away from Morris Forest Products;  when Mr. Pittman did not accept Keystone's employment advances, Defendants became angry with Mr. Pittman and sought vengeance against him;  to harm Mr. Pittman, the Defendants ended the relationship with Morris Forest Products, which Mr. Turner knew Mr. Pittman expected to receive substantial commissions from; as a result of the Defendants' wrongful actions, Mr. Pittman has less income today than he otherwise would have.  Based on the above, and since all issues of fact and controlling questions of law must be viewed in Plaintiffs' favor, Mr. Pittman has clearly shown a possibility of a cause of action based on intentional interference with a business or contractual relationship against Keystone and Mr. Turner.[9]

---

[9] An additional argument made by Defendants is "further, even if Mr. Pittman somehow could make out a claim for intentional interference as a result of his employer's loss of business, Mr. Pittman would still have to prove that the means employed by the Defendants to allegedly interfere was somehow illegal and improper.  *See, EG. Soap Company v. Ecolab, Inc.* 646 So.2d 1366, 1369 (Ala. 1994).  *See also Tom Foods, Inc. v. Carn,* 896 So.2d 443 (Ala. 2004)."  *See* Defendants' Supplemental Response, page 28.  Again, Defense counsel is somewhat misleading the Court on the above cases' rulings.  Neither *Soap Company* or *Tom's Foods* in any way hold that a claim for intentional interference requires the Plaintiff to show that the interference was illegal or improper.  These cases deal with what is known in the body of intentional interference law as "the competitor's privilege."  The competitor's privilege is "one's privilege to engage in business and to compete with others and implies a privilege to induce third persons to do their business with him rather than with his competitors.  In order not to hamper competition unduly, the rule stated in this section entitles one not only to seek to divert business from his competitors generally but also from a particular competitor."  ¶ 768, Restatement (2nd) of Torts, Comment B.  Mr. Pittman's cause of action does not relate to competitors diverting business from each other.  Therefore, the competitor's privilege does not apply and Mr. Pittman does not have to show Defendants' actions were "illegal and improper".

01251766.1

## VI.  CLAIMS AGAINST DANA RECTOR

As previously stated, Plaintiffs need not show a claim directly between Mr. Pittman and Mr. Rector in order for this case to be properly remanded back to State court.  All that must be shown is a claim against Mr. Rector by any Defendant.[10]

Throughout this Supplemental Reply and in Plaintiffs' original reply, it has been stated that there was some connection between Keystone and Universal at the time of the actions leading to the substance of this litigation.  The Universal Defendants continuously argue that some of the claims are not proper against Universal and its individual employees since Plaintiffs do not have evidence of such.  It is Plaintiffs' belief that Universal and Keystone were working in concert when their wrongful actions occurred.  The evidence that leads Plaintiffs to this allegation is the business note of Stan Pittman that shows there was a planned meeting between Universal and Keystone to discuss Morris Forest Products prior to the February 7, 2005 meeting.  *See* Deposition of Stan Pittman at pages 72-74.  Also, common sense tells us that Universal would not have scheduled and sent four representatives to a meeting with Morris Forest Products and requested to view manufacturing facilities if there was no business relationship between the parties.  Plaintiffs have not had the opportunity to conduct discovery and therefore request this Court not to dismiss any claims of Morris Forest Products or Mr. Pittman against the Universal Defendants for lack of evidence.  Mr. Pittman has properly pled his claims and has certainly shown this Court that there is a possibility that Universal and Keystone were working in concert.

What cannot be ignored by this Court is the fact that regardless of whether Stan Pittman has a claim against Dana Rector, it is obvious that Morris Forest Products has properly pled and has a possibility of recovery against Mr. Rector.  Plaintiffs' Complaint, paragraph 38 states that

---

[10] Of course, this also requires Mr. Pittman have a viable cause of action against any single Defendant.

Mr. Rector made false representations to Morris Forest Products. This is not only in Mr. Pittman's Complaint but also in Morris Forest Products' so therefore Morris Forest Products has also alleged these facts. Defendants' previous Affidavits in no way relate to the causes of action brought by Morris Forest Products but only those by Mr. Pittman. Also, the statements testified to in Mr. Pittman's deposition show that Mr. Rector did make representations, regardless if Mr. Pittman can remember them verbatim or not. *See* Deposition of Stan Pittman at page 91, lines 7-9. Further, the depositions of Rod Morris and other employees of Morris Forest Products have not been conducted. It is entirely possible, based on the allegations in Morris Forest Products' Complaint, that some of those individuals heard representations by Mr. Rector.

Also, in paragraph 29 of the Complaint, it is stated that Mr. Rector intentionally interfered with the contract between Morris Forest Products and Keystone. Morris Forest Products has also pled a claim of suppression against Universal and its individual Defendants. These claims have been sufficiently pled and Defendants have offered no evidence to dispute them.

Therefore, Morris Forest Products has certainly presented a cause of action for fraud, intentional interference and suppression against Dana Rector.

## VII.  CONCLUSION

Based on the above analysis and the existence of various contested facts and since all facts and controlling questions of law must be resolved in the Plaintiffs' favor, Plaintiffs respectfully request this Court to grant their Motion to Remand this action back to the Circuit Court of Tallapoosa County, Alabama, Alexander City Division.

01251766.1

s/Randall S. Haynes_____
Randall S. Haynes

OF COUNSEL:

MORRIS, HAYNES & HORNSBY
131 Main Street
Alexander City, AL 35010
(256) 329-2000

s/ Ollie A. (Tres) Cleveland, III_____
W. Percy Badham III
Ollie A. (Tres) Cleveland, III

OF COUNSEL:

MAYNARD, COOPER & GALE, P.C.
1901 Sixth Avenue North
Suite 2400 AmSouth/Harbert Plaza
Birmingham, AL 35203
(205) 254-1000

Attorneys for Plaintiffs


## CERTIFICATE OF SERVICE

I do hereby certify that a copy of the foregoing has been served upon the following:

William Scott, Jr.
Joseph E. Stott
Scott, Sullivan, Strutman & Fox, P.C.
2450 Valleydale Road
P.O. Box 380548
Birmingham, AL 35244

Patrick C. Davidson
Adams, Umbach, Davidson and White, LLP
205 South 9th Street
Opelika, AL 36801

via CM/ECF Electronic Noticing on this the 7th day of November, 2005.

s/ Ollie A. (Tres) Cleveland, III_____
Of Counsel