## Loislaw Federal District Court Opinions

WILLIAMS v. CONSECO, INC., (S.D.Ala. 1999)

*57 F. Supp.2d 1311*

Warren WILLIAMS, et al., Plaintiffs, v. CONSECO, INC., et al., Defendants.

No. CIV. A. 99-0118BHC.

United States District Court, S.D. Alabama,

Southern Division

June 7, 1999.

**West Page 1312**

Robert C. King, Weaver & King, PC, Monroeville, AL, Christian E. Roberson, Birmingham, AL, George K. Elbrecht, Monroeville, AL, for Plaintiffs.

David Brian O'Dell, Burr & Forman, Paul P. Bolus, Gary L. Howard, J. Hunter Phillips, Alycia K. Jastrebski, Burr & Forman LLP, Birmingham, AL, J. Fairley McDonald, III, Maynard, Cooper & Gale, Montgomery, AL, for Defendants.

**MEMORANDUM OPINION AND ORDER**

HAND, Senior District Judge.

Currently pending in this action are plaintiffs' motion for remand (Doc. 8), and the Report and Recommendation recommending that the motion for remand be granted (Doc. 23). In this Memorandum Opinion, the court sets forth its reasons for rejecting the Report and Recommendation
**West Page 1313**
of the Magistrate Judge, and for denying the plaintiffs' motion.

**I. BACKGROUND**

This case arises out of a "multi-level marketing" program apparently gone awry. The complaint alleges that defendants Life Partners and Massachusetts General and several individuals planned to form a multi-level marketing program for the sale of insurance and annuity products offered by Life Partners and Massachusetts General. *See* Complaint at ¶ 26. As a result of these discussions, defendant National Marketing Alliance was formed. Complaint at ¶¶ 26, 27. Plaintiffs allege that they were recruited to and did become agents of National Marketing Alliance through contracts known as "multi-level marketing agency contracts." Complaint at ¶ 30.

In general terms, the plaintiffs assert contract and tort claims against the defendants for three alleged defalcations in their management of the multi-level marketing system. First, the plaintiffs claim that according to their contracts they were to be paid commissions based on a six-level downline, while in fact

the defendants only paid them for two levels. Complaint at ¶¶ 32 et seq. Secondly, the plaintiffs claim that the defendants wrongfully transferred their downlines to other agents. That is, the defendants allegedly credited other agents with commissions generated in the plaintiffs' downlines — commissions the plaintiffs claim rightfully belong to them. Complaint at ¶¶ 59 et seq. Finally, the plaintiffs claim that the defendants wrongfully terminated their agency contracts. Complaint at ¶¶ 68 et seq.

The complaint is pled in seven counts. Count I, claiming breach of contract in connection with the alleged failure to pay six levels of commissions, is the only claim pled as a class claim, and it is the only count in which California plaintiff Warren Williams joins. Count I specifically names defendants Conseco, Incorporated, Conseco Life Insurance Company, Massachusetts General Life Insurance Company, and Life Partners Group, Incorporated. Count I does not name as defendants Ron Petrinovich and Curtis Cobb, Jr., who, like plaintiff Williams, are domiciled in California. Plaintiffs seek to represent a nationwide class in their pursuit of Count I.

In Counts II through VII of the complaint, plaintiffs Dan Haygood, Jr., and Robert Needham, state individual (i.e., non-class) claims of fraud, suppression, breach of contract, interference with contractual relationships, bad faith, and civil conspiracy against various defendants alleged to be involved in the wrongdoing alleged in the complaint. The complaint and notice of removal disclose that Counts II through VII are completely diverse. In these counts, Haygood, from Georgia, and Needham, from Alabama, sue various defendants domiciled in Indiana, Texas, Colorado, and California.

In no count of the complaint do the plaintiffs demand judgment in a specific dollar amount; however, plaintiffs Haygood and Needham do state claims for punitive damages in Counts II, III, V, VI, and VII of their complaint.

## II. DISCUSSION

The first principles of diversity jurisdiction are well known. This court, as a creature of Congress, U.S. Const., Art. III, § 1, possesses only that portion of the constitutionally permissible field of Article III jurisdiction specifically granted to it by Congress. The contours of its jurisdiction must not, and may not, be expanded by judicial usurpation. *Snyder v. Harris,* **394 U.S. 332**, 341, 89 S.Ct. 1053, 1059, 22 L.Ed.2d 319 (1969); *Gardner v. Empire Inc.,* **754 F.2d 478**, 482 (2d Cir. 1985) ("[W]e perceive no role for judicial inventiveness in expanding diversity jurisdiction where Congress has sought to limit it.").

Congress has granted subject matter jurisdiction to the district courts over "all civil actions where the matter in controversy exceeds the sum or value of
**West Page 1314**
$75,000" provided that complete diversity exists between the parties. **28 U.S.C. § 1332**(a); *Strawbridge v. Curtiss,* 3 Cranch (7 U.S.) 267, 2 L.Ed. 435 (1806). The rule of complete diversity

holds that generally diversity jurisdiction may be sustained only where "there is no plaintiff and no defendant who are citizens of the same State." *Wisconsin Dept. of Corrections v. Schacht*, **524 U.S. 381**, ___, 118 S.Ct. 2047, 2052, 141 L.Ed.2d 364 (1998). However, the doctrine of fraudulent joinder is a recognized qualification to this requirement. *See, e.g., Cabalceta v. Standard Fruit Co.*, **883 F.2d 1553** (11th Cir. 1989).

In addition to these rudiments, the court's reading of the law discloses two imperatives placed on district courts in removed cases. First, the court must *decide* the issue of jurisdiction; second, the court must *exercise* jurisdiction where it exists.

First, the court observes that the Judicial Code, 28 U.S.C. contains no provision for "discretionary remand" in cases of original jurisdiction.**[fn1]** Although the court must construe the diversity statute "narrowly," *Burns v. Windsor Ins. Co.*, **31 F.3d 1092**, 1095 (11th Cir. 1994), the court *must determine* whether subject-matter jurisdiction exists or not.**[fn2]** "A federal court not only has the power but also the obligation at any time to inquire into jurisdiction whenever the possibility that jurisdiction does not exist arises." *Fitzgerald v. Seaboard System R.R.*, **760 F.2d 1249**, 1251 (11th Cir. 1985), *citing Philbrook v. Glodgett*, **421 U.S. 707**, 95 S.Ct. 1893, 44 L.Ed.2d 525 (1975); *City of Kenosha, Wisconsin v. Bruno*, **412 U.S. 507**, 511, 93 S.Ct. 2222, 2225, 37 L.Ed.2d 109 (1973).

Two recent cases from this Circuit and the Fifth Circuit further underscore the district court's duty in this connection. *See, University of South Alabama v. American Tobacco Co.*, **168 F.3d 405** (11th Cir. 1999); *Marathon Oil Co. v. A.G. Ruhrgas*, **145 F.3d 211** (5th Cir. 1998), *rev'd sub nom. Ruhrgas AG v. Marathon Oil Co.*, ___ U.S. ___, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999).**[fn3]**

Of course, if the court lacks subject-matter jurisdiction over a case, it must be remanded. **28 U.S.C. § 1447**(c). However, where jurisdiction does exist, the court must use it. Indeed, the Supreme Court has indicated on several occasions that the district courts are under a "virtually unflagging obligation . . . to exercise" such jurisdiction as Congress has authorized. *Colorado River Water Conservation Dist. v. United States*, **424 U.S. 800**, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976), *citing England v. Louisiana State Bd. of Medical Examiners*, **375 U.S. 411**, 415, 84 S.Ct. 461, 464, 11 L.Ed.2d 440, 444 (1964).

Both of the foregoing precepts were set forth many years ago by our Supreme Court:

> It is most true that this Court will not take jurisdiction if it should not: but it is equally true, that it must take jurisdiction if it should. The judiciary cannot, as the legislature may, avoid a measure because it approaches the confines of the constitution. We cannot pass it by because it is doubtful. With whatever
> **West Page 1315**
> doubts, with whatever difficulties, a case may be attended, we must decide it, if it be brought before

us.

*Cohens v. Virginia,* 19 U.S. (6 Wheat.) 264, 404, 5 L.Ed. 257 (1821).

Having set forth the foregoing legal context, the court turns to the specific jurisdictional questions presented in this case.

A. The Presence of Complete Diversity

One likely could find literally hundreds of reported decisions which repeat the mantra, "Diversity jurisdiction requires complete diversity between all plaintiffs and all defendants." *See, e.g., Halleran v. Hoffman,* 966 F.2d 45 (1st Cir. 1992). Setting aside the question of fraudulent joinder, mechanistic application of this rule to the case at bar, as the plaintiffs propose, would result in the summary remand of this case. The court would simply observe that Warren Williams is a plaintiff from California, and Ron Petrinovich, Curtis Cobb, and David Gin are also from California and are named as defendants in the complaint. But this overly simplistic approach would ignore the legal realities of this case.

That reality is that the California plaintiff does not sue the California defendants. The court finds no reported decision in which a court has considered the presence *vel non* of complete diversity in this specific, unusual circumstance. Upon careful consideration of this issue, the court concludes that the presence or absence of such a controversy, or "clash of interests," between diverse or nondiverse parties, is the factor that makes or breaks diversity jurisdiction, respectively. Because there is no concrete controversy between nondiverse parties in this case, the court finds that complete diversity exists in this case.

As the Court of Appeals for the Third Circuit has stated,

> In order to sustain jurisdiction based on diversity of the parties, *there must exist an actual, substantial controversy between citizens of different states,* all of whom on one side of the controversy are citizens of different states from all parties on the other side.

*Employers Insurance of Wausau v. Crown Cork & Seal Co.,* 905 F.2d 42, 45-46 (3d Cir. 1990) (emphasis supplied); *also see Walls v. Ahmed,* 832 F. Supp. 940, 941 (E.D.Pa. 1993).

Other courts have also discussed complete diversity in terms of the diversity of each *claim* in the case:

> And 28 U.S.C. § 1332(a) speaks in terms of the diversity of "civil actions" — *it is not enough that . . . total diversity may exist as to fewer than all of a plaintiff's claims, if they are joined with at least one nondiverse claim.*

*Controlled Environment Systems v. Sun Process Co.,* 936 F. Supp. 520, 521 (N.D.Ill. 1996) (emphasis supplied).

In this case, each individual count of the complaint constitutes an "actual, substantial controversy between citizens of different states, all of whom on one side of the controversy are citizens of different states from all parties on the other side." *Employers Insurance, supra*. Also, as to each plaintiff in this case, complete diversity exists. Neither Warren Williams, nor Dan Haygood, nor Robert Needham states *"at least one nondiverse claim"* because there are no nondiverse claims in the complaint. *Controlled Environment Systems, supra*.

A clear example of the principle that only an actual controversy between nondiverse parties will destroy diversity is found in third-party practice. Consider a case in which an Alabama plaintiff sues a Louisiana defendant in an Alabama state court, and the Louisiana defendant files a third-party claim against an Alabama third-party defendant. This entire case is removable by the Louisiana defendant, even though it could be said that there are parties with identical citizenship on both sides of the dispute. *See, e.g., Becker v. Crounse Corp.*, **822 F. Supp. 386** (D.Ky.
**West Page 1316**
1993); 13B Charles A. Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice and Procedure* § 3723 at 611 (3d Ed. 1998). However, if the plaintiff seeks to assert claims against the third-party defendant, who is nondiverse, the district court lacks jurisdiction over that claim. *Owen Equipment and Erection Company v. Kroger*, **437 U.S. 365**, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978).**[fn4]**

The *Owen* case is instructive. An Iowa plaintiff sued an Oklahoma defendant in federal court, asserting only state-law claims. *Id*. at 367, 98 S.Ct. 2396. The defendant filed a third-party claim against Owen Equipment and Erection Co., an Iowa corporation. *Id*. Subsequently, the plaintiff amended her complaint to state claims against Owen, and the case ultimately went to trial only on those amended claims. *Id*. at 368, 98 S.Ct. 2396. The United States Supreme Court held that the district court lacked jurisdiction over the claims, reasoning that:

> [I]t is clear that the [plaintiff] could not originally have brought suit in federal court naming Owen and OPPD as codefendants, since citizens of Iowa would have been on both sides of the litigation. Yet the identical lawsuit resulted when she amended her complaint. Complete diversity was destroyed just as surely as if she had sued Owen initially. *In either situation, in the plain language of the statute, the "matter in controversy" could not be "between . . . citizens of different States."*

*Owen*, 437 U.S. at 373, 98 S.Ct. at 2403, 57 L.Ed.2d at 282 (emphasis supplied). Therefore, what destroyed jurisdiction in the *Owen* case was not the mere presence of a nondiverse defendant, who was on the opposite side of the case in only an abstract sense. Instead, jurisdiction existed until the plaintiff *actually stated claims* against the party which carried the same domicile. At that point there existed an "actual, substantial

controversy" between nondiverse parties. This destroyed complete diversity.

Finally, it is incoherent to suggest that each of the seven claims in the complaint could have been brought in federal court individually, but can not be brought under the same civil action via Fed.R.Civ.P. 20.[fn5] Consider, by way of counterexample, one common scenario: plaintiff, a resident of the forum state, files fraud claims jointly against an insurance company, an alien corporation, and his insurance agent, also a resident of the forum state. The plaintiff could sue the alien corporation alone in federal court, but not the resident agent. If the two are sued jointly, the claims against the agent, assuming at least one such claim is colorable, dictate that the case must be dismissed or remanded to state court.[fn6] But that is not the case here. In this case, clearly, each of the seven counts of the complaint could be brought in federal court separately. Therefore, they can be brought in federal court together.

The rule that claims can be brought together in federal court, if they could be brought separately in federal court, is another recognized exception from the rule of complete diversity. In the case of *Romero v. International Term., Operating Co.*, **358 U.S. 354**, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959), the plaintiff, a Spanish citizen, brought claims against several diverse defendants and one defendant as to which there was not diversity. However, as to the nondiverse defendant, the plaintiff stated a colorable claim under the federal Jones Act. Hence, there was an independent basis of jurisdiction
**West Page 1317**
— i.e., federal question — over the claims against the nondiverse party. The Supreme Court noted that this circumstance represented an exception from "the rule of *Strawbridge v. Curtiss*." *Romero*, 358 U.S. at 381, 79 S.Ct. at 485, 3 L.Ed.2d at 387.

Recently, the Eleventh Circuit has discussed *Romero*'s rule as follows:

> The *Romero* exception to the *Strawbridge* complete diversity rule allows a court to ignore a particular party for diversity purposes because that party is properly before the court on a separate ground of original federal jurisdiction. . . . *This exception is logical because it allows claims that could each be brought separately in federal court to be tried in the same case.*

*Palmer v. Hospital Authority Randolph County*, **22 F.3d 1559**, 1565 (11th Cir. 1994) (citations omitted, emphasis supplied).

Although both *Romero* and *Palmer* relied on federal question jurisdiction with respect to the clearly nondiverse claims involved, nothing in those cases dictates that the independent ground of jurisdiction over the claims against the potentially diversity-destroying party must be **28 U.S.C. § 1331**. Instead, *Palmer* and *Romero* more generally endorse the claim-by-claim (or plaintiff-by-plaintiff) assessment of diversity of citizenship the court applies in the case at bar. In this case, it just happens that the independent basis of original

jurisdiction over every claim in the complaint is diversity of citizenship.

The central point of this discussion is that there is an undisputable, independent basis of original federal jurisdiction over every claim raised in the complaint. As such, this court has jurisdiction over the entire case. This is neither an expansion of diversity jurisdiction, nor a particularly novel holding. *See, e.g., Kauth v. Hartford Insurance Co. of Illinois,* 852 F.2d 951, 958-59 (7th Cir. 1988); *Baker v. J.C. Penney Co., Inc.,* 496 F. Supp. 922 (N.D.Ga. 1980); *Pacific Mutual Life Ins. Co. v. American National Bank and Trust Co. of Chicago,* 642 F. Supp. 163 (N.D.Ill. 1986); see also 7 Charles A. Wright, Arthur R. Miller, and Mary K. Kane, *Federal Practice and Procedure* § 1659, at 419 (2d Ed. 1986) ("Subject matter jurisdiction problems do not arise when each of the claims by or against the joined parties rests on an independent jurisdictional ground.") (footnote omitted); *Cf. Hiram Walker & Sons Inc. v. Kirk Line,* 877 F.2d 1508, 1512 (noting "anomaly" that "would be created by not allowing a plaintiff to do in one federal suit what he would be entitled to do in two separate federal suits."), citing *Baker, supra.* The only factor that distinguishes this case from those just cited is that there is no federal question claim in this case. However, as the court noted *supra,* every claim in this case falls squarely within a statutory grant of *original* federal jurisdiction, namely, diversity.

B. Jurisdictional Amount In Controversy

The jurisdictional statute at issue also requires that "the matter in controversy exceed[] the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a). The parties did not address the second issue in their briefs, except for defendants Petrinovich and Cobb, who noted in a footnote that "The amount in controversy requirement does not appear to be an issue here." Supplemental Brief (Doc. 31) at 4, n. 3. Of course, in any question concerning this court's diversity jurisdiction, the amount in controversy is always an issue, whether or not the plaintiffs choose to argue the point.

Because the complaint does not seek a specified amount of damages, the burden rests on the proponent of federal jurisdiction to prove by a preponderance of the evidence that the amount in controversy requirement is satisfied. *Tapscott v. MS Dealer Service Corp.,* 77 F.3d 1353, 1357 (11th Cir. 1996).

The court has conducted its own independent evaluation of this case and finds
**West Page 1318**
that the requisite amount in controversy is present. Plaintiffs Haygood and Needham, in counts II through VII of the complaint, state common-law tort claims against various defendants. The affidavit of David A. White leads the court further to conclude that the contract claims of Haygood and Needham stated in Count I will likely exceed $75,000.

As to plaintiff Warren Williams, the court has no direct evidence of the amount of his claim. However, for two reasons, the court finds that his claim independently places more than

$75,000 in controversy. First, the court has no evidence that his claim is for any less than Haygood's and Needham's claims. Second, this court "assume[s] that plaintiff's counsel best knows the value of his client's case and that counsel is engaging in no deception." *Burns v. Windsor Ins. Co.,* 31 F.3d 1092, 1095 (11th Cir. 1994). Plaintiff's counsel is further presumed to understand the legal rules governing the determination of the amount in controversy in complex cases such as this. See *Zahn v. International Paper Co.,* 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973); *Snyder v. Harris,* 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969). So, the court concludes that the admission by plaintiff's counsel that the amount in controversy in this case exceeds $75,000 (See Doc. 34) is entitled to substantial deference. See generally *Burns, supra*.

For the foregoing reasons, the court finds that the amount in controversy in this case exceeds the sum or value of $75,000.

## III. CONCLUSION

It is true that the plaintiffs have a virtually unqualified right "to select the forum, to elect whether to sue joint tortfeasors and to prosecute [their] own suit[s] in [their] own way to a final determination." *Crowe v. Coleman,* 113 F.3d 1536, 1538 (11th Cir. 1997), citing *Parks v. The New York Times Co.,* 308 F.2d 474, 478 (5th Cir. 1962). However, the plaintiffs, having pled their complaint in the most precise, even Michelangelo-like manner[fn7], are bound with the consequences of that pleading. The pleading discloses a case that is within this court's diversity jurisdiction.

It is therefore **CONSIDERED** and **ORDERED** that plaintiffs' motion for remand (Doc. 8) is due to be and is now **DENIED**.

This case is **REFERRED** to the Magistrate Judge for the entry of an appropriate Rule 16(b) Scheduling Order.

[fn1] The court does have discretion to decline to exercise its *supplemental* jurisdiction in certain circumstances. 28 U.S.C. § 1367(c). However, the court need not resort to its supplemental jurisdiction in this case.

[fn2] 28 U.S.C. § 1446(c)(4), (5) could be misconstrued as requiring the court to make a summary determination of jurisdiction in removed civil cases. However, the text discloses that all of subsection (c) applies only to removed *criminal* cases. Thus, while a prompt determination of jurisdiction surely is required, see *Crowe v. Coleman,* 113 F.3d 1536, 1538 (11th Cir. 1997) ("the trial court must be certain of its jurisdiction before embarking upon a safari in search of a judgment on the merits"), this requirement springs, not from § 1447(c), but from sound judicial practice.

[fn3] The Supreme Court's reversal of *Ruhrgas* left undisturbed, in this court's view, the general proposition for which the Fifth Circuit's *en banc* decision is cited.

[fn4] The holding in *Owen* was later codified at 28 U.S.C. § 1367(b).

[fn5] The court assumes, for purposes of this discussion, that each claim separately would meet the amount-in-controversy requirement of 28 U.S.C. § 1332(a). The amount-in-controversy issue is addressed *infra*.

[fn6] Of course, supplemental jurisdiction would not cure this defect. *Owen, supra;* 28 U.S.C. § 1367(b).

[fn7] *But Cf. Horton v. Alliance Mortgage Company,* 1998 WL 1006321, *1 (N.D.Ala.) (Acker, J.) (*David*-like complaints successfully ousted federal diversity jurisdiction).
**West Page 1327**

Copyright © 2005 Loislaw.com, Inc. All Rights Reserved