IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| WARREN WILLIAMS, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. CV-99-0118-BH-C |
| ) | |
| CONSECO, INC., et al., ) | |
| ) | |
| Defendants. ) | |

SUPPLEMENTAL BRIEF
[Defendants Ron Petrinovich and Curtis Cobb, Jr.]

Defendants Ron Petrinovich and Curtis Cobb, Jr., through under counsel, respectfully submit this brief to address "the issue of whether complete diversity exists on the face of the pleadings, and the impact of Tapscott v. MS Dealer Service Corp., 77 F.3d 1353, 1359-60 (11th Cir.1996) on this issue" [Order, April 5, 1999, pp. 1-2].

The Allegations of the Complaint

Individual Plaintiffs Williams, Haygood, and Needham are alleged to reside in California, Georgia, and Alabama, respectively [Complaint, ¶¶ 1-3]. Of the Conseco Defendants,[1] Conseco, Inc., and Conseco Life Insurance Company, formerly known

---

[1] For convenience, the "Conseco Defendants" are Conseco, Inc., Conseco Life Insurance Company, Massachusetts General Life Insurance Company, Life Partners Group, Inc., and individual Bud Ogletree. Though alleged to be a "wholly



as Massachusetts General Life Insurance Company, are Indiana corporations having their principal places of business in Indiana [Removal Notice ¶¶ 10-12], individual Ogletree is a Texas resident [*id.*, ¶ 18], and Life Partners Group, Inc., no longer exists as an entity [*id.*, p. 1, n. 2]. Unserved Defendant National Marketing Alliance, Inc., was a Texas corporation having its principal place of business in Texas [Removal Notice ¶ 13]. Served Defendants Petrinovich and Cobb and unserved Defendant Gin reside in California, while unserved Defendant Bloomingkemper resides in Colorado [Complaint ¶¶ 9-12].

The Complaint combines a single class action claim - Count I, alleging breach of contract - with six more individual claims. Count I, the class claim, is brought by Williams, Haygood, and Needham for alleged breach of "multi-level marketing agency contracts" they contend they had with the corporate Conseco Defendants [Complaint ¶¶ 31-32]. Williams, Haygood, and Needham plainly assert this claim only against the corporate Conseco Defendants [Complaint, ¶¶ 33, 34, and prayer for relief in Count I; *see also* ¶¶ 16 and 16(c)]. This claim is *not* asserted against, and no relief is sought from, Defendants Petrinovich and Cobb (and, for that matter, unserved Defendant Gin),

---

owned subsidiary" of one or more Conseco Defendants [*e.g.*, Complaint ¶¶ 5, 7], named Defendant National Marketing Alliance was not such a subsidiary [Petrinovich Affidavit, ¶ 2 (filied February 10, 1999)].

2

who, like Plaintiff Williams, reside in California.

Counts II through VII are brought as individual, rather than class, claims. In each instance, however, California resident Williams is not identified as a plaintiff seeking relief and, in fact, asserts no claim for relief; instead, these claims are specifically being asserted by Plaintiffs Haygood and Needham. *See, e.g.,* preambles to, and prayers for relief in, Counts II, III, IV, V, VI, and VII. Relief is sought by Haygood and Needham against Petrinovich and Cobb, among others, in Counts II, III, V, and VII, alleging fraud by misrepresentation, fraud by suppression, intentional interference, and conspiracy, respectively. No relief is sought against Petrinovich and Cobb in Counts IV, alleging breach of contract, and VI, alleging "bad faith." Accordingly, the Complaint presents a class claim, in which *complete diversity* exists, with six individual claims, in which *complete diversity* exists. In other words, Plaintiffs have joined into one Complaint two "cases" - a class action and a series of individual claims - which would be removable if considered separately.

Based on the Complaint itself, the Court's observation that "there appears to be no live controversy between nondiverse parties" [Order (April 5, 1999), p. 1] is certainly correct. The nondiverse parties, of course, are Plaintiff Williams on the one hand and Defendants Petrinovich and Cobb on the other, all of whom reside in

3

California.² *Williams, however, does not assert any claim against, and seeks no relief whatsoever against, Petrinovich and Cobb.* In other words, as the Court has described the matter, "no live controversy" between Williams, Petrinovich, and Cobb is shown on the face of the Complaint.

## Argument

A United States District Court has original jurisdiction - and, thus, removal jurisdiction, 28 U.S.C. § 1441(a) - of a civil action where "the matter in controversy" exceeds the value of $75,000, exclusive of interest and costs,³ and is between citizens of different States. 28 U.S.C. § 1332(a)(1). As the Eleventh Circuit pointed out in *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353 (11th Cir.1996), this has been construed to mean that "[d]iversity jurisdiction . . . requires complete diversity — every plaintiff must be diverse from every defendant." 77 F.3d at 1359, *citing Palmer v. Hospital Authority of Randolph County*, 22 F.3d 1559, 1564 (11th Cir.1994), and *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267 (1806). Obviously, this is not literally true since it is well-settled that diversity cases can proceed with the presence of non-

---

² Unserved Defendant Gin also resides in California. The discussion in the context of Petrinovich and Cobb applies with equal force to him to the extent he even needs to be considered.

³ The amount in controversy requirement does not appear to be an issue here.

diverse nominal parties or stakeholders or by disregarding the non-diverse citizenship of fraudulently joined parties.

The underlying *Tapscott* litigation involved two purported classes - one alleging violations of the Alabama Mini-Code arising from the sale of service contracts in connection with the sale of automobiles, and the second alleging the same form of Mini-Code violations in the context of the sale of service contracts in connection with the sale of retail products. 77 F.3d at 1355. The original complaint, which focused on automobiles, was filed by an Alabama resident against several defendants, including an Alabama resident. 77 F.3d at 1355. Through amendment, however, two of several named and added plaintiffs asserted the retail product-based claims, on a class basis, against a single added corporate defendant (Lowe's), and diversity existed when comparing the Alabama citizenship of those plaintiffs with the North Carolina citizenship of the aligned defendant. 77 F.3d at 1355, 1359-1360. In other words, the plaintiffs' pleadings in *Tapscott* combined one set of plaintiffs asserting legal claims arising out of automobile transactions against one set of defendants with a second set of plaintiffs asserting the same (or very similar) legal claims arising out of other retail sales against a second set of defendants. There, as here, in the pleadings, "particular plaintiffs [were] matched with particular defendants against whom they allege individual claims." 77 F.3d at 1359.

It is apparent from *Tapscott* that "complete" diversity did not exist since an "automobile sale" defendant was not diverse from a "retail sale" plaintiff. The Eleventh Circuit, however, sustained the lower court's determination that there had been a "misjoinder" of defendants contrary to Fed.R.Civ.P. 20 and that, under the circumstances, the misjoinder was tantamount to a fraudulent joinder. 77 F.3d at 1360. The "misjoinder" decision was based on the absence of allegations of joint, several, or alternative liability crossing between the two types of claim sets (automobile sales and retail sales) and the reasoning that a mere similarity of legal theory (violation of the Mini-Code in that case) was not sufficient "commonality" for joinder. 77 F.3d at 1360. That misjoinder was "fraudulent," in turn, because the non-diverse defendants in the automobile sale case had "no real connection" the controversy between diverse parties in the retail sale part of the litigation.

The circumstances addressed in *Tapscott* are not exactly those presented here. In *Tapscott*, the pleadings showed two "separate" sets of claims - one set involving alleged Mini-Code violations in the automobile sale context, the other involving apparently the same claims in the retail sale context - and two "separate" sets of plaintiff and defendants, aligned according to the claims. The Complaint in this case suggests a series of transactions involving a multi-level insurance marketing plan. As such, this case may not present a strict issue of Rule 20 joinder to the extent Plaintiff

Williams properly joins as a plaintiff to assert the class claim against the Conseco Defendants, and Petrinovich and Cobb are properly joined as defendants to the individual claims asserted by Haygood and Needham. But, like *Tapscott*, the Plaintiffs here have aligned themselves with specific Defendants for purposes of asserting claims. 77 F.3d at 1359. And, as was the case in *Tapscott* (though in a different context), the non-diverse Plaintiff (Williams) is not actually asserting any claim against non-diverse Defendants Petrinovich and Cobb, whether in terms of a putative class, individually, or through allegations of joint, several, or alternative liability.

The *Tapscott* reasoning is certainly applicable, by analogy at least, to the issues presented here. The application or non-application of Rule 20 is, respectfully, a distinction without a difference where *all* claims asserted here actually involve completely diverse parties. Stated differently, the "matter in controversy" required for diversity jurisdiction, 28 U.S.C. § 1332(a), really *is* between citizens of different States: Williams and the others sue diverse Defendants on the class claim, and Haygood and Needham sue diverse Defendants on the individual claims. By strong implication, *Tapscott* recognizes an important qualification to the "complete" diversity "rule": the existence of true diversity must be determined by reference to the existence of an actual asserted "matter in controversy" between those plaintiffs and those defendants alleged to be diverse (or non-diverse, as may be the case). This is hardly surprising, for Federal

jurisdiction in general presupposes the existence of a "case" or "controversy." U. S. Const. Art. III, § 2. Diversity jurisdiction itself requires a "matter in controversy." 28 U.S.C. § 1332(a). Indeed, "[t]o sustain diversity jurisdiction, there must exist an 'actual' . . . 'substantial' . . . controversy between citizens of different states, all of whom on one side of the controversy are citizens of different states from all parties on the other side." *City of Indianapolis v. Chase National Bank*, 314 U.S. 63, 69 (1941) [citations omitted]. Just as diversity cannot be created by misaligning diverse parties having no actual, substantial controversy, actual diversity cannot be defeated by joining non-diverse parties without alleging an actual "matter in controversy" between them.[4] A fundamental basis for the *Tapscott* result was the *absence* of such a controversy between non-diverse parties in that case: the Alabama plaintiffs were asserting a retail sale Mini-Code claim against a diverse defendant, while the Alabama defendant was being accused of Mini-Code violations on automobile sales, all without allegations of joint, several, or alternative liability or conspiracy. 77 F.3d at 1359-1360.[5] Effectively,

---

[4] Accepted "exceptions" to the "complete diversity" rule - nominal parties or stakeholders and fraudulent joinder - are obviously premised on this. In the former instance, there is no "matter in controversy" as to the nominal party or stakeholder (hence the party's status as nominal). In the latter instance, there is also no "matter in controversy" if a plaintiff is unable to state any viable claim for relief against the fraudulently joined defendant.

[5] *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267 (1806), the case cited as

the same situation exists here. As the Court has correctly perceived, Plaintiff Williams alleges no claim at all - no "matter in controversy" - on his part against non-diverse Petrinovich and Cobb, whether class, individual, or by allegation of joint, several, or conspiracy liability. Williams is merely participating with Plaintiffs Haygood and Needham in one claim brought as a class action against various *diverse* Defendants, but expressly not against non-diverse Petrinovich and Cobb. Haygood and Needham assert various *individual* (non-class) claims against various Defendants, including Petrinovich and Cobb in some instances, but there is *complete diversity* as to those claims. As noted, *all* asserted claims involve *completely diverse* parties.

To the extent "fraudulent joinder" is a talisman, the effort to defeat removal by comparing the citizenship of Williams, Petrinovich, and Cobb when no "matter in controversy" is alleged to exist between them is tantamount to, or equates with, "fraudulent joinder." It is obvious that if Williams himself sued and merely named Petrinovich and Cobb as Defendants but asserted no claim at all against them, Petrinovich and Cobb would be considered as having been "fraudulently joined."

---

the foundation of the "complete diversity" notion, *e.g., Tapscott*, 77 F.3d at 1359, seems to recognize this possibility. There, the Court expressly declined to address "the case where several parties represent several distinct interests, and some of the parties are, and some are not, competent to sue, or liable to be sued, in the courts of the United States." 7 U.S. at 267-268.

9

*Tapscott* itself indicates that a "misjoinder" is, or can be, a "fraudulent joinder" under "egregious" circumstances, presumably like the non-diverse defendant's lack of any "real connection" with a controversy. 77 F.3d at 1360. It is respectfully suggested, however, that "fraudulent joinder" is simply a label in this context.[6] As previously noted, the rationale for such holdings has to be the absence of any actual "matter in controversy" between the parties claimed to be adverse. The Court must decide the existence of diversity jurisdiction by comparing the citizenship of those parties between whom the "matter in controversy" is alleged to exist. In this case, that comparison - on the face of the Complaint - shows there is no "matter in controversy" between the non-diverse parties, whether labeled as "fraudulent joinder" or something else. The motion to remand should thus be denied.

This the 17th day of April, 1999.

_____
J. Fairley McDonald, III (MCDOJ0384)

MAYNARD, COOPER & GALE, P.C.
201 Monroe Street, Suite 1940

---

[6] Petrinovich and Cobb continue to agree with the Conseco Defendants that "fraudulent joinder" otherwise exists because they are not subject to the jurisdiction of the Alabama courts (including, respectfully, this Court). In that respect, Petrinovich and Cobb still maintain that the Magistrate Judge's recommended approach was in error, given the circumstances of this case.