**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **MORRIS FOREST PRODUCTS, LLC,** | ) | |
| **et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **CASE NO. 05-CV-00564** |
| **v.** | ) | |
| | ) | |
| **KEYSTONE EXTERIOR DESIGN,** | ) | |
| **LLC, et al.** | ) | |
| | ) | |
| **Defendants.** | ) | |

**PLAINTIFFS' REPLY TO DEFENDANTS' SUPPLEMENTAL BRIEF IN**
**RESPONSE TO THE COURT'S ORDER OF NOVEMBER 16, 2005**

COME NOW Plaintiffs Morris Forest Products, LLC (hereafter "MFP") and Stan Pittman, by and through counsel, and reply to Defendants' Supplemental Brief in Response to the Court's Order of November 16, 2005. As grounds thereof, Plaintiffs would show to the Court as follows:

**INTRODUCTION**

Pursuant to this Court's Order, Plaintiffs address the jurisdictional issues facing this Court under a fraudulent joinder analysis, if it is deemed that the claims of Stan Pittman and MFP are separate and mutually exclusive. During this analysis Plaintiffs explore the complete diversity rule as it relates to fraudulent joinder, as well as the interaction between Federal Rule of Civil Procedure 20 and fraudulent joinder. Also, pursuant to this Court's Order, Plaintiffs discuss the claims of MFP specifically against Dana Rector.

In addition to the above, since Defendants have misrepresented several facts regarding claims of Stan Pittman, Plaintiffs are again obligated to discuss these claims. Further, Plaintiffs

set forth an additional argument which has direct jurisdictional consequences for this Court regarding the claims of Stan Pittman.

In conclusion, it will become clear that Stan Pittman does have direct claims against Dana Rector, pursuant to Restatement 2d § 374(2);  MFP certainly has a possibility of showing valid causes of action against Dana Rector under Alabama law;  pursuant to the complete diversity rule, even if the Court somehow finds that Stan Pittman does not have claims against Dana Rector, so long as Mr. Pittman and Mr. Rector are proper parties and not fraudulently joined, this action must be remanded to state court;  pursuant to the fraudulent joinder analysis used by the Eleventh Circuit and this Court, since Mr. Pittman has an "actual and substantial controversy" with Mr. Rector, this case should be remanded to state court;  the *Williams* case cited by Defendants does not apply to this set of facts and should be disregarded;  *Williams,* even if applied to these facts does not trump the complete diversity rule; Plaintiffs have not joined Defendants pursuant to Federal Rule 20 since Mr. Pittman's cause of action cannot exist without MFP's cause of action;  if Plaintiffs' claims are separate then they have been joined under Rule 20;  if this Court concludes that the claims of the Plaintiffs are joined under Rule 20, then the claims have not been misjoined since they arise out of the same transaction and involve an "interlocked series of events";  even if this Court were to reach the decision that Plaintiffs' claims were misjoined under Rule 20, pursuant to *Tapscott,* the claims are not fraudulently joined and this case should be remanded to state court.[1]

## I.    CLAIMS OF STAN PITTMAN

As a result of Defendants' misstatements, that Plaintiffs have somehow conceded that Stan Pittman has no possibility of a cause of action under Alabama state law against Dana

---

[1] As long as any one of Plaintiffs' arguments above finds favor with the Court, then this action must be remanded to state court.

01266636.1

Rector, Plaintiffs are again forced to dispute this allegation and describe Mr. Pittman's claims.

Plaintiffs have continuously alleged that Defendants Keystone, Universal and all the individual

Defendants, were working in concert during the commission of their tortious acts. Although

Plaintiffs' prior brief [2] dealt mostly with Mr. Pittman's claims against Keystone and Jerry

Turner, Plaintiffs' Complaint clearly sets forth Mr. Pittman's claims against Universal and the

individual Universal Defendants and asserts in addition that Universal and Keystone were

working in concert together. Further, Plaintiffs have not had the benefit of any discovery and

firmly believes that discovery will establish common knowledge shared and decisions made

jointly between Universal and Keystone. Although not required for the fraudulent joinder issue,[3]

Plaintiffs do have evidence of at least three instances of cooperation in dealings between

Keystone and Universal with regard to MFP. First, Defendants have continuously argued that

MFP was in settlement negotiations with Keystone as early as February 3, 2005, as allegedly

evidenced by correspondence discussing a buyout written by Rod Morris. *See* Deposition of

Stan Pittman, page 37, lines 17-21, attached hereto as Exhibit A. In actuality, this

correspondence was not communicated to Universal until the joint February 7, 2005 meeting of

the parties, even though it was drafted on February 3rd. *See* Affidavit of Rod Morris, attached

hereto as Exhibit B. (February 3, 2005 correspondence is attached hereto as Exhibit 1 to Mr.

Morris's Affidavit).[4] Further, this correspondence was intentionally not shared with Keystone or

its representative Jerry Turner at the February 7, 2005 meeting. *Id.* The correspondence was not

---

[2] Plaintiffs' Supplemental Reply to Defendants' Supplemental Brief in Opposition to Plaintiffs' Motion to Remand.

[3] Once again, regarding fraudulent joinder, Plaintiffs are not required to prove their claims, only the possibility of a claim.

[4] By submitting this Affidavit, Plaintiffs in no way invite additional jurisdictional related discovery or the deposition of Rod Morris. This Affidavit is solely submitted to refute the erroneous and misstatements contained in Defendants' briefings and in their own affidavits submitted to this Court. Plaintiffs did not wish to submit this Affidavit, but under an abundance of caution felt it was necessary to refute Defendants' erroneous statements and allegations. Plaintiffs feel they have been backed into a corner by Defendants' misstatements and forced to submit all evidence known to Plaintiffs, despite not having the benefit of discovery.

3

presented to Keystone until approximately February 21, 2005. *Id.* Based on statements and arguments made by Defendants, it is clear that Universal shared this correspondence with Keystone.

Second, Plaintiffs' Brief cites to an Affidavit of Don Ludwig, a representative of Keystone. Mr. Ludwig's Affidavit stated that Keystone believed the contract between MFP and itself had been terminated prior to the February 7, 2005 meeting. Though not supported by affidavit evidence, and therefore should be ignored or viewed in Plaintiffs' favor, Defendants then claim Keystone relayed their thoughts on the contract's termination to Universal and Dana Rector. (*See* Defendants' Brief, page 10.) This alleged communication is also further evidence of the working relationship between Universal and Keystone as it related to MFP. It is interesting that Defendants remember this alleged remark but would otherwise have this Court believe that Dana Rector knew absolutely nothing else about MFP prior to the February 7th meeting.

In actuality, Jerry Turner of Keystone, Matt Missad of Universal and Rod Morris, President of MFP, all had a telephone conversation discussing the status of the contract. *See* Affidavit of Rod Morris. During this conversation it became clear that regardless of any alleged expiration date contained in the contract, both Keystone and Universal had continued fulfilling their duties and obligations under the contract past its alleged expiration date. *Id.* This included Keystone continuing to place orders and making payments pursuant to the contract. Based upon this activity, Mr. Missad acknowledged that Keystone had obligated itself to a continued relationship under the contract, and in fact, renewed the contract. *Id.* This is further evidence of the communication and working relationship between Universal and Keystone.

Third, there is a note taken by Stan Pittman regarding a conversation with Jerry Turner

that shows Keystone was planning on meeting with Universal, and specifically Mr. Rector and Mr. Missad, prior to the February 7, 2005 meeting. *See* Note of Stan Pittman attached hereto as Exhibit C. This is further evidence of the relationship and communication between Universal and Keystone.

Based on these three known occurrences of information sharing, it is clear that Universal and Keystone were sharing information about MFP, including possible information regarding the employment status of Mr. Pittman. While Mr. Pittman does believe the personal animosity against him was created when he turned down employment opportunities from Keystone, the Court must not forget that Jerry Turner and Keystone knew well in advance of the February 7, 2005 meeting, and before any job offers were made to Mr. Pittman, that Mr. Pittman was an independent contractor who was compensated solely through commission by Morris Forest Products. *See* Affidavit of Stan Pittman, previously filed with this Court, attached hereto as Exhibit D. Further, Mr. Turner knew Mr. Pittman expected to receive large commissions from the Keystone deal and therefore certainly knew that a termination of the agreement between Keystone/Universal and MFP would personally harm Mr. Pittman. *Id.* Based upon the sharing of information, it is possible, if not probable, that Universal and Mr. Rector, also knew of Mr. Pittman's employment status and expectations from the project before the February 7, 2005 meeting. [5] At this point in litigation Plaintiffs' hands are tied, since they have not had the benefit of discovery. As this Court is well aware, Plaintiffs need not show that they will ultimately succeed on any claims asserted, but only that state law shows a possibility that recovery is available (citations omitted).

---

[5] As stated throughout the various briefs filed before this Court, Plaintiffs do not have to have evidence of intent at this juncture in the litigation, but only show the possibility of recovery (citations omitted). Therefore, Plaintiffs do not have to present evidence of intent to harm Mr. Pittman, just that it was possible. *See also Cooper v. Central Life Assurance Co.,* 614 So. 2d 982, 991 (1992).

01266636.1

There is another point central to whether Mr. Pittman has a possibility of recovery under state law. Plaintiffs have alleged that Mr. Pittman's causes of action arise under the Restatement (2d.) of Agency § 374(2). It is undisputed that the Alabama Supreme Court in *Cooper v. Central Life Assurance Co.* recognized § 374(2) as a viable cause of action under Alabama law. *Joe Cooper and Associates v. Central Life Assurance Co.,* 614 So. 2d 982, 991 (1992). While Plaintiffs will not fully discuss the facts and holding of the *Cooper* case as it has been done previously, it is important to note that it is the leading case in Alabama on § 374(2) and no further cases have followed. The major holding from *Cooper* is the following: "[a]n agent can maintain a fraud action against a third party to recover for injuries suffered while transacting business for his principle if the third party intended that the agent act on the fraudulent representations **in a manner affecting the agent**." *Cooper.* 614 So. 2d at 991 (emphasis added). The Court then stated: "[t]he question of whether the third party intended for his conduct to harm the agent personally is a question for the jury to resolve". *Id.* The only other case after *Cooper* which discussed § 374(2) was the opinion issued by this Court in *Moorer v. Hartz Seed Co.,* 120 F. Supp. 2d 1283 (M.D. Ala. 2000). This Court, and Your Honor, concluded that the Alabama Supreme Court, which had previously adopted § 374(2) in *Cooper*, would also adopt Comment B to § 374(2). *Moorer,* 120 F. Supp 2d at 1289. By doing such, this Court affirmed *Cooper* but also limited its holding. By adopting Comment B the court concluded that, "(w)ithout doing such, virtually any employee affected by the adverse action taken against its employer would have a cause of action to sue the adverse actor." *Id.* [6] Importantly, this Court's holding in *Moorer* was on a summary judgment motion not fraudulent joinder.

---

[6] Without rehashing all of the old arguments, it is still the belief of the Plaintiffs that despite *Moorer*, Mr. Pittman has still stated valid causes of action against all Defendants. For further explanation, see all of Plaintiffs' previous briefings.

This distinction between *Cooper* and *Moorer* is legally important because of the longstanding rule that federal courts, while determining issues of fraudulent joinder, may not make an *Erie* guess as to how the state court would potentially rule. *Crowe v. Crown*, 113 F. 3d 1536, 1541 (11th Cir. 1997).  When deciding if plaintiffs had a claim under Georgia law for nuisance, the court in *Crowe* stated:

> If this case were properly before the district court (and this court) under original diversity jurisdiction, we would be obligated to predict how the Georgia Supreme court would rule on this issue or to certify the question to the Georgia Supreme Court.  For purposes of determining whether this case should be remanded to state court, however, the inquiry by federal judges must not go too far:
>
>> This is an Erie problem in part, but only part.  In the usual diversity situation a Federal Court, no matter how difficult the task, must ascertain (and then apply) what the state law is….But here the question is whether there is arguably a reasonable basis for predicting that the state law <u>might</u> impose liability on the facts involved.  If that possibility exists, a good faith assertion of such an expectancy in a state court is not a sham, is not colorable and is not fraudulent in fact or in law.

*Crowe*, 113 F. 3d at 1541 (citing *Bobby Jones Garden Apartments v. Suleski*, 391 F. 2d 172, 176-77 (5th cir. 1968)).

Therefore, since for the purposes of fraudulent joinder this Court has to decide if there is a possibility of the Plaintiffs maintaining a cause of action under Alabama state law, *Moorer* is inapplicable because it is not a holding by the Alabama Supreme Court.  This Court must only review the possibility of Plaintiffs' claims in light of the *Cooper* holding and not the holding in *Moorer*.  As stated by *Crowe*, this Court cannot guess when its comes to the Alabama Supreme Court's stance on § 374(2).  This Court, under the fraudulent joinder standard, must apply Alabama law and Alabama law (*Cooper*) recognizes Mr. Pittman's causes of action against **all** Defendants.  Pursuant to *Cooper,* all Plaintiffs must show is that there is a possibility that, "the

third party intended that the agent act on representations in a manner affecting the agent".

*Cooper*, 614 So. 2d at 991. Further, *Cooper* made it clear that the question of whether the third

party intended to personally harm the agent is a question for the jury to resolve. *Id.* Mr. Pittman

has certainly shown that all Defendants, including Mr. Rector, made fraudulent representations.

*See* Affidavit of Stan Pittman, previously filed with this Court, attached hereto as Exhibit D, and

Deposition of Stan Pittman, previously filed with the Court, not attached, pages 41-42, 89-92,

94-98, 210. Further, pursuant to *Cooper*, the question of intent to harm Mr. Pittman is a

question that only the jury can determine.

In the adhering to the holding in *Crowe*, this Court has shown an abundance of caution

not to shut the door on a plaintiff's causes of action when there is a possibility that Alabama law

would allow such action,:

> In the context of fraudulent joinder analysis, this court is not called upon
> to predict how the Alabama Supreme Court would rule on this issue, but is
> instead only to determine whether there is arguably a reasonable basis for
> predicting that state law might impose liability on the facts involved.
> *Crowe,* 113 F. 3d at 1540. On the facts presented in this case, the court
> must conclude that, since the Alabama Supreme Court did not completely
> foreclose the possibility that circumstances may exist whereby a duty to
> disclose an aspect of rate making may exist, and since the Plaintiffs have
> alleged that the purported disparity between rates for white and black
> policy holders was not disclosed in any policy documents, there is at least
> a possibility that state law might impose liability on the facts involved.

*Wright v. American General*, 136 F. Supp. 2d 1207, 1214 (M.D. Ala. 2001).

Certainly, in *Cooper*, the Alabama Supreme Court did not extend the intent requirement as this

Court did in *Moorer*. In fact, the Alabama Supreme Court had settled that question of whether

the action was intended to harm the agent personally as a matter for the jury to determine.

*Cooper*, 614 So. 2d at 991. As in *Wright*, Mr. Pittman has alleged a cause of action and has

given evidence of that cause of action based on fraudulent statements of all Defendants,

including Mr. Rector. As a result, pursuant to *Cooper*, Mr. Pittman has a possibility of claims under § 374(2) against all Defendants.[7]

## II.     CLAIMS OF MORRIS FOREST PRODUCTS AGAINST DANA RECTOR

Pursuant to this Court's request, we will address MFP's claims against Dana Rector. MFP has asserted fraud, suppression, intentional interference with a contractual or business relationship against Universal and its individual Defendants, including Mr. Rector. MFP has also asserted claims against Keystone and its individual Defendants, based on fraud and suppression. MFP also has a claim for breach of contract against Keystone.

### A.     Fraud

MFP certainly has a possibility of recovering for fraud against Dana Rector under Alabama law. Mr. Rector made representations at the February 7, 2005 meeting at MFP which were purposefully intended to mislead MFP into believing that the relationship with Keystone/Universal would continue and maintain the status quo. As a result of these misrepresentations made by Mr. Rector, and all other Defendants, MFP allowed the Defendants to tour their manufacturing facility and also continued forward with the Keystone/Universal project. The representations made by Dana Rector have been previously discussed. In Plaintiffs' Complaint it is alleged that Dana Rector made fraudulent misrepresentations regarding the Keystone/Universal project, Mr. Pittman's Affidavit further evidences misrepresentations made by Dana Rector and testimony given during Mr. Pittman's deposition unequivocally states that Mr. Rector made representations that the current business relationship between MFP and the

---

[7] As evidenced by this Court's holding in *Moorer,* it was this Court's opinion that the inclusion of Comment B to § 374(2), which required Plaintiffs to show intent to personally harm the agent, that, "virtually any employee affected by the adverse action taken against his employer would have cause of action to sue the adverse actor." *Moorer,* 120 F. Supp 2d at 1289. This at least gives some evidence of this Court's opinion of the relaxed standard promigated by the Alabama Supreme Court in *Cooper.*

Defendants would continue.[8] Further, Dana Rector, the Director of Manufacturing for Universal, specifically told Rod Morris, President of MFP, that it made sense to keep the manufacturing of the Keystone project with Morris Forest Products at its manufacturing facility. *See* Affidavit of Rod Morris, attached hereto as Exhibit B. This statement of Dana Rector was specifically made as an assurance to Rod Morris for allowing Mr. Rector to inspect MFP's onsite manufacturing facility. *Id.* [9]

Based on the Affidavit previously filed by Mr. Rector, Defendants would have this Court believe that Mr. Rector in no way had anything to do with the Keystone/Universal and MFP project. However, in reality, his involvement is central to this litigation. As previously stated, Mr. Rector is the Director of Manufacturing for Universal. During a conversation with Stan Pittman on approximately February 1, 2005, Jerry Turner alluded to a meeting planned with Dana Rector prior to the February 7, 2005 meeting to discuss issues dealing with MFP. *See* note

---

[8] See Plaintiffs' previous brief, Plaintiffs' Supplemental Reply to Defendants' Supplemental Brief in Opposition to Motion to Remand., filed on November 7, 2005.

[9] Defense counsel would argue that this statement by Dana Rector was nothing more than opinion and therefore cannot be deemed fraudulent. Defendants have previously made this argument as to representations made by Dana Rector to Stan Pittman. (*See* Defendants' Brief, page 13.) What Defense counsel has chosen to ignore is that under Alabama law, opinions intended to deceive are indeed fraudulent and therefore recoverable a theory of fraud. *Cooper and Co. v. Lester*, 832 So. 2d 628 (Ala. 2002).

It is interesting to note that the only Alabama Supreme Court case cited by Defendants for the proposition that one cannot commit fraud by expressing opinions, actually states the following: "**Ordinarily**, the expression of opinion is not treated as a statement of a 'existing fact' under the fraud statute (citations omitted). Without proof that Bryant (defendant) had an intent to deceive at the time representation was made, his statement of opinion will not serve as a basis for a fraud action. (citations omitted) Crowne & Monroeville (plaintiffs) do not offer such proof." *Crowne Investors v. Bryant & Crowne,* 638 So. 2d 873, 877 (Ala. 1994). The court in *Bryant* later stated, "Again, the plaintiffs offer no evidence that Bryant intended to deceive Crowne and Monroeville. As to the Inter-American's future performance, Bryant was merely stating his belief that Inter-American, a third party, would issue Kennedy insurance. It is clear that, as far as Bryant knew about Kennedy's health at the time the questions were answered, Inter-American would have done so in response to Kennedy's answers. *Bryant*, 637 So. 2d at 878.

As stated numerous times throughout Plaintiffs' briefs, Plaintiffs do not have to prove intent at this juncture in litigation since the court is conducting a fraudulent joinder analysis (citations omitted). That being said, Plaintiffs have submitted compelling evidence through affidavits and the deposition of Mr. Pittman, that Defendants had the intent to come to the February 7, 2005 to convince the Plaintiffs to allow inspection of their manufacturing facility in order that Defendants may build a similar facility an move the manufacturing away from Morris Forest Products. As demonstrated by the court in *Bryant*, opinions are fraudulent and actionable where the opinion is not given in good faith and intended to deceive. *Id.* Clearly there is a possible cause of action under Alabama law on the basis of opinions given with intent to deceive.

10

attached hereto as Exhibit D, *see also* deposition testimony of Stan Pittman, pages 72-74 (not attached but a previous exhibit). As Defense counsel has pointed out, Plaintiffs do not know if this meeting actually occurred, but since all reasonable questions of fact must be viewed in Plaintiffs' favor, it is certainly possible that this meeting did happen. Mr. Rector also attended the February 7, 2005 meeting where he made assurances to MFP in order to inspect their manufacturing facility. This is where Mr. Rector's position as Director of Manufacturing is so important. If the February 7th meeting was not important to Universal, and nothing more than some type of informal business meeting as implied by Defendants, why then does Universal send its head of manufacturing? Universal and Keystone made the representations and assurances so they could inspect the MFP plant. Based on these assurances, they were given a tour of the MFP facility. During this tour, Dana Rector made pages of notes and diagrams. *See* Affidavit of Rod Morris, attached hereto as Exhibit B. Mr. Rector left MFP's facility with these notes and diagrams. *Id.* It was sometime after this that Universal/Keystone informed MFP that they would no longer be doing business with MFP. *Id.* Clearly, once Mr. Rector was able to make sketches and diagrams of MFP's facility, he then advised Universal/Keystone that he could duplicate it. It is obvious that Defendants' claims that Mr. Rector was nothing more than a casual observer at a meeting and had nothing to do with the relationship between Keystone/Universal and MFP, is false. Plaintiffs' theories on this issue are reasonable and would lead to a possibility of recovery based on fraud against Mr. Rector.

It is to be noted that Defendants have again alleged that Plaintiffs' Complaint, as it relates to fraud, does not meet the standard under Rule 9. Plaintiffs have briefed this issue several times as it relates to Mr. Pittman's claims and the Court has already ruled that Mr. Pittman's claims

were not lacking under Rule 9. Further, the facts relating to the theory above were not required to be put into the Complaint.

> Under Rule 8, Alabama Rules of Civil Procedure, a Complaint is sufficient if it puts a defendant on notice of the claims against him. (Citing *Phillips College of Alabama, Inc. v. Lester*, 622 So. 2d. 308, 311 (Alabama 1993).... However the rule of generalized notice pleading is qualified by Rule 9(b), where the Plaintiff pleads fraud. This special requirement as to fraud does not require every element in such actions to be stated with particularity. It simply commands the pleader to use more than generalized or conclusionary statements to set out the fraud complaint of. The pleading must show time, place, the contents or substance of the false representations, the fact misrepresented, and identification of what has been obtained. But knowledge by the defendant of the falsity of the representation and reliance on the representation by the plaintiff can still be generally alleged.... Rule 9(b) also provides that conditions of the mind, such as malice, intent or knowledge, may be averred generally since further specification in such cases is possible only by pleading the evidence.

*Bethel v. Thorn*, 757 So. 2d. 1154, 1158 (Ala. 1999).

Paragraph 38 of Plaintiffs' Complaint, stated below, clearly complies with Rule 9 as stated in *Bethel*:

> In addition, Defendants Universal, Missad, Honholt, Rector and Jansen in a face-to-face meeting held at MFP on February 7, 2005 made the following material representations to the Plaintiffs: (a) that Universal had nothing to do with the relationship between Keystone and MFP (b) that no deal or agreement had been reached between Keystone and Universal and (c) that Universal was not trying to replace MFP or cut MFP out of the business.

Further, based on the Complaint, Mr. Pittman's Affidavit and deposition testimony, and the Affidavit of Mr. Morris, Mr. Rector cannot possibly argue that he is unaware of what representations he made to MFP. Mr. Rector's misrepresentations were clearly made to Stan Pittman and Rod Morris.

The statement by Mr. Rector to Mr. Morris was false, as Universal/Keystone did ultimately terminate their relationship with MFP and therefore did not keep the manufacturing with MFP. Defendants argue that the statement by Mr. Rector to Stan Pittman that everything would be wonderful if MFP stayed involved, is not actionable because Mr. Pittman said it was true (*see* Defendants' brief, p. 13). Again, this intentional misrepresentation by Dana Rector was false in the fact that he had no intention of complying with the statement and also did not believe that everything would be wonderful, as evidenced by the project ultimately being taken away from MFP. To argue that statements are not false when the speaker did not believe them and had no intention of honoring them is absurd and not consistent with Alabama law. Surely, Defense counsel would also argue that Plaintiffs have no proof that Mr. Rector had the wrongful intent as described above. Once again, at his stage Plaintiffs do not have to prove their case or show evidence of intent, only the mere possibility of a cause of action. (See *Bethel v. Thorn*). However, it is compelling that the statements made by Mr. Rector ultimately were not true as the project was wrongfully taken from MFP.

### B. Intentional Interference with a Contractual Business Relationship

Under Alabama law, Plaintiffs must prove the following in order to recover for interference with a contractual or business relationship.

> 1) the existence of a contract or business relation; 2) the defendant's knowledge of the contract or business relation; 3) intentional interference by the defendant with the contract or business relation; 4) the absence of justification for the defendant's interference; and 5) damage to the plaintiff as a result of the interference.

*Tom's Foods, Inc. v. William C. Carn, III,* 896 So.2d 443, 453 (Ala. 2004) (citing *Parsons v. Aaron,* 849 So.2d 932 (Ala. 2000)).

Defendants argue that MFP cannot recover against Mr. Rector since Mr. Rector did not know or believe there was a **contract** between MFP and Keystone. (*See* Defendants' brief, page

10.)  Defendants allege that Keystone informed Mr. Rector and other employees that the contract with MFP had expired.[10]   As discussed previously, this is interesting as Matt Missad stated during a telephone conversation with Rod Morris and Jerry Turner that it was Mr. Missad's opinion, that in fact, there was a valid existing contract between MFP and Keystone.  *See* Affidavit of Rod Morris.  Certainly it is reasonable to infer that Mr. Missad may have relayed this information to Dana Rector and that Mr. Rector knew of the existing contract.  Again, all facts and reasonable inferences must be drawn in Plaintiffs' favor (citations omitted). [11]

The same factual reasons apply to this claim as to the fraud claim against Mr. Rector.  It is certainly possible that Mr. Rector had motivation and intent as Director of Manufacturing for Universal, to interfere with the Keystone and MFP contract or business relationship.

There is no doubt that MFP has the possibility of stating a cause of action against Mr. Rector under Alabama law based on interference with a contractual and/or business relationship. Further, since all factual and legal questions must be viewed in Plaintiffs' favor, the existence of a valid cause of action against Mr. Rector is apparent.

### C.  Suppression

Defendants argue that because there was no "confidential relationship" between MFP and Mr. Rector, that Mr. Rector had no duty to disclose any knowledge of facts to MFP and therefore he cannot be liable for suppression.  As stated throughout this brief,  it is clear that Mr. Rector

---

[10] Defendants provide no sworn evidence to this allegation and therefore, it should be ignored or at least viewed in light most favorable to Plaintiffs.

[11] Even if this Court somehow buys into Defendants' argument that Mr. Rector did not know there was a contract between MFP and Keystone, under Alabama law there does not actually have to be a contractual relationship in order to recover for interference with a contract **or business relationship**.  All that is required is a business relationship.  *Beachcroft Props. v. City of Alabaster,* 901 So. 2d 703, 707-708 (Ala. 2004) (citing *Waddell & Reed, Inc. v. United Investors Life. Ins. Co.*, 875 So. 2d 1143, 1153 (Ala. 2003)). Certainly, Universal knew of a business relationship between Keystone and MFP since it was involved in telephone conversations regarding the two entities and also attended a meeting at the facilities at MFP on February 7, 2005 to discuss the Keystone and MFP partnership.

01266636.1

certainly had many more dealings with MFP than the Defendants would have this Court believe. Since Plaintiffs have not had the benefit of discovery, this Court should not dismiss any claims as it is entirely possible Mr. Rector was substantively more involved in these wrongful acts, even more so than currently known by Plaintiffs.

## III.    THE COMPLETE DIVERSITY RULE

The complete diversity rule is one of the oldest standing jurisprudence rules handed down by the United States Supreme Court.  In 1806 the Supreme court in *Strawbridge v. Curtiss* held that "To satisfy diversity, not only must a plaintiff be a citizen of a state other than the state of which one defendant is a citizen, but also, under the rule of **complete diversity**, **no** plaintiff may share the same state citizenship with **any** defendant".  *Strawbridge v. Curtiss,* 7 U.S. (3 Cranch) 267, 2 L. Ed. 435 (1806) (emphasis added). There have been literally thousands of courts and judges who have cited *Strawbridge* directly for the complete diversity rule since its birth.  In addition, the United States Supreme Court, as recently as 1998 and 1996, has cited *Strawbridge* and upheld the complete diversity rule.  "A case falls within the Federal Courts' 'original' diversity 'jurisdiction' only if diversity of citizenship among the parties is complete, i.e., only if there is **no** plaintiff and **no** defendant who are citizens of the same state." *Wisconsin Dept. of Corrections v. Schacht*, 524 U.S. 381, 388, 414 L. Ed. 2d 364, 372, 18 S. Ct. 2047, 2052 (1998) (*See Cardn v. Arkoma Associates,* 494 U.S. 185, 187, 108 L. Ed. 2d 157, 110 S. Ct. 1015 (1990); *Strawbridge v. Curtiss,* 7 U.S. 276 (3 Cranch) 267, 2 L. Ed. 435 (1806)  (emphasis added).[12]

---

[12] *Schacht,* also held "Consequently, this court has indicated that a defendant cannot remove a case that contains some claims against 'diverse' defendants as long as there is one claim brought against a 'nondiverse' defendant." *Id.,* See also *Caterpillar, Inc. v. Lewis*, 519, U.S. 61, 68-69, 136 L. Ed. 2d 437, 117 S. Ct. 467 (1996).  The court then held "Where original jurisdiction rest upon congress' statutory grant of 'diversity jurisdiction,' this Court has held that one claim against one nondiverse defendant destroys that original jurisdiction.  See, *e.g., Newman-Green, Inc., supra*, at 829 ('When a plaintiff sues more than one defendant in a diversity action, the plaintiff must meet the requirements of the diversity statute for *each* defendant or face dismissal')."  *Id.  Newman-Green, Inc. v. Alfonzo-Larrain,* 490 U.S. 826, 832-838, 104 L. Ed. 2d 893, 109 S. Ct. 2218 (1989).  Just to be clear, the above quote states

01266636.1

### A. *Williams v. Conseco*

Defendants would have this Court believe that *Williams v. Conseco,* out of the Southern District of Alabama, has overruled a hundred and ninety-nine years of precedence.  There is good reason why this case was not previously cited by the Plaintiffs, it is irrelevant, non-persuasive and does not hold, in any way, the legal conclusion Defendants would have this Court believe.  By Justice Hand's own words, *Williams v. Conseco* is "neither an expansion of diversity jurisdiction, nor a particularly novel holding." *Williams v. Conseco,* 57 F. Supp. 2d 1318 (S.D. Ala. 1999).  Further, Defendants have clearly misstated the holding and analysis undertaken by Judge Hand.  First, *Williams* did not involve a fraudulent joinder analysis. *Williams,* 57 F. Supp. 2d at 1312.  Second, *Williams* is completely factually different from the case at hand. *Id.* *Williams* arose out of a "multi-level marketing scheme" that led to a complex set of allegations filed by various plaintiffs against various defendants. *Id.*  The Complaint filed by the plaintiffs pled seven counts. *Id.*  One of the counts was pled as a class action, [13] which was the only claim the nondiverse plaintiff joined. *Id.*  Further, the nondiverse defendants were not alleged to be involved in any way in the claims surrounding the class action. *Id.*  Unlike the Plaintiffs' Complaint, the Complaint in *Williams* on its face did not plead or even attempt to allege that there were causes of action, or even any interrelated claims, that involve nondiverse plaintiffs and defendants. *Id.*  This point was directly stated by the court, "(t)he reality is that the California plaintiff does not sue the California defendants." *Id.* at 315.  Third, the court's holding is not what Defendants would have this Court believe as it only sustained a longstanding

---

that when multiple defendants are sued, the existence of one diverse defendant, even among several nondiverse defendants, destroys the Federal Courts' diversity jurisdiction.

[13] The remaining seven counts of the Plaintiffs' Complaint involved various allegations of tort and breach of contract, but do not involve any nondiverse parties.

01266636.1

rule that, "claims can be brought together in federal court, if they could be brought separately in federal court." *Id.* at 316.[14]

To fully comprehend the holding of *Williams* it is necessary to review its entire diversity jurisdiction analysis. The court begins by stating that if the general rule of complete diversity was applied to the facts of the case, the case would be quickly remanded since there were California plaintiffs and defendants in the Complaint. *Id.* at 315. The court then stated, "this overly simplistic approach would ignore the legal realities of this case. That reality is that the California plaintiff does not sue the California defendants. The court finds no recorded decision in which a court has considered the presence vel non of complete diversity **in this specific, unusual circumstance**." *Id.* at 315 (emphasis added). Next, the court concluded that since there were no controversies or relationships between the nondiverse parties, that there was therefore no "clash of interests". *Id.* [15] For his authority on this issue, Judge Hand cites two cases: a Third Circuit Court of Appeals case and a case from the Northern District of Illinois. *Id.*

In *Wausau v. Crown Cork & Seal Co.,* the Third Circuit held, "In order to sustain jurisdiction based on diversity of the parties, there must exist an actual, substantial controversy between citizens of different states, **all of whom** on one side of the controversy are citizens of different states **from all parties** on the other side." *Employers Insurance of Wausau v. Crown Cork & Seal Co.,* 905 F.2d 42, 45-46, (3d Cir. 1990) (emphasis added). A closer examination of *Wausau* reveals that, like *Williams*, the analysis of the court had nothing to do with fraudulent joinder. *Wausau*, 905 F.2d. at 43. The defendants in *Wausau* were actually attempting to realign the parties involved in the suit such that the nondiverse parties would be put on the same side of

---

[14] Clearly the claims stated in Plaintiffs' Complaint could not have been brought separately in federal court. This point alone completely distinguishes *Williams*.

[15] This is unlike Plaintiffs' case, as the non-resident Plaintiff, Mr. Pittman, has brought claims against the non-resident Defendant, Mr. Rector, and thus there is a "clash of interest."

the action. *Id.* at 45. [16] If like the court in *Wausau*, this Court wanted to attempt to realign the parties and interests, there is absolutely no way that Stan Pittman and Dana Rector would ever be on the same side of the litigation. Even if Stan Pittman did not bring his claims, he would be a key witness for MFP against Dana Rector and all other Defendants. The court in *Wausau* then went through the different test used throughout the various circuits to determine the conflicts and interests between and among parties so that parties may be properly aligned as either plaintiffs or defendants. *Id.* [17]

Judge Hand next discusses *Controlled Environment Systems v. Sun Process Co.,* 936 F. Supp. 520 (N.D. Ill. 1996). In *Controlled Environment*, the plaintiff filed suit in federal court and defendants sought dismissal arguing that there was no complete diversity of citizenship. [18] *Controlled Systems* 936 F. Supp. at 521. The Complaint filed by the plaintiffs in *Controlled Systems* contained three sets of defendants. *Id.* The first and second set of defendants were corporations of whose citizenship was completely diverse from the plaintiffs. *Id.* The third set of defendants were "unknown owners, unknown beneficiaries and non-recorded claimants". *Id.* (In other words, John or Jane Does) In holding that there was no federal jurisdiction the court stated, "Controlled has instituted this lawsuit against various defendants that by definition cannot be alleged to possess state citizenship that is diverse from Controlled's (because the citizenship of those defendants is by definition unknown). In such joinder of those added defendants is fatal in federal jurisdiction terms…." *Id.* at 522. The ruling in *Controlled Environment* was simple,

---

[16] "The parties' determination of their alignment cannot confer jurisdiction upon the court. Although the pleadings are relevant, it is the court's duty to 'look beyond the pleadings and arrange the parties according to their sides in the dispute.'" *Id.* (Quoting *Dawson v. Columbia Trust Company,* 197 U.S. 178, 180, 49 L. Ed. 713, 25 S. Ct. 420 (1905)).

[17] It should be noted that under any of the tests discussed in *Wausau,* Mr. Rector and Mr. Pittman would never be on the same side of this litigation.

[18] Again, like *Williams* and *Wausau, Controlled Environment* did not involve a fraudulent joinder analysis.

18

01266636.1

by rule the citizenship of John and Jane Doe defendants is unknown, and therefore could possibly be diverse from the plaintiffs. *Id.* As a result complete diversity, by rule, was not present. *Id.* In no way does the ruling in *Controlled Environment* relate factually or legally to the question before this Court.

The court in *Williams* then illustrated rules pertaining to diversity jurisdiction as it relates to third party practice, which is not present in this case. *Williams,* 57 F. Supp. at 1315. Next, the court discussed the case of *Owen Equipment and Erection Company v. Kroger,* 437 U.S. 365, 98 S. Ct. 2396, 57 L. Ed. 2d 274 (1978). The holding in *Owen* was:

> [w]hat destroyed jurisdiction in the Owen case was not the mere presence of a nondiverse defendant, who was on the opposite side of the case in only an abstract sense. Instead, jurisdiction existed until the plaintiff *actually stated claims* against the party which carried the same domicile. At that point there existed an "actual, substantial controversy" between nondiverse parties. This destroyed complete diversity.

*Owen*, 437 U.S. at 373, 98 S. Ct. at 2403, 57 L. Ed. 2d at 282 (emphasis supplied).

The *Owen* case is very instructive in that it holds that once nondiverse parties have actually stated claims between them, that their interests are at substantial controversy and complete diversity is destroyed. [19]

Finally, the court in *Williams* comes to the actual holding of the case and does nothing more than cite an already recognized exception of the rule of complete diversity from the case of *Romero v. International Term. Operating Co.,* 358 U.S. 354, 79 S. Ct. 468, 3 L. Ed. 2d 368 (1959). The court in *Romero* held that an exception from "the rule of *Strawbridge v. Curtiss*", is that is if there is an independent basis of federal jurisdiction over claims between nondiverse parties then the complete diversity rule may be ignored. *Romero,* 358 U.S. at 381, 79 S. Ct. at 485, 3 L. Ed. 2d at 387. Judge Hand then cited to an Eleventh Circuit case which had endorsed

---

[19] The holding in *Owen* is very similar to the holding from *Wausau*.

*Romero* by stating, "This exception is logical because it allows claims that could each be brought separately in federal court to each be tried in the same case." *Palmer v. Hospital Authority Randolph County,* 22 F. 3d 1559, 1565 (11th Cir. 1994). In concluding his analysis on complete diversity, Justice Hand in *Williams* stated, "The central point of this discussion is that there is an undisputable, independent basis of original federal jurisdiction over **every claim raised** in the complaint. As such, this court has jurisdiction over the entire case. This is neither an expansion of diversity jurisdiction, nor a particularly novel holding." *Williams,* 57 F. Supp. 2d at 1317 (emphasis added).

Once *Williams* is viewed in its full light and not only bits and pieces are cited, its holding becomes clear. When on the face of the Complaint, Plaintiffs do not allege any claim, allegations or controversies between citizens of the same state, there is no "actual, substantial controversy." *See Owen,* 437 U.S. at 378, 98 S. Ct. at 2403, 57 L. Ed. 2d at 282. Therefore, since there is no "actual, substantial controversy" between the parties, there can remain an independent basis of original jurisdiction over every claim since there are not any claims raised against nondiverse parties in the Complaint. Like in *Owen,* Mr. Pittman has stated claims against Mr. Rector, therefore there is an "actual, substantial controversy" between them. Further, there is no "independent basis of original jurisdiction over every claim raised in the complaint." *Williams,* F. Supp. at 1217.

Defendants point out that *Williams* has been cited with approval, although not for the issue before this Court, by various other federal courts. What is interesting is that *Williams* has **never** been cited by **any** court for the propositions contained in Defendants' brief. At most *Williams* holds that when a nondiverse plaintiff does not bring a cause of action or have a controversy with a nondiverse defendant, then the complete diversity rule is not violated even

20

01266636.1

though they are in the same suit because the nondiverse parties do not have a "substantial controversy" and because there is an "independent basis of original jurisdiction over every claim raised in the complaint." *Id.* In our case, it is clear that Stan Pittman has brought claims against the nondiverse Defendant Dana Rector. Even if this Court concludes that those claims are not valid, Mr. Pittman's and Mr. Rector's interests still create a "substantial controversy". Mr. Pittman will testify against Mr. Rector and based on affidavits by Mr. Rector, he will attempt to refute allegations and statements made by Mr. Pittman. There is no doubt that the two are at odds in this litigation, even if the Court somehow finds there are no claims between the two.

Based on the above analysis, the *Williams* opinion provides this Court with no guidance and therefore should be ignored.

**B. The fraudulent joinder standard as it relates to the complete diversity rule in the Eleventh Circuit and Middle District of Alabama**

Pursuant to Your Honor's Order we have been instructed to state how the fraudulent joinder analysis in particular correlates to the possibility of mutually exclusive claims of Mr. Pittman and Morris Forest Products. Since *Williams*, nor none of the cases cited within, dealt with the issues of fraudulent joinder, the actual fraudulent joinder standard from the Eleventh Circuit and this Court must be reviewed as it relates to complete diversity. The Eleventh Circuit's analysis on the complete diversity rule as it relates to fraudulent joinder is as follows:

> Diversity jurisdiction requires complete diversity; every plaintiff must be diverse from every defendant. However, an action may nevertheless be removable if the joinder of the nondiverse party…was fraudulent. Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity.

*Triggs v. Crump,* 154 F. 3d 1284, 1287 (11th Cir. 1998); *Tapscott v. MS Dealer Service Corp.,* 77 F. 3d 1353, 1359 (11th Cir. 1996).

As stated above, when reviewing the existence of diversity jurisdiction, courts must be bound by the complete diversity rule, i.e. every plaintiff must be diverse from every defendant. (Citations omitted).  While complete diversity is a general rule, there are some exceptions.  As stated in *Triggs* and *Tapscott*, one of those exceptions is fraudulent joinder.  *Triggs,* 154 F. 3d at 1287;  *Tapscott,* 77 F. 3d at 1359.  The citizenship of a fraudulently joined party may be disregarded for the purposes of diversity jurisdiction.  *Id.*  In summary, a party is either fraudulently joined or not.  Either Mr. Pittman has claims in this action or he does not, and likewise, either Mr. Rector is a proper Defendant or he is not.  Pursuant to *Tapscott* and *Triggs*, the court may **only** disregard the citizenship of a party if the party has been fraudulently joined. *Id.* Therefore, as stated throughout Plaintiffs' briefs submitted to this Court, if Mr. Pittman has any claims against any Defendant, and any Plaintiff, whether it be Mr. Pittman or not, has any claims against Mr. Rector, then there is not fraudulent joinder of either Mr. Rector or Mr. Pittman and the rule of complete diversity mandates this action be remanded to state court.

The above analysis is not foreign to this Court. In fact, there are numerous opinions from this Court, and Your Honor, which give the same analysis as stated in *Tapscott* and *Triggs*.

In *Brooks v. Paulk & Cope, Inc.,* this Court stated:

> To satisfy diversity, not only must a plaintiff be a citizen of a state other than the state of which one defendant is a citizen, but also, under the rule of "complete diversity," no plaintiff may share the same state citizenship with any defendant.  *See Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L. Ed. 435 (1806).  Because of the complete diversity requirement for subject matter jurisdiction based on diversity of citizenship, a plaintiff may prevent removal simply by joining a defendant who shares the same state citizenship as the plaintiff.  The filing of a frivolous or otherwise illegitimate claim against a non-diverse defendant solely to prevent removal is called a "fraudulent joinder."  Courts may disregard the citizenship of fraudulently joined defendants when assessing the existence of complete diversity.

*Brooks v. Paulk & Cope,* 176 F. Supp. 2d 1270, 1273 (N.D. Ala. 2001).

01266636.1

In addition, this Court, and Your Honor, have used the same standard of analysis regarding fraudulent joinder in relation to the complete diversity rule in the following cases:  *Fitts v. Griffin*, 304 F. Supp. 2d 1337, 1341 (M.D. Ala. 2004); *Evergreen Forest Products of GA, LLC v. Bank of America,* 262 F. Supp. 2d 1297, 1300 (M.D. Ala. 2003); J*erido v. American General,* 1207 F. Supp. 2d 1322, 1325-1326 (M.D. Ala. 2001);  *White v. American General*, 136 F. Supp. 2d 1207, 1210 (M.D. Ala. 2001);  *Bolin v. State Automobile Mutual Insurance Company,*  144 F. Supp. 2d 1282, 1284 (M.D. Ala. 2001); and *Jones v. Triple Crown Services Company,*  44 F. Supp. 2d 1339 (M.D. Ala. 1999).    *Brooks* and all the above cases decided by this Court cite *Strawbridge* for the complete diversity rule and further explain that only when a party is found to be fraudulently joined may their citizenship be disregarded for purposes of diversity. (Citations omitted).

Other cases from the Middle District also have similar holdings regarding fraudulent joinder and the complete diversity rule.

> One of the Supreme Court's earliest cases, *Strawbridge v. Curtiss,* 7 U.S. (3 Cranch) 267, 2 L. Ed. 435 (1806), held that there is no diversity jurisdiction when any party on one side of the suit is a citizen of the same state as any party on the other side.  Correspondingly, the Eleventh circuit has elucidated that: "diversity jurisdiction requires complete diversity; every plaintiff must be diverse from every defendant." *Tapscott v. MS Dealer Service Corp.,* 77 F. 3d 1353, 1355 (11th Cir. 1996).  However, as Defendants properly argue, this complete diversity requisite is not absolute.  "When a defendant has been fraudulently joined, the court should disregard his or her citizenship for purposes of determining whether a case is removable based upon diversity of citizenship." *See Bullock v. United Benefit Ins. Co.,* 165 F. Supp. 2d 1255, 1257 (M.D. Ala. 2001).  Thus, in order to determine whether complete diversity exist in this case, the court must address the issue of fraudulent joinder.

*Owens. v. Life Ins. Co. of Georgia,* 289 F. Supp. 2d 1319, 1323 (M.D. Ala. 2003).

There are also other cases with similar analysis from the Middle District such as *Davis v. General Motors Corp.*, 353 F. Supp 2d 1203, 1206 (M.D. Ala. 2005);   *Audi Performance and*

*Racing, LLC v. Kasberger,* 273 F. Supp. 2d 1220, 1225 (M.D. Ala 2003); and *Jeeter v. Orkin Exterminating Co.,* 84 F. Supp. 2d 1334, 1336-1337, (M.D. Ala. 2000). [20]

In summary, under the current analysis endorsed by the Eleventh Circuit and this Court, the complete diversity rule as stated in *Strawbridge* is still binding law.  While fraudulent joinder is an exception to the complete diversity rule, a party must obviously be deemed to be fraudulently joined in order for this exception to be triggered.  Therefore, so long as Mr. Pittman and Mr. Rector are not deemed to be fraudulently joined, then the complete diversity rule applies and this case must be remanded back to state court.  Also, even if this Court is persuaded by *Williams*, which did not deal with the issue of fraudulent joinder and has never been cited or recognized for creating additional exceptions to the complete diversity rule, as long as Mr. Rector and Mr. Pittman remain in the suit, this case still must be remanded to state court since there is a substantial controversy between the two.  Regardless of *Williams*, there is no exception whatsoever to the complete diversity rule which would grant this Court jurisdiction of this case.

## IV.  RULE 20 JOINDER RELATION TO THE FRAUDULENT JOINDER ANALYSIS

Plaintiffs dispute[21] that they have joined Defendants pursuant to Rule 20 of the Federal Rules of Civil Procedures, since all Defendants share joint liability to the Plaintiffs.  How can the

---

[20] The Southern District of Alabama, the district from which *Williams* was handed down, has also endorsed the above analysis as it relates to fraudulent joinder and the complete diversity rule.  "Therefore, in this case, the burden is on the removing defendants to establish complete diversity, that is, the plaintiff is diverse from every defendant"…"in order to establish complete diversity of citizenship and the removability of  this case, the removing parties must show that the joinder of the nondiverse party, Warrior Tractor, was fraudulent." *Ison Logging, LLC v. John Deere Construction Equipment Co., Inc.,* 2000 U.S. Dist. LEXIS 316, *5 - *7 (S.D. Ala.)  *See also Armon Anderson v. Allstate Life Insurance Co.,* 2001 U.S. Dist. LEXIS 2600, *16 (S.D. Ala.).  Note these cases were handed down after *Williams.*

[21] This dispute does not mean that the claims cannot be joined under Rule 20, Plaintiffs simply believe a Rule 20 analysis is not necessary.

24

claims of MFP and Mr. Pittman possibly be independent or mutually exclusive?  They are based upon basically the same representations and the same wrongful acts of the Defendants.[22]

That being said, pursuant to this Court's Order, and if the Court disagrees with Plaintiffs' above analysis, we believe it is necessary to discuss the implications of Rule 20 in the context of a fraudulent joinder analysis.  The two leading Eleventh Circuit cases on this point are *Tapscott v. MS Dealer Service Corp.* and *Triggs v. Crump* (citations omitted).   In *Tapscott*, the court stated, "We do not hold that mere misjoinder is fraudulent joinder, but we do agree with the district court that Appellants' attempt to join these parties is so egregious as to constitute fraudulent joinder."  *Tapscott,* 77 F. 3d at 1360.  *Tapscott* held that plaintiffs joining separate defendants under Rule 20 cannot escape diversity jurisdiction if there is an "improper and fraudulent joinder, bordering on a sham."  *Id.*  *Tapscott* involved two separate class action claims against various defendants.  *Id.*  The nondiverse plaintiffs were not bringing claims against the nondiverse defendants, since the nondiverse plaintiffs were involved in one class while the nondiverse defendants were part of the other class.  *Id.*  The court ultimately concluded that the joinder of the nondiverse defendants was not only misjoinder but fraudulent joinder.  *Id.* at 1360. In reaching this holding, the court underwent a Federal Rule 20 analysis;  "Joinder of defendants under Rule 20 requires: (1) a claim for relief asserting joint, several, or alternative liability and arising from the same transaction, occurrence, or series of transactions or occurrences, and (2) a common question of law or fact."  *Fed. R. Civ. P. 20(a).* [23]  The court concluded that because

---

[22] MFP and Pittman assert the same causes of action based upon the same representations and wrongful acts. Pittman has, in addition, but not mutually exclusive to, additional representations and wrongful acts relating to his employment status.

[23] It should be noted that *Tapscott* and *Triggs* are similar factually to *Williams v. Conseco*. Also, the Eleventh Circuit did not use the logic endorsed by *Williams* but instead, decided to apply Rule 20 to a fraudulent joinder analysis. Apparently, the court in *Williams* should have applied the analysis from *Tapscott*.  In other words, *Williams* should have looked at Rule 20 and its relation to fraudulent joinder to determine jurisdiction.  Further, *Williams* came after *Tapscott* but before *Triggs*, at which time the Eleventh Circuit decided to continue the Rule 20 analysis instead of

there were only basic allegations of common business-type practices, that there was not sufficient connections between the defendants to satisfy prong one of Rule 20. *Id.* It is interesting to note that the court in *Tapscott* held that even if there is misjoinder of the parties, that it is not necessarily fraudulent joinder. *Id.* It is therefore entirely possible that even if this court concludes that somehow the Defendants in this case have been misjoined, that would not be conclusive that any Defendant had been fraudulently joined. Misjoinder is only fraudulent when it borders on a sham. *Id.*

*Triggs* was factually similar to *Tapscott* as it also involved plaintiffs' claims surrounding a class action. *Triggs*, 154 F. 3d at 1288. The plaintiffs were asserting claims against various defendants arising out of automobile lease transactions. *Id.* In conducting fraudulent joinder analysis, the court in *Triggs* stated:

> Of particular importance for this case, Rule 20 specifically provides that "[a] plaintiff or defendant need not be interested in obtaining or defending against all the relief demanded. Judgment may be given for one or more of the plaintiffs according to their respective rights to relief, and against one or more defendants according to their respective liabilities." *Fed. R. Civ. P. 20(a).* In other words, the fact that a great many of the members of the punitive plaintiff class can seek no relief against one of the defendants, Crump, would be no obstacle to the permissive joinder of Crump under Rule 20. Accordingly, we readily conclude that the joinder of defendant Crump satisfies the standards of Rule 20.

*Id.*

Based on the Eleventh Circuit's holding in *Triggs*, it is irrelevant, for Rule 20 pusposes, whether certain plaintiffs may ever obtain a judgment or could ever even bring a claim against certain defendants. *Id.*

---

the theory from *Williams*. Again, *Williams* has never been cited for the theory argued by Defendants by the Eleventh Circuit, or any court.

01266636.1

The Southern District of Alabama has discussed prong one (same transaction occurrence) in detail. In *Davidson v. Matthews*, Senior Justice Whitman upheld Magistrate Cassady's opinion that the requirements of Rule 20 had been satisfied. 1998 U.S. Dist. LEXIS 1817 (S.D. Ala). Plaintiffs, husband and wife, bought separate independent causes of action stemming from repair work done to their automobile. Plaintiffs sued the body shop who repaired the car and also their insurer, State Farm, for fraudulent misrepresentation. *Id.* State Farm argued that Plaintiffs' claims were separate and independent and therefore fraudulently misjoined pursuant to *Tapscott. Id.* at 7. Judge Whitman agreed with Magistrate Cassady that, "if it were not for the September 13, 1996 auto accident causing the property damage to Plaintiffs' vehicle, the fraudulent misrepresentation alleged against State Farm would never have occurred. Thus, it is clear that Plaintiffs' claim against State Farm arises from an 'interlocked series of transactions' and there is no separate and independent claim." *Id.* at 8. (Magistrate Cassady's ruling is found in 1998 U.S. Dist. LEXIS 14058 (S.D. Ala.) Based on the holding from *Davidson*, if one event leads to two separate causes of action, they are nonetheless "an interlocked series of transactions" and properly joined under Rule 20. *Id.* All of Plaintiffs' claims, whether those of MFP or Mr. Pittman, arise from one single event. The moment that the Defendants tortuously ended the relationship with Plaintiffs, all the causes of action accrued. No single cause of action listed in Plaintiffs' Complaint could have been brought but for the ending of the relationship between the Plaintiffs and the Defendants. Just as in *Davidson*, where a single event (car wreck) led to a series of separate causes of action, the Plaintiffs' claims were nonetheless "interlocked". Further, Plaintiffs' claims in this action have far more relation than did the Davidsons. Defendants defrauded MFP and Mr. Pittman at the same time during the February 7th meeting when representations were made to Mr. Pittman regarding the continued relationship. [24]

---

[24] It is again important to point out that Defendants Keystone and Mr. Turner knew Mr. Pittman was an independent

01266636.1

Defendants thus killed two birds with one stone by making fraudulent misrepresentations to Mr. Pittman during the February 7th meeting (before the job offers were made later that night) and this started a chain of events leading to all Plaintiffs' causes of action.

Further, "The purpose of the Rule (20) is to promote trial convenience, expedite the final determination of disputes, thereby preventing multiple lawsuits.[25] *Atchison v. Woodmen of the World Insurance Society*, 982 F. Supp. 835, 840 (S.D. Ala. 1997) (citing *Mosley v. General Motors Corp.,* 497 F. 2d 1330, 1333 (8th Cir. 1974). The Rule (20) 'is liberally interpreted in favor of joinder'". *Atchison*, 982 F. Supp. at 840 (*see also, United Mine Workers v. Gibbs,* 383 U.S. 715, 724, 16 L. Ed. 2d 218, 86 S. Ct. 130 (1966)) ("Joinder of claims, parties and remedies is strongly encouraged.") The court in *Atchison* further stated,

> There is no strict rule for determining what constitutes the same transaction or series of transactions for purposes of Rule 20(a). Instead, court look at each case individually to determine whether the claims are logically related, thereby allowing "all reasonably related claims for relief by or against different parties to be tried in a single proceeding."

*Atchison*, 982 F. Supp. at 840 (citing *C. Wright, A. Miller & M. Kane, Federal Practice & Procedure* 2d § 1653).

*Atchison* involved a class action. *Id.* In finding that there was proper of joinder pursuant to Rule 20 and thereby distinguishing *Tapscott* (and a similar case to *Turpeau*), the court stated the following:

> The instant case is not like *Tapscott* where there was no logical relationship between one set of plaintiffs' claims against the diverse defendant and another set of plaintiffs' claims against the nondiverse defendants. Nor is it like *Turpeau* where each plaintiff had a separate and unrelated claim against separate defendants who happened to have

---

contractor and that he expected to make large commissions from the project in question prior to any job offers made to Mr. Pittman. Therefore, pursuant to the holding in *Cooper,* that is enough to give rise to a cause of action under § 374(2) for Mr. Pittman in his individual capacity. Further, Mr. Pittman was acting as an agent of Morris Forest Products at the February 7th meeting any misrepresentations made to him also were made to MFP.

[25] If the Plaintiffs' claims are severed there will be no judicial economy since there will be two trials with essentially the same facts, causes of action and witnesses.

engaged in a similar practice. Instead, there is a logical connection between the named plaintiffs' claims against the nondiverse defendants and the claims of the class as a whole. The class claims arise from purported fraudulent marketing techniques and sales practices devised by Woodmen. According to the complaint, the fraud was perpetrated on the class by Woodmen through its nationwide sales force. The nondiverse defendants against whom claims are asserted are agents who were part of the nationwide sales force that allegedly carried out the fraud on behalf of Woodmen. Such claims are sufficiently related to support permissive joinder.

*Id.*

Like *Davidson, Atchison* recognizes that claims that are related to a single event are so related and are properly joined under Rule 20.

Based on the holdings in *Davidson* and *Atchison*, and since the joinders of claims under Rule 20 should be liberal and in the interest of judicial economy, claims of the Plaintiffs are not misjoined.

Even if somehow this Court finds the claims are misjoined, they are not to the level of fraud as discussed in *Tapscott* and *Triggs* such they would be considered fraudulently joined (citations omitted). Both *Tapscott* and *Triggs* hold that even if a court finds misjoinder, that is not per se fraudulent joinder (citations omitted). In Magistrate Cassady's opinion in *Davidson*, he held that even if he would have found the claims not properly joined under Rule 20, the level of misjoinder would not have been such to trigger fraudulent joinder, as in *Tapscott*. 1998 U.S. Dist. LEXIS 14058 (S.D. Ala.).

Even if the claims are separate they have been properly joined under Rule 20. If this Court somehow finds the Plaintiffs' claims are misjoinder under Rule 20, they are certainly not fraudulently joined as in *Tapscott*. Therefore, the claims of Plaintiffs should be remanded to state court.

01266636.1

**CONCLUSION**

Based on the above analysis, which presents the arguments summarized in Plaintiffs'

Introduction, this case should be remanded to the Circuit Court of Tallapoosa County, Alabama,

Alexander City Division.

s/Randall S. Haynes_____
 Randall S. Haynes

OF COUNSEL:

MORRIS, HAYNES & HORNSBY
131 Main Street
Alexander City, AL 35010
(256) 329-2000

s/ Ollie A. (Tres) Cleveland, III _____
W. Percy Badham III
Ollie A. (Tres) Cleveland, III

OF COUNSEL:

MAYNARD, COOPER & GALE, P.C.
1901 Sixth Avenue North
Suite 2400 AmSouth/Harbert Plaza
Birmingham, AL 35203
(205) 254-1000

Attorneys for Plaintiffs

01266636.1

<u>**CERTIFICATE OF SERVICE**</u>

I do hereby certify that a copy of the foregoing has been served upon the following:

William Scott, Jr.
Joseph E. Stott
Scott, Sullivan, Strutman & Fox, P.C.
2450 Valleydale Road
P.O. Box 380548
Birmingham, AL 35244

Patrick C. Davidson
Adams, Umbach, Davidson and White, LLP
205 South 9th Street
Opelika, AL 36801

via CM/ECF Electronic Noticing on this the 5th day of December, 2005.

s/ Ollie A. (Tres) Cleveland, III_____
Of Counsel

31

01266636.1