IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

MORRIS FOREST PRODUCTS, LLC;     )
STAN PITTMAN,                    )
                                 )     (WO)
                Plaintiffs,      )
                                 )
vs.                              )     CIVIL ACTION NO. 3:05cv564-A
                                 )
KEYSTONE EXTERIOR DESIGN, LLC;   )
JERRY TURNER; DON LUDWIG;        )
UNIVERSAL FOREST PRODUCTS;       )
MATTHEW J. MISSAD; DOUGLAS P.    )
HONHOLT; DANA RECTOR; AND KRAIG  )
JANSEN,                          )
                Defendants.      )

## **MEMORANDUM OPINION**

## I. **INTRODUCTION**

This cause is before the court on a Motion to Remand (Doc. #11) , filed by the Plaintiffs,

Morris Forest Products and Stan Pittman, on July 13, 2005.

The Plaintiffs originally filed a Complaint in the Circuit Court of Tallapoosa County,

Alabama in May of 2005.  The Plaintiffs include Stan Pittman ("Pittman"), a citizen of the State

of Georgia.  The Plaintiffs have asserted claims against various defendants, including at least one

Defendants who is a citizen of Georgia.  The Plaintiffs bring claims for breach of contract,

intentional interference with a business relationship, suppression, and fraud.

The case was removed to this court on the basis of diversity jurisdiction.  The Defendants

contend that the non-diverse Defendant and Pittman have been fraudulently joined.[1]

---

[1] No one disputes that the requisite amount in controversy exists.

The Defendants originally requested time to conduct discovery on jurisdictional issues, which request was denied by the court on the basis that taking the deposition of Pittman would not reveal evidence regarding the intent of the defendants in making alleged misrepresentations of fact.  In support of the Motion to Remand, however, the Plaintiffs have relied in large part on an affidavit of Pittman.  In a previous Order, this court then denied motions to strike this affidavit, but allowed the Defendants time in which to take the deposition of Pittman on the jurisdictional issue, and allowed for supplemental briefing.  The court then requested additional briefing on two specific issues.

For reasons to be discussed, based upon the court's thorough review of all of the briefs and evidence submitted in this case, the Motion to Remand is due to be GRANTED.

## II.  <u>REMAND STANDARD</u>

Federal courts are courts of limited jurisdiction.  <u>See</u> <u>Kokkonen v. Guardian Life Ins. Co. of America</u>, 511 U.S. 375 (1994); <u>Burns v. Windsor Insurance Co.</u>, 31 F.3d 1092, 1095 (1994); <u>Wymbs v. Republican State Executive Committee</u>, 719 F.2d 1072, 1076 (11th Cir. 1983), <u>cert. denied</u>, 465 U.S. 1103 (1984).  As such, federal courts only have the power to hear cases that they have been authorized to hear by the Constitution or the Congress of the United States.  <u>See</u> <u>Kokkonen</u>, 511 U.S. at 377.  Because federal court jurisdiction is limited, the Eleventh Circuit favors remand of removed cases where federal jurisdiction is not absolutely clear.  <u>See</u> <u>Burns</u>, 31 F.3d at 1095.

## III.  <u>FACTS</u>

The facts, as they pertain to the Motion to Remand, are as follows:

The Plaintiffs allege that a licensing agreement was entered into between Keystone Exterior Design, LLC ("Keystone") and Morris Forest Products ("Morris") which gave Morris the right to market a residential deck system, and giving Morris the right of first refusal if Keystone received an offer from a third party to purchase its stock. Keystone was later sold to Universal Forest Products ("Universal"), which terminated the licensing agreement with Morris. The Plaintiffs allege that as a result of the sale, Pittman, a contractor with Morris, suffered damages and lost commissions.

Pittman states in an affidavit that representations were made to him by Universal and its agents, including Dana Rector ("Rector"). He points to a February 7, 2005 meeting with representatives from Universal and Keystone in which representations were made. In his deposition, Pittman also states that Defendant Jerry Turner offered him employment with Keystone on February 7 and February 11, 2005, and that Morris was not allowed to continue to make the residential deck systems after Pittman refused this employment. He alleges that the Defendants suppressed the nature and extent of their relationship.

## IV. DISCUSSION

A federal district court may exercise subject matter jurisdiction over a civil action in which only state law claims are alleged if the civil action arises under the federal court's diversity jurisdiction. See 28 U.S.C. § 1332(a)(1). The diversity statute confers jurisdiction on the federal courts in civil actions "between citizens of different states," in which the jurisdictional amount is met. Id. To satisfy diversity, not only must a plaintiff be a citizen of a state other than the state of which one defendant is a citizen, but also, under the rule of "complete diversity," no plaintiff may share the same state citizenship with any defendant. See

Strawbridge v. Curtiss, 7 U.S. (3 Cranch) 267 (1806).  Because of the complete diversity

requirement for subject matter jurisdiction based on diversity of citizenship, a plaintiff may

prevent removal simply by joining a defendant who shares the same state citizenship as the

plaintiff.  The filing of a frivolous or otherwise illegitimate claim against a non-diverse

defendant solely to prevent removal is called a "fraudulent joinder."  Courts may disregard the

citizenship of fraudulently joined defendants when assessing the existence of complete diversity.

See Tedder v. F.M.C. Corp., 590 F.2d 115, 117 (5th Cir. 1979)[2]; see also Thomas v. Jim Walter

Homes, Inc., 918 F. Supp. 1498 (M.D. Ala. 1996).

The Eleventh Circuit applies a threefold test for determining whether a defendant has

been fraudulently joined: the removing party must show either (1) that there is no possibility the

plaintiff could establish a cause of action against the resident defendant in state court, (2) that the

plaintiff fraudulently pleaded jurisdictional facts, or (3) where a diverse defendant is joined with

a nondiverse defendant as to whom there is no joint, several or alternative liability and the claim

has no real connection to the claim against the nondiverse defendant.  See Triggs v. John Crump

Toyota, 154 F.3d 1284, 1287 (11th Cir. 1998).   This case involves primarily a contention that

the first analytical prong applies, but the third prong has also been addressed by the parties, as

will be discussed below.

The burden of proving fraudulent joinder rests with the Defendants as the removing

parties.  See Crowe v. Coleman, 113 F.3d 1536, 1538 (11th Cir. 1997).  A claim of fraudulent

joinder must be supported by clear and convincing evidence.  See Parks v. New York Times Co.,

---

[2]  In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981)(en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit issued prior to October 1, 1981.

308 F.2d 474, 478 (5th Cir. 1962), cert. denied, 376 U.S. 949 (1964).  In evaluating whether there has been fraudulent joinder, all allegations and submissions must be viewed in the light most favorable to the plaintiff.  See Crowe, 113 F.3d at 1538.  In fact, "the district court should resolve all questions of fact and controlling law in favor of the plaintiff. . . ." Cabalceta v. Standard Fruit Co., 883 F.2d 1553, 1561 (11th Cir. 1989).

The Defendants have argued that plaintiff Pittman has been fraudulently joined, and that Defendants Kraig Jansen[3] and Dana Rector also have been fraudulently joined. The court will begin with the arguments regarding Pittman.

The Defendants argue that there is no possibility that Pittman can establish any claims against any Defendant in this case because Pittman was merely an employee, or agent, of Morris and Morris is the only true Plaintiff in the case.  The Plaintiffs have argued that there is a possibility that a state court will find that Pittman can establish a cause of action against one or more Defendants because Alabama law recognizes a claim by an individual employed by a

---

[3] The Defendants argue that Defendant Kraig Jansen ("Jansen") has been fraudulently joined because although the Plaintiffs have alleged in the Complaint that he is a citizen of the State of Georgia, he is actually a citizen of the State of North Carolina.  The Defendants have provided an affidavit in which Mr. Jansen states that he is a citizen of North Carolina.  The Plaintiffs contend in a footnote in their supplemental reply that the court should not consider this affidavit because the Defendants did not contest the citizenship of Jansen in their first responsive pleading. Because the Plaintiffs merely pled Jansen's citizenship, it is proper for the court to consider evidence in rebuttal of that pleading.  See Legg v. Wyeth, 428 F.3d 1317 (2005).  Because the Plaintiffs have not contested the truthfulness of Jansen's statement that he is a citizen of North Carolina, the court will not consider Jansen to be a non-diverse Defendant.

corporation where defendants have acted with intent to harm that individual.  See e.g., Joe Cooper and Assoc., Inc. v. Central Life Assurance Co., 614 So. 2d 982, 991 (1992).[4]

In Moorer v. Hartz Seed Co., 120 F. Supp. 2d 1283 (M.D. Ala. 2000), this court concluded that the mere fact that an employee was induced to act in a manner affecting him is not sufficient to establish a claim on that employee's behalf.  Id. at 1289.  This court reasoned that such an approach would allow virtually any employee affected by an adverse action taken against his employer to sue the adverse actor and lead to absurd results.  Id.  Instead, there must be evidence suggesting that the defendant intended to harm the agent.  Id. at 1290.

Relying on these authorities, the Plaintiffs have stated that Pittman was in charge of the manufacturing and distribution of products under the Licensing Agreement with Keystone and expected to earn commissions based upon the volume of sales.  The Plaintiffs argue that Defendant Jerry Turner ("Turner") was aware that Pittman was compensated based on commission, and that Turner acted against Morris because Pittman refused his offer of employment.  The Plaintiffs provide evidence that Turner met with Pittman and offered him employment on February 7 and 11 and that Pittman refused both times. The Plaintiffs argue that they need not prove this theory at this point in the proceedings.

The Eleventh Circuit has recently clarified the role that evidence plays in evaluating a contention that a defendant has been fraudulently joined.  In Legg v. Wyeth, 428 F.3d 1317,

---

[4] The Plaintiffs have provided an affidavit of Pittman to establish that he is not an employee, but is an independent contractor of Morris.  It appears to the court, however, based in part on the Plaintiffs' apparent concession that at least for purposes of the discussions with the Defendants, Pittman was acting as an agent, that whether Pittman was an employee or an independent contractor, under the facts presented to the court, his ability to sue for misrepresentations made during the negotiations is governed by agency law.  See Joe Cooper & Assoc., Inc., 614 So. 2d at 991.

1323 (11th Cir. 2005), the court explained, although a court must resolve all questions of fact in favor of the plaintiff, "there must be a question of fact before the district court can resolve that fact in the plaintiff's favor."  If the defendant presents evidence on a point, a court cannot "resolve the facts in the Plaintiffs' favor based solely on the unsupported allegations in the Plaintiffs' complaint."  <u>Id.</u>  The court also quoted from a Fifth Circuit decision the following language:

> [W]e resolve factual controversies in favor of the nonmoving party, but <u>only</u> when there is an actual controversy, that is when both parties have submitted evidence of contradictory facts.  <u>We no not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts.</u>

<u>Id.</u> (quoting <u>Badon v. RJR Nabisco, Inc.</u>, 224 F.3d 382, 393-94 (5th Cir. 2000)) (emphasis in the original).

Because this court is directed to consider evidence presented in support of, and opposition to, an allegation of fraudulent joinder, this court will not limit its review to the allegations of the Complaint.  In light of the affirmative evidence offered by the Defendants that the Defendants did not intend to harm Pittman, the Plaintiffs must present some contrary evidence on the issue of intent.  <u>See</u> Universal Defendants' Exhibits D, E, F.  The evidence the Plaintiffs have presented to the contrary is Pittman's testimony that Turner offered Pittman employment on the evening of February 7, after the meeting during which representations were made, and again on February 11.  It was after Turner was refused that the relationship with Morris was terminated.  In light of this evidence, the court accepts the possibility, for purposes of analysis of the fraudulent joinder issues, that Turner was motivated in his actions toward Morris by a desire to harm Pittman individually, and that his intent was formed after the

February 7 meeting. Intent, however, is only one aspect of the analysis. There must at least be a possibility that Pittman can state the elements of a claim against any Defendant.

The court begins with the claim for fraudulent suppression. The Universal Defendants, and by incorporation, the Keystone Defendants, argue that if the intent to end the relationship with Morris was not formed until after Pittman rejected the offer of employment the evening of February 7, and on February 11, then there could have been no suppression of fact during the meeting on February 7, and no knowledge of the suppressed fact at that time.

The Plaintiffs do not directly respond to this argument in their submissions. The language of the Complaint states that the Defendants had a duty to disclose certain facts, including the nature of the relationship between Universal and Keystone, and failed to do so. Complaint at ¶ 32. There is no limitation as to time. The Plaintiffs' theory to support Pittman's ability to bring a claim on his own behalf is that once Pittman had rejected the employment offers, the Defendants decided to end Keystone's contract with Morris to harm Pittman. This theory, based on evidence offered in opposition to the evidence offered by the Defendants, extends the course of the relationship beyond February 7. Such a theory is consistent with, and not foreclosed by, an allegation in the Complaint that the Defendants suppressed the nature of the relationship between Keystone and Universal.

The Universal Defendants also argue that there was no duty to disclose on the part of the Defendants because Pittman had no relationship with Universal or Keystone. The Defendants point to Pittman's deposition in which, when asked whether he had a relationship with Universal, Pittman responded that he had a contractual relationship with Morris. Pittman Dep. at pages 154

and 156.  He also testified that he was not paid directly by Keystone or Universal.  Id. at page 156.

The existence of a duty is a question of law.  Ex parte Farmers Exchange Bank, 783 So. 2d 24, 27 (Ala. 2000).  A duty to disclose can arise either from a confidential relationship with the plaintiff or from the particular circumstances of the case.  Id.

The basis for a duty to disclose initially pointed to by the Plaintiffs is the right of first refusal in the contract between Keystone and Morris.  Plaintiffs' Reply at page 14.  Pittman was not a party to the contract between Morris and Keystone, however.  The Plaintiffs also have presented evidence, however, that Turner and Pittman had discussions regarding employment after the February 7 meeting.  Therefore, the Plaintiffs have presented evidence of a relationship between Pittman and Turner which goes beyond the evidence cited by the Defendants.  Pittman has testified that he met with Turner and was offered employment by Turner on more than one occasion.

This court recognizes that Alabama courts found no duty in Humber v. BF Goodrich Co., 561 So. 2d 511 (Ala. 1990), cited by the Defendants, and in other similar cases.  See Miller v. SCI Systems, Inc., 479 So. 2d 718, 720 (Ala.1985) and Van Ryswyk v. Berwick Bay Oil Co., Inc., 571 So. 2d 291, 293 (Ala. 1990).  Those cases do not foreclose, however, any possibility that a confidential relationship could be found to arise within the context testified to by Pittman.  Pittman has presented some evidence that he had a relationship with Turner.  A duty to disclose can arise either from a confidential relationship or from the particular circumstances of a case.  Ex parte Farmers Exchange Bank, 783 So. 2d at 27.   The court cannot conclude, therefore, that

the Defendants have demonstrated that there is no possibility that a state court would find that Pittman has established a duty to disclose.

The Defendants have also argued that Pittman cannot demonstrate reliance. Pittman has testified that he continued selling the Keystone deck system after February 7, and the Plaintiffs' position is that he would not have continued to do so if he had known that Morris was no longer going to have the contract. Pittman testified that during the period after February 7, when he thought Morris would still have the contract, his "life and soul" consisted of Keystone decks and "keeping the product alive." Pittman Dep. at pages 144-45.

The Defendants have also argued that Pittman received a consistent amount of salary and was not harmed by the Defendants' actions, so any speculation about what his future commissions might have been is not the proper basis for establishing damages. The Plaintiffs argue, however, that Pittman's testimony is that his commissions went into an account where he would take a consistent draw so that there was money in the account even when sales went down. Pittman Dep. at pages 130-31. Therefore, according to Pittman, the amount of compensation he received was not necessarily indicative of the sales he made.

In response to citations of evidence by the Defendants, Pittman has gone beyond the allegations of his Complaint and pointed to evidence in response to the evidence cited by the Defendants. Pittman has articulated legal and factual theories under which he seeks to recover which are based on evidence offered in opposition to the Defendants' evidence and are consistent with the allegations of suppression in the Complaint. Under the standard which applies in evaluating claims of fraudulent joinder, this court finds that there is a possibility that a

state court would find that Pittman has stated a claim of fraudulent suppression at least against Turner.[5]

The next issue, therefore, is whether it is sufficient that Pittman has a possibility of stating a claim against any Defendant, and that Morris Forest Products may have a claim against Dana Rector ("Rector"), the non-diverse Defendant, or whether Pittman himself must have a claim against Rector. In its initial review of the submissions of the parties, it appeared to the court that Pittman and Morris Forest Products might have mutually exclusive theories, if Pittman were arguing that intent to harm him occurred after February 7, while Morris Forest Products' argument was that misrepresentations to it occurred on February 7. Accordingly, the court had the parties brief the implications of proceeding on such theories in one case. The parties' responses included discussion of the Eleventh Circuit's recognition of fraudulent joinder where a diverse defendant is joined with a nondiverse defendant and there is no real connection to the claim against the nondiverse defendant, as well as joinder principles under the Federal Rules of Civil Procedure.

---

[5] Having concluded that the Defendants have failed to prove that there is no possibility that Pittman could establish a claim of suppression in state court, the court need not address the other claims asserted by Pittman. The court does note, however, with respect to the interference with contract claim, that the Plaintiffs have stated in their brief that the independent contractor agreement with Morris is the contract with which the Defendants have intentionally interfered. In the Complaint, however, the Plaintiffs specifically allege that there "was a Licensing Agreement in place between Keystone and MFP," that "Universal, Missad, Honholt, Rector and Jansen intentionally interfered with the contractual and business relationship between MFP and Keystone," and alleges that the "Plaintiffs were damaged as a result of these Defendants' interference." Complaint at ¶ 31. Unlike the suppression claim, therefore, the claim as alleged in the Complaint is inconsistent with, and therefore forecloses for purposes of the fraudulent joinder inquiry, the claim as articulated in the brief.

Also in response to this court's Order requesting additional briefing, however, the Plaintiffs have clarified that it has not been their intent to concede that Pittman has no claim against Rector. Instead, the Plaintiffs argue that Pittman has a claim against Rector based on a conspiracy theory, and that there is at least a good faith basis for such a theory in the evidence thus far presented to the court. There is no separate claim based on conspiracy in the Complaint, but the Complaint alleges that Defendants had entered into a relationship and had failed to disclose the true nature of their relationship, and that Keystone and Universal wanted to leave Morris out of the deal. Complaint at ¶ 32. The Plaintiffs point to three pieces of evidence which they contend tend to show that Universal was involved in a conspiracy with Keystone, one of which refers to a meeting which was to occur involving Rector.

The Alabama Supreme Court has rejected a rule that "one person's material relationship with a person accused of fraud makes that first person subject to a claim of conspiracy to commit fraud." Scott v. Commonwealth Land Title Ins. Co., 518 So. 2d 102 (Ala. 1987). Therefore, the mere fact that there was a relationship between Keystone and Universal is not sufficient to conclude that a fraud claim possibly may be stated as against Rector. Another district court within this circuit has concluded that there must be at least likely evidentiary support after a reasonable opportunity for discovery to conclude that a defendant had actual knowledge of intent to act by means of fraud to support a fraud claim for purposes of fraudulent joinder. Anderson v. Allstate Life Ins. Co., No. CA 00-958-C, 2001 WL 228057 at *9 (S. D. Ala. Feb. 1, 2001).

In this case, the Plaintiffs have pointed to some evidence that there were communications between Universal and Keystone representatives, one of which purportedly involved Rector, as a basis for arguing that the Defendants were acting in concert. Whether or not Pittman ultimately

will be successful on a claim involving Rector individually is not the relevant inquiry. This court must determine whether it is impossible, legally or factually, for a state court to find that Pittman has stated a claim against Rector. This court cannot so conclude. Accordingly, the Defendants have failed to prove that Pittman and Rector are fraudulently joined.[6]

## V. CONCLUSION

This case has presented complicated issues of theories of liability under agency law, as well as sufficiency of pleading and evidence, to support the elements of claims by a non-diverse Plaintiff and claims against a non-diverse Defendant. The Defendants have presented evidence to support their position. In response, the Plaintiffs have not relied merely on allegations of the Complaint, but also have presented evidence in opposition to the Defendants' evidence. The burden of establishing fraudulent joinder lies with the Defendants. Applying the legal standard of "any possibility," and bearing in mind that the Eleventh Circuit favors remand of removed cases where federal jurisdiction is not absolutely clear, the court has concluded that Plaintiff Stan Pittman and Defendant Dana Rector have not been fraudulently joined. Accordingly, complete diversity is lacking in this case and the Motion to Remand is due to be GRANTED for lack of subject matter jurisdiction.

A separate Order granting the Motion to Remand will be entered in accordance with this Memorandum Opinion.

---

[6] Therefore, the court need not address the arguments regarding possible claims by Morris against Rector. The court does note, however, that because Pittman arguably has claims against Turner and Rector on a theory that there was a conspiracy between them, this case does not appear to fall within Tapscott v. MS Dealer Service Corp., 77 F.3d 1353, 1359 (11th Cir. 1996), overruled on other grounds by, Cohen v. Office Depot, Inc., 204 F.3d 1069 (11th Cir. 2000).

Done this 16th day of December, 2005.

/s/ W. Harold Albritton
W. HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE